NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | **Hon. Dennis M. Cavanaugh** |
| IN RE SCHERING-PLOUGH CORP. / | : | |
| ENHANCE SECURITIES LITIG. | : | **OPINION** |
| | : | |
| | : | Civil Action No. 08-CV-397 (DMC) |
| THIS DOCUMENT RELATES TO ALL | : | |
| CASES | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon separate motions by the Exchange Act Defendants and Securities Act Defendants (collectively, "Defendants") to dismiss Plaintiffs' claims under the Exchange Act and Securities Act for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, the Court finds that both motions to dismiss are **denied**.

I.    BACKGROUND

      Plaintiffs, purchasers of Schering-Plough Corp. ("Schering") securities during the period July 24, 2006 to March 28, 2008, allege that Schering, five members of its senior management, eleven of its current directors and one former director, and eighteen underwriters that participated in Schering's August 2007 public stock offering (the "Offering") are liable in damages for unlawful misstatements and omissions made in connection with the Offering relating to the cholesterol drug Vytorin and the ENHANCE clinical study. A Consolidated Class Action

Complaint (the "Complaint") was filed in this Court on September 15, 2008. The Complaint raises claims sounding in fraud and negligence under Sections 10(b), 20(a) and 20A of the Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"). Before the Court are separate motions to dismiss filed on December 10, 2008 by the Securities Act Defendants and the Exchange Act Defendants.

## II.    Legal Standards

A.    *Rule 12(b)(6)*

Courts considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Marangos v. Swett, 2009 WL 1803264, *2 (3d Cir. June 25, 2009). While the plausibility standard "is not akin to a probability requirement," it does require more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.

Well-pleaded factual content is accepted as true for purposes of determining whether the complaint states a plausible claim for relief. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). This assumption does not apply, however, to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See Iqbal, 129 S. Ct. at 1949; Marangos, 2009 WL 1803264, at *2. Indeed, "where the well-pleaded facts do not permit

2

the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." See Iqbal, 129 S. Ct. at 1949; Marangos, 2009 WL 1803264, at *2.

  B.  *Section 10(b) of the Exchange Act*

  Section 10(b) of the Exchange Act prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities. See 15 U.S.C. § 78j(b). Rule 10b-5 makes it illegal, in connection with the purchase or sale of securities, to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." See 17 C.F.R. § 240.10b-5. Claims under Section 10(b) and Rule 10b-5 must allege: (1) a material misrepresentation or omission; (2) *scienter*; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 275 (3d Cir. 2006) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005)). "If a complaint fails to meet the stringent pleading requirements for sustaining a 10(b) claim, the appropriate sanction is dismissal." See Key Equity Investors, Inc. v. Sel-Lab Marketing Inc., 246 Fed. App'x 780, 785 (3d Cir. 2007).

  C.  *Rule 9(b)*

  Because Section 10(b) claims sound in fraud, plaintiffs must also satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In other words, plaintiffs asserting securities fraud claims must specify "the who, what, when,

3

where and how" of the events at issue.  See Key Equity Investors, 246 Fed. App'x at 784.  This heightened pleading standard "give[s] defendants notice of the claims against them, provide[s] an increased measure of protection for their reputations, and reduce[s] the number of frivolous suits brought solely to extract settlements."  Id. at 784 n.5 (quoting In re Suprema Specialties, 438 F.3d at 270).  The standard is "relaxed somewhat[, however,] where the factual information is peculiarly within the defendant's knowledge or control."  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1996).

        D.     *Private Securities Litigation Reform Act*

        In addition to the requirements of Rule 9(b), securities fraud claims must also satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA").  The PSLRA requires that securities fraud claims set forth "each statement alleged to be misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed."  See 15 U.S.C. § 78u-4(b)(1); Key Equity Investors, 246 Fed. App'x at 784.  With respect to *scienter*, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  See Key Equity Investors, 246 Fed. App'x at 784.  A complaint may be said to create a "strong inference" of *scienter* "only if a reasonable person would deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  See id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)).

E.    *Section 20(a) of the Exchange Act*

Section 20(a) "imposes joint and several liability on any person who controls a person liable under any provision of the [Exchange Act]."  <u>See</u> <u>In re Alpharma Inc. Sec. Litig.</u>, 372 F.3d 137, 153 (3d Cir. 2004) (internal quotations omitted).  Claims under Section 20(a) must show: (1) "an underlying violation by a controlled person or entity"; and (2) "that the defendants are controlling persons, and that they were in some meaningful sense culpable participants in the fraud perpetrated by the controlled persons."  <u>See</u> <u>In re Cendant Corp. Sec. Litig.</u>, 60 F. Supp. 2d 354, 379 (D.N.J. 1999).  Because Section 20(a) is a derivative offense, a violation of some other section of the Exchange Act must exist in order for it to be applicable.  <u>See</u> 15 U.S.C. § 78t(a).

F.    *Section 20A of the Exchange Act*

Section 20A creates a private cause of action for contemporaneous traders to sue those who violated the Exchange Act or its rules by insider trading or tipping.  <u>See</u> 15 U.S.C. § 78t-1; <u>In re Cendant Corp. Litig.</u>, 60 F. Supp. 2d 354, 378 (D.N.J. 1999).  Similar to Section 20(a), "claims under [S]ection 20A are derivative, requiring proof of a separate underlying violation of the Exchange Act."  <u>See</u> <u>In re Advanta</u>, 180 F.3d 525, 541 (3d Cir. 1999).  A plaintiff must allege: "(1) trading by a corporate insider; (2) a plaintiff who traded contemporaneously with the insider; and (3) that the insider traded while in possession of material nonpublic information, and thus is liable for an independent violation of the Exchange Act."  <u>See</u> <u>In re Cendant</u>, 60 F. Supp. 2d at 378 (internal quotations omitted).

G.    *Section 11 of the Securities Act*

Section 11 permits recovery by purchasers of securities where "a registration statement,

as of its effective date: (1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact necessary to make the statements therein not misleading." See In re Suprema Specialties, 438 F.3d at 269 (internal quotations omitted). It is a "virtually absolute liability provision[ ], which do[es] not require plaintiffs to allege that defendants possessed any *scienter*." See id. (quoting In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 274 n. 7 (3d Cir. 2004)). Indeed, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." See id. (quoting Herman & MacLean v. Huddleston, 459 U.S. 375, 382 (1983).

H.    *Section 12(a)(2) of the Securities Act*

Whereas Section 11 concerns misstatements and omissions in a registration statement, Section 12(a)(2) deals with misrepresentations and omissions in a prospectus or other solicitation material. Section 12(a)(2) creates a private cause of action against anyone who offers or sells a security "by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading." See 15 U.S.C. § 77 l(a)(2); In re Suprema Specialties 438 F.3d at 269. Similar to Section 11, Section 12(a)(2) is a "virtually absolute" liability provision that does not require an allegation that defendants possessed *scienter*. See In re Suprema Specialties, 438 F.3d at 269. To state a prima facie claim, plaintiffs must allege they purchased securities pursuant to a materially false or misleading prospectus or oral communication. Id. at 269–70.

6

I.      *Section 15 of the Securities Act*

Section 15 provides for joint and several liability against those who "control" violators of Section 11 or Section 12 of the Securities Act.  See 15 U.S.C. § 77o.  Plaintiffs must show that the defendant controlled another person or entity and that the controlled person or entity committed a predicate offense under the Securities Act.  See In re Suprema Specialties, 438 F.3d at 284.  Courts should give "heavy consideration . . . to the power or potential power to influence and control the activities or a person, as opposed to the actual exercise thereof."  See In re Cendant Corp., 60 F. Supp. at 367 (internal quotations omitted).

**III**.    **DISCUSSION**

A.      *Exchange Act Claims*

Plaintiffs first raise claims for securities fraud pursuant to Sections 10(b), 20(a) and 20A of the Exchange Act.  Because the Court finds that Plaintiffs have properly plead their claims under the Exchange Act, however, the Exchange Act Defendants' motion to dismiss is **denied**.

i.      Section 10(b) Claims

The Exchange Act Defendants challenge the 10(b) and 10b-5 claims based upon Plaintiffs' alleged failure both to identify any actionable misstatements made by the Exchange Act Defendants and to adequately plead facts giving rise to a strong inference of *scienter*.  The Court disagrees.  First, review of the Complaint demonstrates that Plaintiffs adequately plead actionable misstatements or omissions made by the Exchange Act Defendants in connection with the purchase and/or sale of Schering securities.  Under the heightened pleading requirements of Rule 9(b) and the PSLRA, claims for securities fraud pursuant to Section 10(b) must "specify

each statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on information and

belief, [a plaintiff must] state with particularity all facts on which that belief is formed." See Key

Equity, 246 Fed. App'x at 785 (quoting In re Alpharma, 372 F.3d at 147).  The Exchange Act

Defendants argue that Plaintiffs failed to sufficiently match the alleged misleading statements or

omissions with the corresponding facts, and that, in any event, the statements identified by

Plaintiffs were in fact truthful and not misleading. The Court finds, however, that Plaintiffs

repeatedly alleged misstatements and omissions relating to, *inter alia*, the efficacy of Vytorin, the

ENHANCE study, and Schering's financial outlook, and that Plaintiffs described those

statements and omissions with sufficient particularity to demonstrate the "who, what, where,

when and how" for each. Accordingly, Defendants' motion to dismiss on this basis is denied.

Second, the Court finds that Plaintiffs have raised sufficient facts in the Complaint to

create a "strong inference" of *scienter* that is "at least as likely as any plausible opposing

inference." See Tellabs, 551 U.S. at 328. *Scienter* is a "mental state embracing intent to deceive,

manipulate, or defraud, and requires a knowing or reckless mind." See Institutional Investors

Group v. Avaya, Inc., 564 F.3d 242, 252 (3d Cir. 2009) (internal citations omitted). Plaintiffs

allege that the Exchange Act Defendants knew of the ENHANCE study results prior to their

unblinding in January 2007, and that they knowingly withheld the results even though such

omission tended to make the facts that were disclosed untrue.  In support of their claim, Plaintiffs

plead a series of factually-specific allegations in the Complaint allegedly showing that the

Exchange Act Defendants had early knowledge of the ENHANCE results and intentionally

concealed it, including, *inter alia*: (1) that Defendants learned from data checks as early as 2005 that the study had data quality problems and was likely to produce negative results; (2) that the ENHANCE data was discussed at internal Schering-Plough "Brand Team" meetings as early as 2006, corroborated by confidential witness ("CW") statements alleging that the ENHANCE data gathered from "quality control assessments" was regularly discussed at the meetings by company doctors and executives who "did not like the kind of results they were seeing"; (3) that, even if blinded, the test results were readily discernible by Defendants due to their access to the data points, essentially leaving the test "functionally unblinded"; and (4) that the Exchange Act Defendants deliberately delayed announcing the study results under the pretext of data quality problems, as evidenced by, *inter alia*, the January 2007 report from an independent consultant finding that the data was "fine," of "little concern," and "no better, no worse" than similar studies, and emails from the principal investigator in July 2007 protesting Defendants' decision to postpone disclosure of the study results.  The Exchange Act Defendants dispute many of these allegations, arguing that they lack sufficient particularity to satisfy the heightened pleading standard for securities fraud claims, and that, in any event, the only plausible inference to be drawn therefrom is that Defendants' actions were "consistent with [their] attempt to remedy data quality problems" associated with the ENHANCE study.  Reading the Complaint as a whole, however, the Court finds that the factual allegations are sufficiently detailed to satisfy the "heightened particularity" requirement for securities fraud claims under Rule 9(b) and the PSLRA.  Additionally, the Court finds it "at least as compelling" to construe Plaintiffs' allegations as creating an inference that Defendants knowingly withheld and concealed the

9

adverse ENHANCE results as it is to construe them as merely showing that Defendants were acting to "remedy data quality problems." Accordingly, the Exchange Act Defendants' motion to dismiss is also denied on the basis.

        ii.    <u>Section 20(a) Claims</u>

The Exchange Act Defendants next argue that the controlling person claims under Section 20(a) against Defendants Fred Hassan, Carrie S. Cox, Robert J. Bertolini and Steven H. Koehler (the "Section 20(a) Defendants") must be dismissed because Schering, as the alleged "controlled person," did not commit an underlying offense of the Exchange Act, and because, in any event, the Complaint fails to allege that the Section 20(a) Defendants had actual power over Schering and participated in its illegal activity. The Court disagrees. Claims under Section 20(a) must show: (1) "an underlying violation by a controlled person or entity"; and (2) "that the defendants are controlling persons, and that they were in some meaningful sense culpable participants in the fraud perpetrated by the controlled persons." <u>See</u> <u>In re Cendant Corp. Sec. Litig.</u>, 60 F. Supp. 2d 354, 379 (D.N.J. 1999). Here, the Court has already held that the Complaint states a viable claim against Schering for violations of the Exchange Act. Additionally, the Court finds that the Complaint adequately alleges that the Section 20(a) Defendants exercised control over Schering based upon their executive-level positions and their involvement in Schering's public statements and preparation of the offering documents, and that the Section 20(a) Defendants were culpable participants in Schering's underlying violations of the Exchange Act. Accordingly, the Exchange Act Defendants' motion to dismiss the Section 20(a) claims is denied.

10

                iii.     <u>Section 20A Claims</u>

Finally, the Exchange Act Defendants argue that the Section 20A claims against Defendants Cox and Schering should be dismissed.  Claims for insider trading under Section 20A must allege:  (1) a predicate violation of the Exchange Act; (2) that the plaintiff traded contemporaneously with the insider; and (3) that the insider was in possession of material nonpublic information.  <u>See</u> <u>In re Cendant</u>, 60 F. Supp. 2d at 378.  Plaintiffs have adequately stated a claim under Section 20A.  First, the Court has already held that the Complaint properly alleges a predicate violation of Section 10(b) against both Cox and Schering and a violation of Section 20(a) against Cox.  Additionally, with respect to Cox, the Complaint pleads with particularity that Cox sold stock options and common stock valued at over $28 million while possessing material, non-public information about the ENHANCE study results.  <u>See</u> 15 U.S.C. § 78t-1(a).  With respect to Schering, the Court finds that the Complaint states a viable claim for "tipping" because it alleges that Schering communicated the results of the ENHANCE study to Cox and other company executives at certain meetings while failing to disclose that information to investors.  <u>See</u> 15 U.S.C. § 78t-1(c).  Accordingly, the Exchange Act Defendants' motion to dismiss the Section 20A claims against Cox and Schering-Plough is also denied.

      B.    *Securities Act Claims*

The Securities Act Defendants also move to dismiss Plaintiffs' claims pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act.  Because the Court finds that Plaintiffs have properly plead their claims thereunder, however, the Securities Act Defendants' motion to dismiss is denied.

     i.  <u>Section 11 and 12(a)(2) Claims</u>

  The Securities Act Defendants argue that Plaintiffs' Section 11 and 12(a)(2) claims should be dismissed because Plaintiffs failed to identify any misstatements or omissions in connection with the August 2007 offering documents, and because, in any event, Plaintiffs lack standing to raise a claim under either section.  The Court disagrees.  First, because Plaintiffs expressly plead their Securities Act claims in negligence rather than fraud, their claims need not satisfy the heightened pleading requirements of Rule 9(b), and are instead subject to the notice pleading requirements of Fed. R. Civ. P. 8.  <u>See, e.g.</u>, <u>In re Suprema Specialties</u>, 438 F.3d at 272–73 (holding that "Rule 9(b) does not apply to Section 11 or Section 12(a)(2) claims that are expressly pled in negligence even when Section 10(b) claims against some of the same defendants are pled separately in the same complaint").  Accordingly, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case."  <u>See</u> <u>In re Cendant Corp.</u>, 60 F. Supp. 2d at 364.  Here, Plaintiffs have adequately identified material misstatements and omissions to state proper claims under Sections 11 and 12(a)(2).  Plaintiffs allege, for example, that Defendants' failure to disclose the negative results of the ENHANCE study in the August 2007 offering documents rendered specific statements contained therein misleading.  Accordingly, Defendants' motion to dismiss on this basis is denied.

  Nor is the Court persuaded by the Securities Act Defendants' argument that Plaintiffs lack standing to bring their claims under Sections 11 and 12.  Sections 11 and 12 limit standing to a "narrow class of persons consisting of those who purchase securities that are the direct

subject of the prospectus and registration statement." See In re FleetBoston Fin. Corp. Sec. Litig., 253 F.R.D. 315, 347 (D.N.J. 2008). "For the purpose of determining standing, [however,] the court must accept as true all material allegations set forth in the plaintiffs' complaint and must construe those facts in favor of the plaintiffs." See In re Suprema Specialties, 438 F.3d at 274 n.7 (noting that, "[a]t the pleading stage, . . . we accept as true plaintiffs' allegations that they made their stock purchases in or traceable to the [company's] public offerings"). Here, Plaintiffs have alleged with supporting details that the Arkansas Teachers purchased shares "pursuant and/or traceable to" to the offering documents associated with Schering's common stock offering on August 9, 2007 and its preferred stock offering on August 10, 2007. Accordingly, because Plaintiffs have adequately alleged that they purchased Schering securities that are traceable to the August 2007 offering, the Court finds that Plaintiffs have sufficiently pled standing to survive the Securities Act Defendants' motion to dismiss.

ii.     Section 15 Claims

Finally, Defendants argue that Plaintiffs' Section 15 claims against Defendants Hassan, Bertolini, Koehler and Susan Ellen Wolf (the "Section 15 Defendants") for control person liability must be dismissed both due to a lack of a predicate offense by Schering as the "controlled person" and because Plaintiffs alleged neither that the Section 15 Defendants had "actual power" over Schering or that they "participated in the illegal activity." See In re Intelligroup Sec. Litig., 527 F. Supp. 2d 262, 280 (D.N.J. 2007). The Court disagrees, however, and finds that the Complaint adequately alleges both that Schering committed primary violations of Sections 11 and 12(a)(2) of the Securities Act, and that the Section 15 Defendants actually

13

controlled Schering and participated in its violations of the Securities Act.  Accordingly, the

Securities Act Defendants' motion to dismiss the Section 15 claims is denied.

**III.**    C<small>ONCLUSION</small>

For the reasons stated, it is the finding of this Court that Defendants' motions to dismiss are

**denied**.  An appropriate Order accompanies this Opinion.

          S/ Dennis M. Cavanaugh
         Dennis M. Cavanaugh, U.S.D.J.

Date:        August   31  , 2009
Orig.:       Clerk
cc:         All Counsel of Record
             Hon. Mark Falk, U.S.M.J.
             File