Douglas S. Eakeley
Gavin J. Rooney
Jason Halper
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500

Richard A. Spehr
Richard Ben-Veniste
**MAYER BROWN LLP**
1909 K Street NW
Washington, DC 20006
202.263.3000
*Attorneys for the Schering Defendants*

Daniel J. Kramer
Andrew G. Gordon
Robyn Tarnofsky
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
212.373.3000
*Attorneys for Merck & Co., Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SCHERING-PLOUGH CORPORATION/ENHANCE SECURITIES LITIGATION | DOCUMENT ELECTRONICALLY FILED<br><br>Lead Case No. 08-397 (DMC) (MF) (Securities Class Action)<br><br>**THE SCHERING DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO THE CONSOLIDATED CLASS ACTION COMPLAINT** |
| THIS DOCUMENT RELATES TO: ALL CASES | **JURY TRIAL DEMANDED** |

Defendants Merck & Co., Inc. f/k/a Schering-Plough Corporation,

Merck/Schering-Plough Distribution Services LLC d/b/a Merck/Schering-Plough

Pharmaceuticals, Fred Hassan, Carrie S. Cox, Robert J. Bertolini and Steven H. Koehler (the

"Exchange Act Defendants"), and Merck & Co., Inc. f/k/a Schering-Plough Corporation, Fred

Hassan, Robert J. Bertolini, Steven H. Koehler, Susan Ellen Wolf, Hans W. Becherer, Thomas J.

Colligan, C. Robert Kidder, Philip Leder, M.D., Eugene R. McGrath, Carl E. Mundy, Jr.,

Antonio M. Perez, Patricia F. Russo, Jack L. Stahl, Kathryn C. Turner, Robert F.W. Van Oordt

and Arthur F. Weinbach (the "Schering Securities Act Defendants") (collectively, the "Exchange

Act Defendants" and the "Schering Securities Act Defendants" will be referred to as the

"Schering Defendants"), through their attorneys, Lowenstein Sandler PC, Mayer Brown LLP,

and Paul, Weiss, Rifkind, Wharton & Garrison LLP, answer the Consolidated Class Action

Complaint (the "Complaint") as follows:

As a preliminary matter, the Complaint fails to comply with the pleading

requirements of *Fed. R. Civ. P.* 8(d)(1), which requires the allegations in a complaint to be

"simple, concise, and direct." Here, each paragraph in the Complaint contains multiple

sentences, and long-winded and argumentative allegations -- as the Complaint rambles on for

230 pages and 588 paragraphs. It is therefore virtually impossible for the Schering Defendants to

answer each paragraph with a simple "admit" or "deny" response. The Schering Defendants

should not have to answer the Complaint under these circumstances. *See In re Westinghouse*

*Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996) (holding that district court properly dismissed

various portions of a Section 10(b) securities fraud claim where the complaint "rambles for more

than 600 paragraphs and 240 pages"; and rejecting plaintiffs' argument that such a windy

complaint did not violate the "simple, concise, and direct" requirement of Rule 8 due to the

heightened pleading requirements for securities fraud claims).

It is also virtually impossible for the Schering Defendants to properly respond to

the core allegations of securities fraud in this case, given that the Complaint contains lengthy

block quotes from Schering-Plough's public statements. The Schering Defendants are therefore

left guessing whether Plaintiffs are claiming that all of the statements quoted in the Complaint

were misleading, whether only a portion of the statements were misleading, whether only the

ones italicized and bolded were misleading, or whether it is some combination of the three.  That is plainly improper.  *See In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005) (dismissing securities fraud complaint where plaintiffs listed "lengthy quotations from various releases by [defendants] . . . [followed by] a similar (in most cases identical) laundry list of 'specific' reasons why the statements are allegedly false.").

Subject to and without waiving the foregoing defenses and objections, the Schering Defendants have attempted to answer the Complaint to the best of their abilities.  For the allegations in the Complaint that pertain only to the Exchange Act Defendants or the Schering Securities Act Defendants, only those particular defendants have answered.

Any allegations in the Complaint requiring a response that are not specifically admitted below are hereby "*Denied*."

## NATURE OF THE ACTION

The Schering Defendants note that the introductory paragraph beginning on page 1 of the Complaint is not numbered, and merely contains Lead Plaintiffs' summary of the claims in this case and the materials supposedly reviewed by Lead Plaintiffs' counsel.  To the extent that a response is required to such a paragraph, the Schering Defendants deny knowledge or information as to what counsel for Lead Plaintiffs reviewed or what type of "investigation" counsel conducted before filing the Complaint in this matter.

1.     The Schering Defendants admit that the Complaint purports to assert claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 on behalf of persons or entities who purchased or acquired Schering-Plough securities during the period between July 24, 2006 and March 28, 2008, but deny that (i) the Schering Defendants committed any violations of the federal securities laws, (ii) any of the defendants made materially false or

misleading statements during the Class Period, (iii) any of the defendants engaged in any misconduct and/or negligence, and (iv) Lead Plaintiffs and the Class suffered any injury.

2.     The Schering Defendants deny the allegations in Paragraph 2, except admit that they purport to describe Lead Plaintiffs' claims.

3.     The Schering Defendants admit that research has shown that statins work by inhibiting the synthesis of low density lipoprotein ("LDL") in the liver.   The Schering Defendants also admit that statins, as well as other non-statin means of lowering LDL, have been shown in clinical trials to reduce the risk of future cardiovascular disease, as well as events such as heart attacks and strokes, and to potentially increase survival rates in certain patient populations.  The Schering Defendants deny knowledge or information sufficient to form a belief as to the first sentence of Paragraph 3.  The Schering Defendants deny the remaining allegations in Paragraph 3 to the extent that Lead Plaintiffs are suggesting that lowering LDL cholesterol levels is not beneficial to patients.

4.     The Schering Defendants admit that ezetimibe is not a statin and that it is a cholesterol absorption inhibitor; that Vytorin® is a fixed-dose combination medication comprised of Zetia® and simvastatin; that Zocor® is a statin marketed by Merck; and that Zetia has not been demonstrated to prevent heart disease or cardiovascular-related deaths in clinical trials.   The Schering Defendants deny the remaining allegations in Paragraph 4, including to the extent that Lead Plaintiffs are suggesting that there are no clinical trials demonstrating that the use of Zetia or Vytorin lowers LDL cholesterol levels, or that there are no clinical trials demonstrating that the use of those drugs provides cardiovascular benefits to patients.

5.     The Schering Defendants admit that ENHANCE was not structured to compare "clinical endpoints" such as heart attacks or cardiovascular-related deaths.   The

Schering Defendants deny the remaining allegations in Paragraph 5 because they mischaracterize the purpose of the ENHANCE study.  ENHANCE was a small trial that compared the change in arterial wall thickening in only 720 patients suffering from familial hypercholesterolemia ("HeFH") -- *i.e.*, very high cholesterol -- who took either Vytorin or simvastatin alone over a two-year period.  HeFH is a rare disorder involving very elevated plasma concentrations of LDL cholesterol and accelerated coronary artery disease that affects approximately 0.2% of the population.

6.     The Schering Defendants deny knowledge or information sufficient to form a belief as to whether the results of the ENHANCE study were "of great public interest and highly anticipated," and refer to the December 12, 2007 article in the *New York Times* for its complete and accurate text.

7.     The Schering Defendants admit that the ENHANCE study showed no statistically significant difference in carotid intima-media thickness of participants in the study treated with ezetimibe/simvastatin as compared with those treated with simvastatin alone.  The Schering Defendants deny the remaining allegations in Paragraph 7, including that the results of the ENHANCE study were "an unqualified disaster" and that ENHANCE raised the possibility that ezetimibe is only an "expensive placebo."  To the extent Lead Plaintiffs are attempting to quote from the statements of Dr. Harlan Krumholz, the Schering Defendants refer to those statements for their complete and accurate text.  And to the extent Lead Plaintiffs are attempting to characterize the results of the ENHANCE study, the results of that study speak for themselves, and the Schering Defendants deny any characterizations inconsistent therewith.

8.     The Exchange Act Defendants deny that they failed to disclose the results of the ENHANCE study to the market "for over a year."  The Exchange Act Defendants deny the

remaining allegations in Paragraph 8 to the extent they refer to public disclosures that are not specifically identified.  The Exchange Act Defendants further deny the remaining allegations in Paragraph 8 to the extent that Lead Plaintiffs are suggesting that the Exchange Act Defendants made any false or misleading statements during the Class Period; specifically, the Exchange Act Defendants deny that there was anything false or inaccurate about (i) Schering-Plough's disclosure of historical sales information of Vytorin and Zetia, (ii) the company's reference to the science favoring Vytorin and Zetia, or (iii) its statements about Vytorin's ability to lower cholesterol levels.  Finally, with respect to the last sentence of Paragraph 8 directed against the Schering Securities Act Defendants, the Schering Securities Act Defendants deny the allegations in that sentence to the extent those allegations suggest that the Offering Documents in connection with Schering-Plough's August 2007 public stock offering contained any false or misleading statements.  The Schering Securities Act Defendants do, however, admit that in August 2007, Schering-Plough sold $1.58 billion of common stock in a common stock offering and $2.5 billion of preferred stock in a preferred stock offering, and refer to the Offering Documents as the best evidence of their content.

9.      The Schering Defendants deny the allegations in Paragraph 9.

10.     The Schering Defendants deny the allegations in Paragraph 10.  To the extent that Paragraph 10 refers to reports by any consultants, contents of the website CaféPharma.com, or communications with ENHANCE's Principal Investigator, the Schering Defendants refer to those sources for the contents thereof.

11.     The Schering Defendants deny the allegations in Paragraph 11, except admit that Vytorin lowered LDL cholesterol more than simvastatin alone in ENHANCE.  The Schering Defendants further admit that Dr. Kastelein made a presentation about the ENHANCE

results at the March 30, 2008 conference held by the American College of Cardiology ("ACC"), and that the results of the ENHANCE study showed no statistically significant difference in the carotid intima-media thickness of participants in the study treated with ezetimibe/simvastatin as compared with those treated with simvastatin alone.

12.     The Schering Defendants deny the allegations in Paragraph 12, except admit that Merck's patent on Zocor has expired.

## CLAIMS ASSERTED IN THE COMPLAINT

13.     The allegations in Paragraph 13 state legal conclusions to which no response is necessary.  To the extent a response is necessary, the Exchange Act Defendants admit that the Complaint purports to set forth claims under the Securities Exchange Act of 1934, but deny the remaining allegations in Paragraph 13.

14.     The allegations in Paragraph 14 state legal conclusions to which no response is necessary.  To the extent a response is necessary, the Schering Securities Act Defendants admit that the Complaint purports to set forth claims under the Securities Act of 1933.  The Schering Securities Act Defendants deny the remaining allegations in Paragraph 14.

## JURISDICTIONAL AND VENUE

15.     The allegations contained in Paragraph 15 state legal conclusions to which no response is required.  To the extent a response is required, the Schering Defendants admit that the Lead Plaintiffs purport to base jurisdiction over the subject matter of this action pursuant to the statutes cited therein.

16.     The allegations contained in Paragraph 16 state legal conclusions to which no response is required.  To the extent a response is required, the Schering Defendants admit that venue is proper in the United States District Court for the District of New Jersey, but deny that

they committed any violations of any federal securities laws and deny that any of the claims asserted against them have merit.

17.     The allegations in Paragraph 17 state legal conclusions to which no response is required.  To the extent that a response is required, the Schering Defendants deny the allegations, except admit that the Schering Securities Act Defendants used the mails, interstate telephone communications and/or the facilities of national securities exchanges in connection with the August 2007 public stock offering.

## PARTIES

18.     The Schering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18, except deny that the Arkansas Teacher Retirement System have suffered any damages in this matter.

19.     The Schering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19, except deny that the Public Employees' Retirement System of Mississippi has suffered any damages in this matter.

20.     The Schering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, except deny that the Louisiana Municipal Police Employees' Retirement System has suffered any damages in this matter.

21.     The Schering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, except deny that Massachusetts Pension Reserves Investment Management Board has suffered any damages in this matter.

22.     The allegations in Paragraph 22 contain legal conclusions as to which no response is required.  To the extent that a response is required, the Schering Defendants refer to the April 18, 2008 Order for the contents thereof.

23.     The Schering Defendants admit that at the time the Complaint was filed, Schering-Plough was a New Jersey corporation with its principal place of business located at 2000 Galloping Hill Road, Kenilworth, New Jersey.  On November 3, 2009, however, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Accordingly, effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.  The Schering Defendants refer to Merck's public filings and its website for a description of the transaction and Schering-Plough's business.  The Schering Defendants deny the remaining allegations in Paragraph 23.

24.     The Schering Defendants admit the allegations in Paragraph 24, except deny that Merck/Schering-Plough Pharmaceuticals ("M/SP") issued any false or misleading statements to investors.

25.     The Schering Defendants deny the allegations in Paragraph 25, except admit that Fred Hassan began serving as Schering-Plough's Chief Executive Officer, President and Chairman in April 2003.  On November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

26.     The Schering Defendants deny the allegations in Paragraph 26, except admit that Carrie Cox began serving as Schering-Plough's Executive Vice President, and President of the Company's Global Pharmaceuticals Business, in May 2003.  On November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

27.     The Schering Defendants deny the allegations in Paragraph 27, except admit that Robert J. Bertolini began serving as Schering-Plough's Chief Financial Officer and as an Executive Vice President in November 2003.  On November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

28.     The Schering Defendants deny the allegations in Paragraph 28, except admit that Steven H. Koehler began serving as Schering-Plough's Controller and Vice President in 2006.  On November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.  Mr. Koehler's current title with Merck is Vice President, Schering-Plough Controller and Strategic Projects.

29.     Paragraph 29 purports to describe Plaintiffs' own Complaint, to which no response is required.  To the extent a response is required, the Schering Defendants admit that Lead Plaintiffs have defined Schering-Plough, M/SP, Hassan, Cox, Bertolini and Koehler as the "The Exchange Act Defendants."   The Schering Defendants further admit that the other defendants named in this case have been sued only for claims arising under the Securities Act of 1933.

30.     The Schering Defendants deny that Susan Ellen Wolf signed any documents or statements that were materially misleading.  The Schering Defendants admit that Susan Ellen Wolf formerly held the positions at Schering-Plough identified in Paragraph 30, but she does not currently hold any positions within Schering-Plough given that on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been

publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

31.     The Schering Defendants deny that Hans W. Becherer signed any documents or statements that were materially misleading.  The Schering Defendants admit that Hans W. Becherer was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

32.     The Schering Defendants deny that Thomas J. Colligan signed any documents or statements that were materially misleading.  The Schering Defendants admit that Thomas J. Colligan was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

33.     The Schering Defendants deny that C. Robert Kidder signed any documents or statements that were materially misleading.  The Schering Defendants admit that C. Robert Kidder was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

34.     The Schering Defendants deny that Philip Leder signed any documents or statements that were materially misleading.  The Schering Defendants admit that Philip Leder was formerly a member of Schering-Plough's Board of Directors.  However, on November 3,

2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

35.     The Schering Defendants deny that Eugene R. McGrath signed any documents or statements that were materially misleading.  The Schering Defendants admit that Eugene R. McGrath was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

36.     The Schering Defendants deny that Carl E. Mundy, Jr. signed any documents or statements that were materially misleading.  The Schering Defendants admit that Carl E. Mundy, Jr. was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

37.     The Schering Defendants deny that Antonio M. Perez signed any documents or statements that were materially misleading.  The Schering Defendants admit that Antonio M. Perez was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

38.     The Schering Defendants deny that Patricia F. Russo signed any documents or statements that were materially misleading.  The Schering Defendants admit that

Patricia F. Russo was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

39.     The Schering Defendants deny that Jack L. Stahl signed any documents or statements that were materially misleading.  The Schering Defendants admit that Jack L. Stahl was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

40.     The Schering Defendants deny that Kathryn C. Turner signed any documents or statements that were materially misleading.  The Schering Defendants admit that Kathryn C. Turner was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

41.     The Schering Defendants deny that Robert F.W. van Oordt signed any documents or statements that were materially misleading.  The Schering Defendants admit that Robert F.W. van Oordt was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

42.     The Schering Defendants deny that Arthur F. Weinbach signed any documents or statements that were materially misleading.  The Schering Defendants admit that Arthur W. Weinbach was formerly a member of Schering-Plough's Board of Directors.  However, on November 3, 2009, Schering-Plough and Merck & Co., Inc. completed a corporate transaction that had been publicly announced on March 9, 2009.  Effective November 3, 2009, Schering-Plough changed its name to Merck & Co., Inc.

43.     Paragraph 43 purports to describe Plaintiffs' own complaint, to which no response is required.  To the extent a response is required, the Schering Defendants admit that the Lead Plaintiffs have defined Defendants Becherer, Colligan, Kidder, Leder, McGrath, Mundy, Perez, Russo, Stahl, Turner, van Oordt and Weinbach as the "Director Defendants."

44.     The Schering Defendants deny the allegations contained in Paragraph 44, except admit that the Underwriting Defendants participated as underwriters and earned customary fees in connection with the Offering, and refer to the Offering Documents for a description of the Offering and the underwriting arrangements relating thereto.

45.     The allegations in Paragraph 45 state legal conclusions and are not directed to the Schering Defendants and, therefore, the Schering Defendants are not required to answer such allegations.

46.     The allegations in Paragraph 46 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Goldman, Sachs & Co. is an investment banking and securities firm, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

47.    The allegations in Paragraph 47 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Bank of America Securities LLC is an investment banking firm, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

48.    The allegations in Paragraph 48 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Bear, Stearns & Co. Inc. was an investment banking firm at the time of the Offerings, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.  The Schering Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding JPMorgan Chase & Co.'s acquisition of Bear Stearns.

49.    The allegations in Paragraph 49 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Citigroup Global Markets, Inc. is an investment banking firm, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

50.    The allegations in Paragraph 50 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Morgan Stanley & Co. Incorporated is an investment banking firm, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

51.     The allegations in Paragraph 51 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that BNP Paribas Securities Corp. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

52.     The allegations in Paragraph 52 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that JP Morgan Securities Inc. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

53.     The allegations in Paragraph 53 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Credit Suisse Securities (USA) LLC is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

54.     The allegations in Paragraph 54 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Daiwa Securities America Inc. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

55.     The allegations in Paragraph 55 are not directed to the Schering Defendants.   To the extent that an answer is required, the Schering Defendants admit that Santander Investment Securities Inc. is an investment banking firm, and that it participated as an

underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

56.   The allegations in Paragraph 56 are not directed to the Schering Defendants.   To the extent that an answer is required, the Schering Defendants admit that Utendahl Capital Partners, L.P. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

57.   The allegations in Paragraph 57 are not directed to the Schering Defendants.   To the extent that an answer is required, the Schering Defendants admit that The Williams Capital Group, L.P. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

58.   The allegations in Paragraph 58 are not directed to the Schering Defendants.   To the extent that an answer is required, the Schering Defendants admit that ABN AMRO Rothschild LLC is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

59.   The allegations in Paragraph 59 are not directed to the Schering Defendants.   To the extent that an answer is required, the Schering Defendants admit that BNY Capital Markets, Inc. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

60.     The allegations in Paragraph 60 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that ING Financial Markets LLC is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

61.     The allegations in Paragraph 61 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Mizuho Securities USA Inc. is an investment banking firm, and that it participated as an underwriter in the Offerings.   The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

62.     The allegations in Paragraph 62 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that Banca IMI SpA is an investment banking firm, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

63.     The allegations in Paragraph 63 are not directed to the Schering Defendants.  To the extent that an answer is required, the Schering Defendants admit that BBVA Securities Inc. is an investment banking firm, and that it participated as an underwriter in the Offerings.  The Schering Defendants respectfully refer the Court to the Offering Documents for a description of the underwriting arrangements.

64.     Paragraph 64 purports to describe Plaintiffs' own complaint, to which no response is required.  To the extent a response is required, the Schering Defendants admit that Lead Plaintiffs have defined Defendants Goldman Sachs, Banc of America, Bear Stearns,

Citigroup, Morgan Stanley, BNP Paribas, J.P. Morgan, Credit Suisse, Daiwa Securities, Santander Securities, Utendahl Capital, Williams Capital, Banca IMI, and BBVA Securities as the "Common Stock Underwriter Defendants."

65.     Paragraph 65 purports to describe Plaintiffs' own complaint, to which no response is required.  To the extent a response is required, the Schering Defendants admit that Lead Plaintiffs have defined Defendants Goldman Sachs, Banc of America, Bear Stearns, Citigroup, Morgan Stanley, BNP Paribas, J.P. Morgan, Credit Suisse, Daiwa Securities, Santander Securities, Utendahl Capital, Williams Capital, ABN AMRO, BNY Capital, ING Financial, and Mizuho Securities as the "Preferred Stock Underwriter Defendants."

66.     Paragraph 66 purports to describe Plaintiffs' own complaint, to which no response is required.  To the extent a response is required, the Schering Defendants admit that Lead Plaintiffs have defined Defendants Schering-Plough, Hassan, Bertolini, Koehler and Wolf, the Director Defendants and the Underwriter Defendants as the "Securities Act Defendants."

## CLASS ACTION ALLEGATIONS

67.     The allegations in Paragraph 67 state legal conclusions as to which no response is required.  To the extent a response is required, the Schering Defendants deny the allegations, except admit that Lead Plaintiffs purport to bring this action as a class action, and that Lead Plaintiffs have attempted to define the class as all persons and entities who purchased or acquired Schering-Plough securities during the period between July 24, 2006 and March 28, 2008 (the "Class Period"), with the exception of the groups identified in categories (a) through (g) in Paragraph 67.

68.     The allegations contained in Paragraph 68 state legal conclusions as to which no response is required.  To the extent a response is required, the Schering Defendants

admit that Schering-Plough securities were listed and traded on the New York Stock Exchange, and that Schering conducted the Offering in August 2007.  The Schering Defendants refer to the Offering Documents and Schering-Plough's public filings for a description of the Offering and the number of Schering-Plough's outstanding shares of common stock.  The Schering Defendants deny the remaining allegations in Paragraph 68.

69.     The Schering Defendants deny the allegations in Paragraph 69.

70.     The Schering Defendants deny the allegations in Paragraph 70.

71.     The Schering Defendants deny the allegations in Paragraph 71.

72.     The Schering Defendants deny the allegations in Paragraph 72.

73.     The Schering Defendants deny the allegations in Paragraph 73, except to admit that the names and addresses of the persons and entities who purchased Schering-Plough securities during the Class Period are available from the company's transfer agent(s).

### EXCHANGE ACT ALLEGATIONS[1]

74.     The Exchange Act Defendants deny the allegations in Paragraph 74.

75.     The Exchange Act Defendants deny the allegations in Paragraph 75, except admit that (i) Schering-Plough and the FDA entered into a consent decree in May 2002 in connection with the company's manufacturing facilities in New Jersey and Puerto Rico, (ii) the consent decree required Schering-Plough to pay the FDA $500 million as a disgorgement, (iii) Claritin had lost patent protection, and (iv) Schering-Plough has long since resolved the government investigations referenced in Paragraph 75.

---

[1] Because Paragraphs 74 through 422 in the Complaint cover Lead Plaintiffs' claims under the Securities Exchange Act of 1934, only the Exchange Act Defendants have answered the allegations in those paragraphs.

76.     The Exchange Act Defendants admit that Fred Hassan was elected as a Director and Chairman of the Board in April 2003.  The Exchange Act Defendants further admit that Schering-Plough issued a press release on April 20, 2003, and refer to that press release for its complete and accurate text.

77.     The Exchange Act Defendants deny the allegations in Paragraph 77, except admit that Fred Hassan had been the CEO of Pharmacia Corp., that Pharmacia acquired Monsanto, and that Pharmacia was sold to Pfizer in 2003.  The Exchange Act Defendants deny knowledge or information as to Pharmacia's profitability during Mr. Hassan's tenure.

78.     Paragraph 78 purports to quote from two different news articles, but the dates of the articles are not identified.  The Exchange Act Defendants therefore deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78.

79.     The Exchange Act Defendants deny the allegations in Paragraph 79, except admit that Schering-Plough and Merck had formed a joint venture, M/SP, to develop and market Vytorin, a medicine that combined the Merck cholesterol drug Zocor with Schering-Plough's cholesterol drug Zetia, and that Schering-Plough and Merck hoped Vytorin would be a success.

80.     The Exchange Act Defendants admit the allegations in Paragraph 80.

81.     The Exchange Act Defendants deny the allegations in Paragraph 81, except admit that the *Wall Street Journal* published an article on August 2, 2006 discussing Schering-Plough and refer to that article for its complete and accurate text.

82.     The Exchange Act Defendants admit that Zetia and Vytorin accounted for significant profits for Schering-Plough in 2006 and 2007.  The Exchange Act Defendants further admit that Paragraph 82 purports to contain partial quotes from Schering-Plough's 2006 and

2007 annual reports (Forms 10-K) and its April 20, 2006 Form 8-K.  The Exchange Act Defendants refer to those Forms 10-K and Form 8-K for their complete and accurate text.

83.     The Exchange Act Defendants deny the allegations in Paragraph 83, and refer to Schering-Plough's public filings for information regarding the sales of Zetia and Vytorin.

84.     Paragraph 84 purports to quote from Schering-Plough's April 20, 2006 Form 8-K.  The Exchange Act Defendants refer to that Form 8-K for its complete and accurate text.  The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 84.

85.     The Exchange Act Defendants deny the allegations in Paragraph 85, except admit that Lead Plaintiffs purport to quote from a February 2005 article in the *American Heart Journal*.  The Exchange Act Defendants refer to that article for its complete and accurate text.

86.     The Exchange Act Defendants admit that Zetia and Vytorin's marketing included the theme that "lower is better."  The Exchange Act Defendants further admit that Vytorin was promoted through television commercials.  The contents of Schering-Plough's marketing materials and television commercials speak for themselves.

87.     Paragraph 87 purports to quote from an article on the *New England Journal of Medicine* website on March 30, 2008 regarding Vytorin.  The Exchange Act Defendants refer to that article for its complete and accurate text.  The Exchange Act Defendants deny the remaining allegations in Paragraph 87.

88.     The Exchange Act Defendants deny the allegations in Paragraph 88, except admit that Lead Plaintiffs purport to quote from various statements made by Schering-

Plough executives.  The Exchange Act Defendants refer to those statements for their complete and accurate text.

89.    The Exchange Act Defendants admit that the February 2005 article discussing ENHANCE published in the *American Heart Journal* cited two articles that discussed statins; that Pfizer announced the results of the "REVERSAL" trial in November 2003 and the IDEAL trial in November 2005; and that Lead Plaintiffs have referred to a March 14, 2006 *New York Times* article discussing ASTEROID and refer to that article for its complete and accurate text.  The Exchange Act Defendants deny the remaining allegations in Paragraph 89.

90.    The Exchange Act Defendants deny the allegations in Paragraph 90 because they mischaracterize the purpose of the ENHANCE study.  The Exchange Act Defendants refer to the "2005 ENHANCE Article" for its complete and accurate text.

91.    Paragraph 91 purports to summarize the contents of a March 30, 2008 NEJM article discussing the ENHANCE results.  The Exchange Act Defendants refer to that article for the complete and accurate contents thereof.

92.    Paragraph 92 purports to summarize the contents of a March 30, 2008 NEJM article discussing the ENHANCE results.  The Exchange Act Defendants refer to that article for the complete and accurate contents thereof.

93.    The Exchange Act Defendants admit the allegations in Paragraph 93, except to the extent that the allegations in Paragraph 93 are characterizations of the methodology used in, or the results of, the ENHANCE study.  The ENHANCE results speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith, and refer to the March 30, 2008 article in *New England Journal of Medicine* for its complete and accurate text.

94. The Exchange Act Defendants admit that the results of the ENHANCE study were released in January 2008 and published online in the *New England Journal of Medicine* on March 30, 2008, and refer to those publications for their complete and accurate text. The Exchange Act Defendants admit that the results of the ENHANCE study showed no statistically significant difference in the carotid intima-media thickness of participants in the study treated with ezetimibe/simvastatin as compared with those treated with simvastatin alone. The ENHANCE results speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith and any remaining allegations in Paragraph 94.

95. The Exchange Act Defendants deny the allegations in Paragraph 95, except admit that the last patient was enrolled in ENHANCE in April 2004 and the last patient visit in ENHANCE occurred in April 2006. The Exchange Act Defendants admit that ultrasound images and other data were collected for participants in ENHANCE. The Exchange Act Defendants also admit that Schering-Plough biostatisticians began conducting routine data quality reviews of the initial blinded ENHANCE data in late 2005.

96. The Exchange Act Defendants deny the allegations in Paragraph 96, except admit that Schering-Plough biostatisticians began conducting routine data quality reviews of the initial blinded ENHANCE data in late 2005 and that Lead Plaintiffs have quoted from a March 24, 2008 *Wall Street Journal* article. The Exchange Act Defendants refer to that article for its complete and accurate text.

97. The Exchange Act Defendants deny the allegations in Paragraph 97, except admit that Schering-Plough biostatisticians began conducting routine data quality reviews of the initial blinded ENHANCE data in late 2005; that Dr. Enrico Veltri was a co-author of the February 2005 *American Heart Journal* article regarding ENHANCE; that the Lead Plaintiffs

cite from the February 2005 *American Heart Journal* article; and that Dr. Kastelein had been involved in prior clinical trials with HeFH patients measuring carotid intima-media thickness and that he had co-authored the cited journal articles.

98.     The Exchange Act Defendants admit that the Lead Plaintiffs cite certain, but incomplete, data from the "ASAP" and "2003 Simvastatin Trial" publications, and refer to those publications for their complete and accurate text.  The Exchange Act Defendants deny the remaining allegations in Paragraph 98.

99.     The Exchange Act Defendants admit that the Lead Plaintiffs cite to certain carotid artery IMT readings in Paragraph 99 and refer to the ENHANCE publication for its complete and accurate text.  The Exchange Act Defendants further state that the results of the ENHANCE study speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith.

100.     The Exchange Act Defendants admit that Dr. Kastelein made a presentation about ENHANCE at the American College of Cardiology conference in March 2008, and admit that Lead Plaintiffs purport to quote certain remarks made by Dr. Kastelein at that conference.  The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

101.     The Exchange Act Defendants deny the allegations in Paragraph 101, except admit that 80% of the patients in the ENHANCE study had already undergone treatment with high dose statins and, as a result, had unexpectedly low levels of arterial plaque at the outset of the trial, which made it more difficult to detect a between-group difference.

102.     The Exchange Act Defendants admit the final patient visit for ENHANCE was completed in April 2006.  The Exchange Act Defendants deny the remaining allegations in

Paragraph 102, except deny knowledge or information sufficient to form a belief as to what "CW 1" supposedly said to Lead Plaintiffs' counsel.

103.     The Exchange Act Defendants admit that the ENHANCE data remained blinded until December 31, 2007.  The Exchange Act Defendants deny the remaining allegations in Paragraph 103, except deny knowledge or information sufficient to form a belief as to what "CW 1" supposedly said to Lead Plaintiffs' counsel.

104.     The Exchange Act Defendants admit that Schering hired Dr. Bots to provide advice concerning carotid artery IMT issues in the ENHANCE study, and that he attended certain meetings in connection with that work.  The Exchange Act Defendants deny the remaining allegations in Paragraph 104.

105.     The Exchange Act Defendants admit that Dr. Bots issued a report, and that the report was eventually made public.  The Exchange Act Defendants refer to Dr. Bots's report for its complete and accurate text.

106.     The Exchange Act Defendants deny the allegations in Paragraph 106, and refer to Dr. Bots's report for its complete and accurate text.

107.     The Exchange Act Defendants deny the allegations in Paragraph 107, and refer to Dr. Bots's report for its complete and accurate text.

108.     The Exchange Act Defendants deny the allegations in Paragraph 108, and refer to Dr. Bots's report for its complete and accurate text.

109.     The Exchange Act Defendants deny the allegations in Paragraph 109, and refer to Dr. Bots's report for its complete and accurate text.

110.     The Exchange Act Defendants deny the allegations in Paragraph 110, and refer to Dr. Bots's report for its complete and accurate text.

111.    The Exchange Act Defendants deny the allegations in Paragraph 111, and refer to Dr. Bots's report for its complete and accurate text.

112.    The Exchange Act Defendants deny the allegations in Paragraph 112, and refer to Dr. Bots's report for its complete and accurate text.

113.    The Exchange Act Defendants deny the allegations in Paragraph 113.

114.    The Exchange Act Defendants admit that Merck and Schering-Plough convened an expert panel on November 16, 2007, and that the ENHANCE results were released on January 14, 2008 and published in the *New England Journal of Medicine* on March 30, 2008. The Exchange Act Defendants deny the remaining allegations in Paragraph 114.

115.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115, except admit that Café Pharma (www.cafepharma.com) is an Internet website.

116.    The Exchange Act Defendants deny the allegations in Paragraph 116.

117.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117.

118.    The Exchange Act Defendants deny the allegations in Paragraph 118, except admit that posts about ENHANCE have appeared on the Café Pharma website.

119.    The Exchange Act Defendants deny the allegations in Paragraph 119, except admit that the posts on the Café Pharma site are anonymous and do not have sufficient indicia of reliability, and that the ENHANCE results were released on January 14, 2008 and published in the *New England Journal of Medicine* on March 30, 2008.

120.    The Exchange Act Defendants admit that a post about ENHANCE appeared on the Café Pharma site purportedly on or about March 7, 2007.  The Exchange Act Defendants refer to that post for its complete and accurate text.

121.    The Exchange Act Defendants deny the allegations in Paragraph 121, except admit that a post about Zetia appeared on the Café Pharma site on or about March 13, 2007 and that Dr. Kastelein made statements regarding ENHANCE in March 2008, to which the Exchange Act Defendants refer for their complete and accurate text.

122.    The Exchange Act Defendants deny the allegations in Paragraph 122, except admit that Lead Plaintiffs purport to quote certain statements made by Fred Hassan during Schering-Plough's April 19, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that conference call for its complete and accurate text.

123.    The Exchange Act Defendants deny the allegations in Paragraph 123, except admit that additional posts about ENHANCE appeared on the Café Pharma website.

124.    The Exchange Act Defendants admit that a post about ENHANCE appeared on the Café Pharma site purportedly on or about June 3, 2007.  The Exchange Act Defendants refer to that post for its complete and accurate text.

125.    The Exchange Act Defendants deny the allegations in Paragraph 125.

126.    The Exchange Act Defendants deny the allegations in Paragraph 126, except admit that Dr. Kastelein sent an e-mail to Dr. John Strony on or about July 6, 2007.  The Exchange Act Defendants refer to that e-mail for its complete and accurate text.

127.    The Exchange Act Defendants deny the allegations in Paragraph 127, except admit that Dr. Strony sent a reply e-mail to Dr. Kastelein.  The Exchange Act Defendants refer to Dr. Strony's reply e-mail for its complete and accurate text.

128.     The Exchange Act Defendants admit that Dr. Kastelein sent Dr. Strony an e-mail on or about July 7, 2007.  The Exchange Act Defendants refer to that e-mail for its complete and accurate text.

129.     The Exchange Act Defendants admit that Dr. Kastelein sent an e-mail to Dr. Rick Veltri on or about July 13, 2007.  The Exchange Act Defendants refer to that e-mail for its complete and accurate text.

130.     The Exchange Act Defendants deny the allegations in Paragraph 130, except deny knowledge or information sufficient to know what "CW 2" supposedly said to Lead Plaintiffs' counsel.

131.     The Exchange Act Defendants deny the allegations in Paragraph 131, except admit that a post about ENHANCE was made on the Café Pharma site purportedly on or about July 19, 2007.  The Exchange Act Defendants refer to that post for its complete and accurate text.

132.     The Exchange Act Defendants deny the allegations in Paragraph 132, except admit that a post about ENHANCE was made on the Café Pharma site purportedly on or about July 24, 2007.  The Exchange Act Defendants refer to that post for its complete and accurate text.

133.     The Exchange Act Defendants deny the allegations in Paragraph 133, except admit that a post about ENHANCE was made on the Café Pharma site purportedly on or about September 20, 2007.  The Exchange Act Defendants refer to that post for its complete and accurate text.

134.     The Exchange Act Defendants deny the allegations in Paragraph 134, except admit that a post about ENHANCE was made on the Café Pharma site purportedly on or

about November 14, 2007.  The Exchange Act Defendants refer to that post for its complete and accurate text.

135.    The Exchange Act Defendants deny the allegations in Paragraph 135.

136.    The Exchange Act Defendants admit that Schering-Plough conducted a public stock offering in August 2007.  The Exchange Act Defendants further admit that Schering-Plough sold $1.58 billion of common stock in a common stock offering, and $2.5 billion of preferred stock in a preferred stock offering.  The Exchange Act Defendants deny the remaining allegations in Paragraph 136, except admit that the Offering was conducted in part to finance the acquisition of Organon Biosciences N.V., and admit that Lead Plaintiffs purport to quote parts of Fred Hassan's statements from a March 2007 announcement of the Organon acquisition.  The Exchange Act Defendants refer to the March 2007 announcement for its complete and accurate text.

137.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to how Morgan Stanley and Citigroup analysts reacted to the Organon acquisition.  To the extent Paragraph 137 is quoting from securities analyst reports, the Exchange Act Defendants refer to those reports for their complete and accurate text.

138.    The Exchange Act Defendants deny the allegations in Paragraph 138, except admit that Schering-Plough filed a Registration Statement on Form S-3ASR with the Securities and Exchange Commission on or about August 2, 2007.  The Exchange Act Defendants refer to the "Offering Documents" for their complete and accurate text.

139.    The Exchange Act Defendants deny the allegations in Paragraph 139.

140.    The Exchange Act Defendants admit the allegations in Paragraph 140, and refer to the November 19, 2007 press release for its complete and accurate text.

141.    The Exchange Act Defendants admit that M/SP convened a panel of experts on November 16, 2007 to consult on the blinded ENHANCE data; that the panel members included J. Robin Crouse, M.D., of Wake Forest University, James Stein, M.D., of the University of Wisconsin, David Orloff, M.D., at Med Pace, Greg Evans, M.S., of Wake Forest University, and Dr. Michiel Bots; that certain Merck and Schering-Plough employees also attended the meeting, including Drs. Strony and Veltri; and that Dr. Kastelein did not attend the meeting.  The Exchange Act Defendants deny the remaining allegations in Paragraph 141.

142.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142.

143.    The Exchange Act Defendants deny the allegations in Paragraph 143, except admit that Dr. Strony circulated draft minutes of the November 16, 2007 meeting and that Dr. Stein offered comments to the draft.  The draft minutes and comments thereto speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith.

144.    The Exchange Act Defendants admit that Dr. Stein sent an e-mail on or about December 21, 2007.  The Exchange Act Defendants refer to that e-mail for its complete and accurate text.

145.    The Exchange Act Defendants deny the allegations in Paragraph 145.

146.    The Exchange Act Defendants deny the allegations in Paragraph 146, except admit that certain materials were prepared for the November 16, 2007 meeting by individuals at Schering-Plough.  The Exchange Act Defendants refer to those materials for their complete and accurate text.

147.    The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from the draft minutes of the November 16, 2007 meeting.  The Exchange Act Defendants refer

to those draft minutes for their complete and accurate text.  The Exchange Act Defendants also refer to Dr. Stein's December 21, 2007 e-mail for its complete and accurate text.

148.    The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from Dr. Stein's December 21, 2007 e-mail.  The Exchange Act Defendants refer to that e-mail for its complete and accurate text.

149.    The Exchange Act Defendants deny the allegations in Paragraph 149.

150.    The Exchange Act Defendants deny the allegations in Paragraph 150, except admit that Dr. Stein sent an e-mail on or about January 3, 2008.  The Exchange Act Defendants refer to that e-mail for its complete and accurate text.

151.    The Exchange Act Defendants deny the allegations in Paragraph 151.

152.    The Exchange Act Defendants deny the allegations in Paragraph 152, except admit that M/SP issued a press release on November 19, 2007.  The Exchange Act Defendants refer to that press release for its complete and accurate text.

153.    The Exchange Act Defendants deny the allegations in Paragraph 153, and refer to the November 19, 2007 press release and the November 21, 2007 *New York Times* article for their complete and accurate text.

154.    The Exchange Act Defendants deny the allegations in Paragraph 154, and refer to the November 21, 2007 *New York Times* article for its complete and accurate text.

155.    The Exchange Act Defendants deny the allegations in Paragraph 155, except deny knowledge or information as to what clinical trials "CW 2" has supposedly been associated with.

156. The Exchange Act Defendants deny knowledge or information as to the truth of the allegations in Paragraph 156, except admit that the Department for Medical Service Liaisons was designed to, among other things, serve as a resource to physicians.

157. The Exchange Act Defendants deny the allegations in Paragraph 157. To the extent that the allegations of Paragraph 157 are characterizations of the results of the ENHANCE study, the Exchange Act Defendants state that the results of that study speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith.

158. The Exchange Act Defendants deny the allegations in Paragraph 158.

159. The Exchange Act Defendants deny the allegations in Paragraph 159, except admit that *Forbes* published an article on November 19, 2007 discussing the ENHANCE study. The Exchange Act Defendants refer to that article for its complete and accurate text.

160. The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from the November 19, 2007 *Forbes* article. The Exchange Act Defendants refer to that article for its complete and accurate text.

161. The Exchange Act Defendants admit that M/SP registered the ENHANCE trial on the government website clinicaltrials.org on or around October 31, 2007, and admit that on October 23, 2007, Matt Herper of *Forbes* and Skip Irvine of M/SP exchanged e-mails regarding several subjects, including ENHANCE's listing on clinicaltrials.gov. The Exchange Act Defendants deny the remaining allegations in Paragraph 161, and refer to the November 19, 2007 *Forbes* article for its complete and accurate text.

162. The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from a November 21, 2007 *New York Times* article, and refer to that article for its complete and accurate text.

163.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163.

164.    The Exchange Act Defendants admit that Representatives Dingell and Stupak sent letters to Schering-Plough and Merck on or about December 11, 2007. The Exchange Act Defendants refer to those letters for their complete and accurate text.

165.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165.  To the extent Lead Plaintiffs are relying on an article written by the *New York Times*, the Exchange Act Defendants refer to that article for its complete and accurate text.

166.    The Exchange Act Defendants deny the allegations in Paragraph 166, except admit that Lead Plaintiffs purport to quote from a "Frequently Asked Questions" post on Schering-Plough's website.  The Exchange Act Defendants refer to that post for its complete and accurate text.

167.    The Exchange Act Defendants deny the allegations in Paragraph 167, except admit that the *Wall Street Journal* published an article on December 17, 2007 regarding ENHANCE.  The Exchange Act Defendants refer to that article for its complete and accurate text.

168.    The Exchange Act Defendants deny the allegations in Paragraph 168, and refer to the full statements from which the Lead Plaintiffs quote for their complete and accurate text.

169.    The Exchange Act Defendants admit that the ENHANCE results were released on January 14, 2008.  To the extent that Lead Plaintiffs cite to the November 19, 2007

M/SP press release, the Exchange Act Defendants refer to that release for its complete and accurate text. The Exchange Act Defendants deny the remaining allegations in Paragraph 169.

170.    The Exchange Act Defendants deny the allegations in Paragraph 170. To the extent that the allegations of Paragraph 170 are characterizations of the results of the ENHANCE study, the Exchange Act Defendants state that the results of that study speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith.

171.    The Exchange Act Defendants deny the allegations in Paragraph 171, except admit that Fred Hassan made certain statements at a January 3, 2008 conference hosted by Morgan Stanley. The Exchange Act Defendants refer to the transcript of the January 3, 2008 conference for its complete and accurate text.

172.    The Exchange Act Defendants deny the allegations in Paragraph 172, except admit that M/SP released the results of the ENHANCE trial on January 14, 2008; and that the results of the ENHANCE study showed no statistically significant difference in the carotid intima-media thickness of participants in the study treated with ezetimibe/simvastatin as compared with those treated with simvastatin alone. The Exchange Act Defendants refer to the January 14, 2008 press release for its complete and accurate text.

173.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief about what Dr. Steven Nissen thought or said in response to the results of the ENHANCE study. To the extent Lead Plaintiffs are relying on comments published by *Dow Jones* or the *Journal of American Medical Association*, the Exchange Act Defendants refer to the articles in those publications for their complete and accurate text.

174.    The Exchange Act Defendants admit that Representatives Dingell and Stupak made public comments in response to the publication of the ENHANCE results, and refer to those statements for their complete and accurate text.

175.    The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175.  To the extent Lead Plaintiffs are relying on analyst reports issued by Cowen & Company and Merrill Lynch, the Exchange Act Defendants refer to those reports for their complete and accurate text.

176.    The Exchange Act Defendants deny the allegations in Paragraph 176, except admit that Lead Plaintiffs purport to quote from a January 15, 2008 *New York Times* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

177.    The Exchange Act Defendants deny the allegations in Paragraph 177, except admit that Lead Plaintiffs purport to quote from a January 16, 2008 *New York Times* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

178.    The Exchange Act Defendants deny the allegations in Paragraph 178, except admit that Lead Plaintiffs purport to quote from a January 17, 2008 *Newsweek* article. The Exchange Act Defendants refer to that article for its complete and accurate text.

179.    The Exchange Act Defendants deny the allegations in Paragraph 179, except refer to publicly reported market services for the trading price of Schering-Plough's stock.

180.    The Exchange Act Defendants deny the allegations in Paragraph 180, except admit that Lead Plaintiffs purport to quote from a January 17, 2008 *Wall Street Journal* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

181.    The Exchange Act Defendants deny the allegations in Paragraph 181, and refer to the January 17, 2008 *Wall Street Journal* article for its complete and accurate text.

182.    The Exchange Act Defendants deny the allegations in Paragraph 182, except admit that Representatives Dingell and Stupak sent letters to Merck and Schering-Plough dated January 16, 2008.   The Exchange Act Defendants refer to those letters for their complete and accurate text.

183.    The Exchange Act Defendants admit that Representatives Dingell and Stupak sent letters to Merck and Schering-Plough dated January 22, 2008.   The Exchange Act Defendants refer to those letters for their complete and accurate text.

184.    The Exchange Act Defendants deny the allegations in Paragraph 184, except admit that M/SP voluntarily suspended direct-to-consumer television advertising for Vytorin and Zetia beginning the week of January 14, 2008.

185.    The Exchange Act Defendants admit that Representatives Dingell and Stupak sent letters to Merck and Schering-Plough dated January 24, 2008.   The Exchange Act Defendants refer to those letters for their complete and accurate text.   The Exchange Act Defendants further admit that Senator Grassley sent letters to Merck and Schering-Plough on January 24, 2008, and refer to those letters for their complete and accurate text.

186.    The Exchange Act Defendants deny the allegations in Paragraph 186, except admit that the Food and Drug Administration issued a statement on January 25, 2008, and refer to that statement for its complete and accurate text.

187.    The Exchange Act Defendants deny the allegations in Paragraph 187, except admit that Lead Plaintiffs have cited certain quotes from a January 25, 2008 *Forbes* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

188.     The Exchange Act Defendants deny the allegations in Paragraph 188, except admit that Lead Plaintiffs purport to quote from a January 25, 2008 *Forbes* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

189.     The Exchange Act Defendants deny the allegations in Paragraph 189, except admit that Lead Plaintiffs purport to quote from a January 26, 2008 *Wall Street Journal* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

190.     The Exchange Act Defendants admit the allegations in Paragraph 190.

191.     The Exchange Act Defendants deny the allegations in Paragraph 191, except admit that Representatives Dingell and Stupak sent letters to Merck and Schering-Plough dated February 11, 2008, and admit that Senator Grassley also wrote a letter to Schering-Plough on that date.  The Exchange Act Defendants refer to those letters for their complete and accurate text.

192.     The Exchange Act Defendants deny the allegations in Paragraph 192, except deny knowledge or information sufficient to form a belief as to what doctors and the market believed in response to the publication of the ENHANCE results.

193.     The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from a March 28, 2008 *Dow Jones* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

194.     The Exchange Act Defendants deny the allegations in Paragraph 194, except admit that Dr. Kastelein made a presentation about the ENHANCE results at the March 30, 2008 conference held by the American College of Cardiology ("ACC").

195.     The Exchange Act Defendants admit that the results of the ENHANCE study showed no statistically significant difference in the carotid intima-media thickness of

participants in the study treated with ezetimibe/simvastatin as compared with those treated with simvastatin alone.   The Exchange Act Defendants admit that Dr. Kastelein presented results from ENHANCE at the ACC Conference on March 30, 2008 and refer to Dr. Kastelein's comments at that conference for their complete and accurate text, and refer to the slide captioned "Quality of cIMT measurement" that was displayed at the ACC conference for its complete and accurate text.  The Exchange Act Defendants deny the remaining allegations in Paragraph 195.

196.   The Exchange Act Defendants deny the allegations in Paragraph 196, except admit that Dr. Krumholz made comments at the ACC conference following Dr. Kastelein's presentation.  The Exchange Act Defendants refer to Dr. Krumholz's comments for their complete and accurate text.

197.   The Exchange Act Defendants deny the allegations in Paragraph 197, except admit that Lead Plaintiffs purport to cite certain statements from the ACC panel members and a March 31, 2008 *New York Times* article.  The Exchange Act Defendants refer to those statements and the *New York Times* article for their complete and accurate text.

198.   The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from an article published in the *New England Journal of Medicine*.   The Exchange Act Defendants refer to that article for its complete and accurate text.

199.   The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from an article published in the *New England Journal of Medicine*.   The Exchange Act Defendants refer to that article for its complete and accurate text.

200.   The Exchange Act Defendants admit that Lead Plaintiffs cite certain data from the March 30, 2008 *New England Journal of Medicine* article, and refer to that article for its complete and accurate text.   To the extent that the allegations of Paragraph 200 are

characterizations of the results of the ENHANCE study, the Exchange Act Defendants state that the results of that study speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith.  To the extent the allegations of Paragraph 200 refer to an editorial published by Drs. B. Greg Brown and Allen J. Taylor that appeared in the April 3, 2008 edition of the *New England Journal of Medicine,* the Exchange Act Defendants refer to that editorial for its complete and accurate text.  The Exchange Act Defendants deny the remaining allegations in Paragraph 200.

201.    The Exchange Act Defendants deny the allegations in Paragraph 201, and refer to publicly reported market services for the trading price of Schering-Plough's stock.

202.    The Exchange Act Defendants deny the allegations in Paragraph 202, except admit that Lead Plaintiffs purport to quote from an *Associated Press* article on March 31, 2008.  The Exchange Act Defendants refer to that article for its complete and accurate text.

203.    The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from a March 31, 2008 *Wall Street Journal* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

204.    The Exchange Act Defendants deny the allegations in Paragraph 204, except admit that Lead Plaintiffs purport to quote from various securities analysts.  The Exchange Act Defendants refer to those analysts' comments and reports for their complete and accurate text.

205.    The Exchange Act Defendants deny the allegations in Paragraph 205, except admit that Lead Plaintiffs purport to cite prescription figures referenced in Schering-Plough's July 17, 2008 Form 8-K filing with the SEC.  The Exchange Act Defendants refer to that Form 8-K for its complete and accurate text.

206.	The Exchange Act Defendants deny the allegations in Paragraph 206, except admit that Lead Plaintiffs purport to quote from rating agencies Fitch, Moody's and Standard & Poor's.  The Exchange Act Defendants refer to the statements of those agencies for their complete and accurate text.

207.	The Exchange Act Defendants deny the allegations in Paragraph 207, except admit that Schering-Plough announced on or about April 2, 2008 that it had instituted a "Productivity Transformation Program," and refer to that announcement for its complete and accurate text.

208.	The Exchange Act Defendants deny the allegations in Paragraph 208, except admit that Representatives Dingell and Stupak sent letters to Schering-Plough and Merck on April 11, 2008.  The Exchange Act Defendants refer to those letters for their complete and accurate text.

209.	The Exchange Act Defendants admit that Senator Grassley wrote a letter to Schering-Plough, dated March 31, 2008.  The Exchange Act Defendants refer to that letter for its complete and accurate text.

210.	The Exchange Act Defendants deny the allegations in Paragraph 210.

211.	The Exchange Act Defendants deny the allegations in Paragraph 211, except deny knowledge or information sufficient to form a belief as to what the "Confidential Witnesses" supposedly said to Lead Plaintiffs' counsel.

212.	The Exchange Act Defendants deny the allegations in Paragraph 212, except deny knowledge or information sufficient to form a belief as to what the "Confidential Witnesses" supposedly said to Lead Plaintiffs' counsel.

213.    The Exchange Act Defendants deny the allegations in Paragraph 213, except deny knowledge or information sufficient to form a belief as to what the "Confidential Witnesses" supposedly said to Lead Plaintiffs' counsel.

214.    The Exchange Act Defendants deny the allegations in Paragraph 214.

215.    The Exchange Act Defendants deny the allegations in Paragraph 215.

216.    The Exchange Act Defendants deny the allegations in Paragraph 216, except admit that Fred Hassan began serving as Schering-Plough's CEO in 2003, and that after being hired, Mr. Hassan recruited a new executive management team.

217.    The Exchange Act Defendants deny the allegations in Paragraph 217, except admit that Fred Hassan owned shares of Schering-Plough common stock.  The Exchange Act Defendants refer to Schering-Plough's SEC filings for the amounts of Mr. Hassan's holdings.

218.    The Exchange Act Defendants deny the allegations in Paragraph 218, except admit that Schering-Plough issued a press release on January 18, 2008 regarding Mr. Hassan's intention to purchase $2 million worth of Schering-Plough common stock.   The Exchange Act Defendants refer to that press release for its complete and accurate text.

219.    The Exchange Act Defendants admit that Fred Hassan purchased shares of Schering-Plough stock on or about April 24, 2008.  The Exchange Act Defendants refer to Schering-Plough's SEC filings for the amounts of Mr. Hassan's holdings, and refer to publicly reported market services for the accurate share prices of Schering-Plough stock.

220.    The Exchange Act Defendants deny the allegations in Paragraph 220, except admit that Carrie Cox served as Executive Vice President and President, Global Pharmaceuticals of Schering-Plough during the Class Period, and further admit that Ms. Cox

discussed sales figures for Zetia and Vytorin during Schering-Plough's earnings report conference calls. The Exchange Act Defendants also admit that Lead Plaintiffs purport to quote from Schering-Plough's website. The Exchange Act Defendants refer to the transcript of Schering-Plough's earnings conference calls and the company's website for their complete and accurate text.

221.     The Exchange Act Defendants deny the allegations in Paragraph 221, except admit that Carrie Cox owned shares of Schering-Plough common stock. The Exchange Act Defendants refer to Schering-Plough's SEC filings for the amounts of Ms. Cox's holdings.

222.     The Exchange Act Defendants deny the allegations in Paragraph 222, except admit that Ms. Cox exercised stock options in April 2007. The Exchange Act Defendants refer to Schering-Plough's SEC filings for the amounts of Ms. Cox's holdings.

223.     The Exchange Act Defendants deny the allegations in Paragraph 223, except admit that Ms. Cox was granted stock options after she became a Schering-Plough employee.

224.     The Exchange Act Defendants deny the allegations in Paragraph 224, except admit that Ms. Cox made certain statements during Schering-Plough's April 19, 2007 earnings conference call. The Exchange Act Defendants refer to the transcript of that conference call for its complete and accurate text.

225.     The Exchange Act Defendants deny the allegations in Paragraph 225, except admit that Ms. Cox exercised stock options on April 20, 2007 and May 1, 2007. The Exchange Act Defendants refer to Schering-Plough's SEC filings for the amounts of Ms. Cox's holdings.

226.    The Exchange Act Defendants deny the allegations in Paragraph 226.  The Exchange Act Defendants refer to publicly reported market services for the trading price of Schering-Plough stock.

227.    The Exchange Act Defendants deny the allegations in Paragraph 227.

228.    The Exchange Act Defendants deny the allegations in Paragraph 228, and refer to Schering-Plough's Proxy Statement filed with the SEC on April 23, 2008 for its complete and accurate text.

229.    The Exchange Act Defendants deny the allegations in Paragraph 229, and refer to Schering-Plough's Proxy Statement filed with the SEC on April 20, 2007 for its complete and accurate text.

230.    The Exchange Act Defendants deny the allegations in Paragraph 230, and refer to Schering-Plough's Proxy Statement filed with the SEC on April 20, 2007 for its complete and accurate text.

231.    The Exchange Act Defendants deny the allegations in Paragraph 231, and refer the SEC Form 4s referenced in Paragraph 231 for their complete and accurate text.

232.    The Exchange Act Defendants deny the allegations in Paragraph 232, and refer to the SEC Form 4s filed by Schering-Plough's reporting executives for their complete and accurate text.

233.    The Exchange Act Defendants deny the allegations in Paragraph 233.

234.    The Exchange Act Defendants deny the allegations in Paragraph 234.

235.    The Exchange Act Defendants deny the allegations in Paragraph 235, except admit that Robert Bertolini was the Chief Financial Officer and an Executive Vice President of Schering-Plough during the Class Period.

236.     The Exchange Act Defendants deny the allegations in Paragraph 236, except admit that Mr. Bertolini owned shares of Schering-Plough common stock.  The Exchange Act Defendants refer to the March 22, 2006 and April 20, 2007 Proxy Statements filed with the SEC for their complete and accurate text.

237.     The Exchange Act Defendants deny the allegations in Paragraph 237, and refer to Schering-Plough's Proxy Statement filed with the SEC on April 23, 2008 for its complete and accurate text.

238.     The Exchange Act Defendants deny the allegations in Paragraph 238.

239.     The Exchange Act Defendants admit the allegations in Paragraph 239.

240.     The Exchange Act Defendants admit that Schering-Plough's shareholders adopted the OMT Incentive Plan in 2004, and refer to the description of that Plan in Schering-Plough's Proxy Statement filed with the SEC for its complete and accurate text.

241.     The Exchange Act Defendants deny the allegations in Paragraph 241, except admit that payments were made to Mr. Hassan, Ms. Cox and Mr. Bertolini pursuant to the 2006 "OMT Incentive Plan."  The Exchange Act Defendants refer to the description of the 2006 OMT Incentive Plan in Schering-Plough's 2007 Proxy Statement filed with the SEC for its complete and accurate text.

242.     The Exchange Act Defendants deny the allegations in Paragraph 242, except admit that payments were made to Mr. Hassan, Ms. Cox and Mr. Bertolini pursuant to the 2007 "OMT Incentive Plan."  The Exchange Act Defendants refer to the description of the 2006 OMT Incentive Plan in Schering-Plough's 2007 Proxy Statement filed with the SEC for its complete and accurate text.

243.     The Exchange Act Defendants admit the allegations in Paragraph 243.

244.     The Exchange Act Defendants deny the allegations in Paragraph 244, except admit that performance-contingent options vested for Mr. Hassan, Ms. Cox and Mr. Bertolini for the year 2006.  The Exchange Act Defendants refer to the description of the 2006 performance-contingent options in Schering-Plough's 2007 Proxy Statement filed with the SEC for its complete and accurate text.

245.     The Exchange Act Defendants deny the allegations in Paragraph 245, except admit that performance-contingent options vested for Mr. Hassan, Ms. Cox and Mr. Bertolini for the year 2007.

246.     The Exchange Act Defendants admit the allegations in Paragraph 246.

247.     The Exchange Act Defendants deny the allegations in Paragraph 247, except admit that 2006 deferred stock awards vested for Mr. Hassan, Ms. Cox and Mr. Bertolini.

248.     The Exchange Act Defendants deny the allegations in Paragraph 248, except admit that 2007 deferred stock awards vested for Mr. Hassan, Ms. Cox and Mr. Bertolini.

249.     The Exchange Act Defendants admit the allegations in Paragraph 249.

250.     The Exchange Act Defendants admit the allegations in Paragraph 250.

251.     The Exchange Act Defendants deny the allegations in Paragraph 251, except admit that in 2006, Mr. Hassan, Ms. Cox and Mr. Bertolini received cash payments under the Cash Long-Term Compensation Plan.

252.     The Exchange Act Defendants admit the allegations in Paragraph 252.

253.     The Exchange Act Defendants deny the allegations in Paragraph 253, except admit that Mr. Hassan, Ms. Cox and Mr. Bertolini earned long-term performance share units in 2006, which were subject to a vesting provision, and refer to the description of those

share units in Schering-Plough's 2007 Proxy Statement filed with the SEC for its complete and accurate text.

254.    The Exchange Act Defendants deny the allegations in Paragraph 254, except admit that Mr. Hassan, Ms. Cox and Mr. Bertolini earned long-term performance share units in 2007, which were subject to a vesting provision, and refer to the description of those share units in Schering-Plough's 2008 Proxy Statement filed with the SEC for its complete and accurate text.

255.    The Exchange Act Defendants deny the allegations in Paragraph 255, except admit that the Schering Compensation Committee adopted a Transformational Performance Contingent Shares Grant in 2004, and admit that in 2006 and 2007, Mr. Hassan, Ms. Cox and Mr. Bertolini earned potential awards under that Grant.

256.    The Exchange Act Defendants deny the allegations in Paragraph 256.

257.    The Exchange Act Defendants deny the allegations in Paragraph 257.

258.    The Exchange Act Defendants admit that some clinical trials, including ENHANCE, are "double-blinded" as a means of reducing the possibility of bias.  The Exchange Act Defendants deny the remaining allegations in Paragraph 258, except admit that Senator Grassley wrote a letter to Schering-Plough dated February 11, 2008.  The Exchange Act Defendants refer to that letter for its complete and accurate text.

259.    The Exchange Act Defendants admit that Lead Plaintiffs quote from a statement made by Dr. Allen Taylor, and refer to that statement for its complete and accurate text.  The Exchange Act Defendants deny the remaining allegations in Paragraph 259.

260.    Except as otherwise admitted herein, the Exchange Act Defendants deny the allegations in Paragraph 260.

261.    The Exchange Act Defendants deny the allegations in Paragraph 261, except admit that on March 28, 2008, the lead investigators for IMPROVE-IT announced that the trial was expanding participation to 18,000 subjects and that Lead Plaintiffs have cited to a March 28, 2008 *Dow Jones* article.  The Exchange Act Defendants refer to that article for its complete and accurate text.

262.    The allegations in Paragraph 262 state opinions concerning the use of statistics, a topic which will be the subject of expert testimony and for which no response is necessary.  To the extent any response is required, the Exchange Act Defendants deny the allegations in Paragraph 262.

263.    The allegations in Paragraph 263 state opinions concerning the application of statistics, a topic which will be the subject of expert testimony and for which no response is necessary.  To the extent any response is required, the Exchange Act Defendants deny the allegations in Paragraph 263.

264.    The allegations in Paragraph 264 state opinions concerning the application of statistics, a topic which will be the subject of expert testimony and for which no response is necessary.  To the extent any response is required, the Exchange Act Defendants deny the allegations in Paragraph 264.

265.    The Exchange Act Defendants admit that when the treatment arms remain blinded, the mean and standard deviation within each group cannot be determined.  The Exchange Act Defendants deny the remaining allegations in Paragraph 265.

266.    The Exchange Act Defendants deny the allegations in Paragraph 266.

267.    The Exchange Act Defendants deny the allegations in Paragraph 267.

268.    The Exchange Act Defendants deny the allegations in Paragraph 268.

269.    The Exchange Act Defendants deny the allegations in Paragraph 269.

270.    The Exchange Act Defendants deny the allegations in Paragraph 270.

271.    The Exchange Act Defendants admit that Schering-Plough issued a press release on July 24, 2006 regarding its financial results for the second quarter of 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

272.    The Exchange Act Defendants admit that Fred Hassan was quoted in the July 24, 2006 press release.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

273.    The Exchange Act Defendants deny the allegations in Paragraph 273, except admit that Schering-Plough had a conference call with securities analysts on July 24, 2006 to discuss the company's second quarter financial results.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

274.    The Exchange Act Defendants deny the allegations in Paragraph 274, except admit that Lead Plaintiffs purport to quote a statement made by Carrie Cox during the July 24, 2006 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

275.    The Exchange Act Defendants deny the allegations in Paragraph 275.

276.    The Exchange Act Defendants deny the allegations in Paragraph 276, except admit that Lead Plaintiffs purport to quote from a Prudential Equity Group analyst report. The Exchange Act Defendants refer to that report for its complete and accurate text.

277.    The Exchange Act Defendants admit that on July 28, 2006, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Exchange Act Defendants refer to the July 28, 2006 Form 10-Q for its complete and accurate text.

278.    The Exchange Act Defendants admit that on July 28, 2006, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Exchange Act Defendants refer to the July 28, 2006 Form 10-Q for its complete and accurate text.

279.    The Exchange Act Defendants deny the allegations in Paragraph 279.

280.    The Exchange Act Defendants admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's July 28, 2006 Form 10-Q, and refer to the July 28, 2006 Form 10-Q for its complete and accurate text.

281.    The Exchange Act Defendants admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's July 28, 2006 Form 10-Q, and refer to the July 28, 2006 Form 10-Q for its complete and accurate text.

282.    The Exchange Act Defendants deny the allegations in Paragraph 282.

283.    The Exchange Act Defendants admit that Schering-Plough issued a press release on October 20, 2006 regarding its financial results for the third quarter of 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

284.    The Exchange Act Defendants admit that Schering-Plough issued a press release on October 20, 2006 regarding its financial results for the third quarter of 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

285.    The Exchange Act Defendants admit that Fred Hassan was quoted in the October 20, 2006 press release.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

286.    The Exchange Act Defendants admit that Schering-Plough had a conference call with securities analysts on October 20, 2006 to discuss the company's third quarter financial results.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

287.    The Exchange Act Defendants admit that Lead Plaintiffs purport to quote a statement made by Robert Bertolini during the October 20, 2006 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

288.    The Exchange Act Defendants admit that Lead Plaintiffs purport to quote statements made by Carrie Cox during the October 20, 2006 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

289.    The Exchange Act Defendants deny the allegations in Paragraph 289.

290.    The Exchange Act Defendants admit that on October 28, 2006, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Exchange Act Defendants refer to the October 28, 2006 Form 10-Q for its complete and accurate text.

291.    The Exchange Act Defendants admit that on October 28, 2006, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Exchange Act Defendants refer to the October 28, 2006 Form 10-Q for its complete and accurate text.

292.    The Exchange Act Defendants deny the allegations in Paragraph 292.

293.     The Exchange Act Defendants admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's October 28, 2006 Form 10-Q, and refer to the October 28, 2006 Form 10-Q for its complete and accurate text.

294.     The Exchange Act Defendants deny the allegations in Paragraph 294.

295.     The Exchange Act Defendants admit that A.G. Edwards & Sons, Inc. issued an analyst report on December 19, 2006 titled, "SGP: Cholesterol Franchise Key to Growth and Valuation." The Exchange Act Defendants refer to that report for its complete and accurate text.

296.     The Exchange Act Defendants deny the allegations in Paragraph 296, except admit that Fred Hassan made certain statements during the January 3, 2007 Morgan Stanley Pharmaceutical CEOs Unplugged Conference. The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

297.     The Exchange Act Defendants admit that Schering-Plough issued a press release on January 29, 2007 regarding its financial results for the fourth quarter of 2006 and year-ended December 31, 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K. The Exchange Act Defendants refer to the press release for its complete and accurate text.

298.     The Exchange Act Defendants admit that Schering-Plough issued a press release on January 29, 2007 regarding its financial results for the fourth quarter of 2006 and year-ended December 31, 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K. The Exchange Act Defendants refer to the press release for its complete and accurate text.

299.     The Exchange Act Defendants admit that Fred Hassan was quoted in the January 29, 2007 press release.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

300.     The Exchange Act Defendants admit that Schering-Plough had a conference call with securities analysts on January 29, 2007 to discuss the company's fourth quarter and year-end financial results.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

301.     The Exchange Act Defendants deny the allegations in Paragraph 301, except admit that Lead Plaintiffs purport to quote statements made by Fred Hassan during the January 29, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

302.     The Exchange Act Defendants deny the allegations in Paragraph 302, except admit that Lead Plaintiffs purport to quote statements made by Robert Bertolini during the January 29, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

303.     The Exchange Act Defendants deny the allegations in Paragraph 303, except admit that Lead Plaintiffs purport to quote statements made by Carrie Cox during the January 29, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

304.     The Exchange Act Defendants admit that Lead Plaintiffs purport to quote statements made by Carrie Cox during the January 29, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

305.     The Exchange Act Defendants deny the allegations in Paragraph 305, except admit that Lead Plaintiffs purport to quote statements made by Fred Hassan during the January 29, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

306.     The Exchange Act Defendants deny the allegations in Paragraph 306.

307.     The Exchange Act Defendants deny the allegations in Paragraph 307, except admit that Lead Plaintiffs purport to quote from a January 29, 2007 A.G. Edwards analyst report.  The Exchange Act Defendants refer to that report for its complete and accurate text.

308.     The Exchange Act Defendants deny the allegations in Paragraph 308, except admit that Lead Plaintiffs have quoted from a January 30, 2007 Prudential Equity Group LLP analyst report.  The Exchange Act Defendants refer to that report for its complete and accurate text.

309.     The Exchange Act Defendants deny the allegations in Paragraph 309, except admit that on February 28, 2007, Schering-Plough filed its annual report for the year 2006 (Form 10-K) with the SEC.  The Exchange Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

310.     The Exchange Act Defendants admit that on February 28, 2007, Schering-Plough filed its annual report for the year 2006 (Form 10-K) with the SEC.  The Exchange Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

311.     The Exchange Act Defendants admit that Schering-Plough's Form 10-K contained an Item 7, under the heading "Management's Discussion and Analysis of Financial Condition and Results of Operations."  The Exchange Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

312.     The Exchange Act Defendants admit that Item 7 in the Form 10-K contained a subheading, "Cholesterol Franchise."   The Exchange Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

313.     The Exchange Act Defendants admit that the Form 10-K contained a subheading, "Equity Income from Cholesterol Joint Venture."   The Exchange Act Defendants refer to the Form 10-K for its complete and accurate text.

314.     The Exchange Act Defendants admit that the Form 10-K contained a heading, "2007 OUTLOOK."   The Exchange Act Defendants refer to the Form 10-K for its complete and accurate text.

315.     The Exchange Act Defendants deny the allegations in Paragraph 315.

316.     The Exchange Act Defendants deny the allegations in Paragraph 316, except admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's February 28, 2007 Form 10-K.

317.     The Exchange Act Defendants deny the allegations in Paragraph 317, except admit that Fred Hassan signed a letter to Schering-Plough's shareholders dated April 13, 2007.  The Exchange Act Defendants refer to that letter for its complete and accurate text.

318.     The Exchange Act Defendants admit that Schering-Plough issued a press release on April 19, 2007 regarding its financial results for the first quarter of 2007, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

319.     The Exchange Act Defendants admit that Fred Hassan was quoted in Schering-Plough's April 19, 2007 press release.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

320.    The Exchange Act Defendants deny the allegations in Paragraph 320, except admit that Schering-Plough had a conference call with securities analysts on April 19, 2007 to discuss the company's first quarter financial results.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

321.    The Exchange Act Defendants deny the allegations in Paragraph 321, except admit that Lead Plaintiffs have quoted certain statements made by Fred Hassan during the April 19, 2007 earnings conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

322.    The Exchange Act Defendants deny the allegations in Paragraph 322.

323.    The Exchange Act Defendants admit that on April 27, 2007, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Exchange Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

324.    The Exchange Act Defendants admit that the April 27, 2007 Form 10-Q contained an Item 2, titled "Management's Discussion and Analysis of Financial Condition and Results of Operations."  The Exchange Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

325.    The Exchange Act Defendants admit that the April 27, 2007 Form 10-Q contained a heading called "Cholesterol Franchise."  The Exchange Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

326.    The Exchange Act Defendants admit that the April 27, 2007 Form 10-Q contained a heading called "Equity income from cholesterol joint venture."  The Exchange Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

327.    The Exchange Act Defendants deny the allegations in Paragraph 327.

328.     The Exchange Act Defendants deny the allegations in Paragraph 328, except admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's April 27, 2007 Form 10-Q.

329.     The Exchange Act Defendants deny the allegations in Paragraph 329, except admit that Robert Bertolini and Thomas Koestler made a presentation to analysts on June 14, 2007 at Goldman Sachs' Global Healthcare Conference.  The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

330.     The Exchange Act Defendants admit that Lead Plaintiffs purport to quote certain statements made by Mr. Koestler during the June 14, 2007 conference.  The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

331.     The Exchange Act Defendants deny the allegations in Paragraph 331.

332.     The Exchange Act Defendants admit that Schering-Plough issued a press release on July 23, 2007 regarding its financial results for the second quarter of 2007, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

333.     The Exchange Act Defendants admit that Fred Hassan was quoted in the July 23, 2007 press release.  The Exchange Act Defendants refer to the press release for its complete and accurate text.

334.     The Exchange Act Defendants deny the allegations in Paragraph 334, except admit that Schering-Plough had a conference call with securities analysts on July 23, 2007 to discuss the company's second quarter financial results.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

335.     The Exchange Act Defendants deny the allegations in Paragraph 335, except admit that Lead Plaintiffs have quoted certain statements made by Alex Kelly during the July 23, 2007 conference call.  The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

336.     The Exchange Act Defendants deny the allegations in Paragraph 336.

337.     The Exchange Act Defendants admit that on July 27, 2007, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Exchange Act Defendants refer to the July 27, 2007 Form 10-Q for its complete and accurate text.

338.     The Exchange Act Defendants admit that the July 27, 2007 Form 10-Q contained a heading called "Cholesterol Franchise."  The Exchange Act Defendants refer to the July 27, 2007 Form 10-Q for its complete and accurate text.

339.     The Exchange Act Defendants admit that the July 27, 2007 Form 10-Q contained a subheading called "Equity Income from Cholesterol Joint Venture."  The Exchange Act Defendants refer to the July 27, 2007 Form 10-Q for its complete and accurate text.

340.     The Exchange Act Defendants deny the allegations in Paragraph 340.

341.     The Exchange Act Defendants deny the allegations in Paragraph 341, except admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's July 27, 2007 Form 10-Q.

342.     The Exchange Act Defendants deny the allegations in Paragraph 342, except admit that on September 19, 2007, Alex Kelly made a presentation at the Merrill Lynch Global Pharmaceutical, Biotech & Medtech Conference.  The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

343.     The Exchange Act Defendants admit that Lead Plaintiffs purport to quote from certain statements made by Mr. Kelly at the September 19, 2007 conference.   The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

344.     The Exchange Act Defendants deny the allegations in Paragraph 344.

345.     The Exchange Act Defendants admit that Schering-Plough issued a press release on October 22, 2007 regarding its financial results for the third quarter of 2007, and that the press release was filed with the SEC as an exhibit to a Form 8-K.   The Exchange Act Defendants refer to the press release for its complete and accurate text.

346.     The Exchange Act Defendants admit that Fred Hassan was quoted in the October 22, 2007 press release.   The Exchange Act Defendants refer to the press release for its complete and accurate text.

347.     The Exchange Act Defendants deny the allegations in Paragraph 347, except admit that Schering-Plough had a conference call with securities analysts on October 22, 2007 to discuss the company's third quarter financial results.   The Exchange Act Defendants refer to the transcript of that call for its complete and accurate text.

348.     The Exchange Act Defendants deny the allegations in Paragraph 348.

349.     The Exchange Act Defendants admit that on October 26, 2007, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.   The Exchange Act Defendants refer to the October 26, 2007 Form 10-Q for its complete and accurate text.

350.     The Exchange Act Defendants admit that the October 26, 2007 Form 10-Q contained a heading called "Equity income from cholesterol joint venture."   The Exchange Act Defendants refer to the October 26, 2007 Form 10-Q for its complete and accurate text.

351.     The Exchange Act Defendants deny the allegations in Paragraph 351.

352.     The Exchange Act Defendants deny the allegations in Paragraph 352, except admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's October 26, 2007 Form 10-Q.

353.     The Exchange Act Defendants deny the allegations in Paragraph 353, except admit that M/SP issued a press release on November 19, 2007.  The Exchange Act Defendants refer to that press release for its complete and accurate text.

354.     The Exchange Act Defendants deny the allegations in Paragraph 354, except admit that Dr. Kastelein was quoted in the November 19, 2007 press release.  The Exchange Act Defendants refer to that press release for its complete and accurate text.

355.     The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 355, except admit that Lead Plaintiffs purport to quote from a November 20, 2007 Cowan and Company analyst report, and a November 21, 2007 Bear Stearns analyst report.  The Exchange Act Defendants refer to those reports for their complete and accurate text.

356.     The Exchange Act Defendants admit that Schering-Plough's public filings during the Class Period included a "Risk Factors" section.  The Exchange Act Defendants refer to Schering-Plough's public filings for their complete and accurate text.

357.     The Exchange Act Defendants deny the allegations in Paragraph 357.

358.     The Exchange Act Defendants deny the allegations in Paragraph 358.

359.     The Exchange Act Defendants admit that Representatives Dingell and Stupak sent letters to Merck and Schering-Plough on December 11, 2007.  The Exchange Act Defendants refer to those letters for their complete and accurate text.

360.    The Exchange Act Defendants deny the allegations in Paragraph 360, except admit that *Reuters* published an article on December 12, 2007 titled "Merck, Schering-Plough cholesterol trial faces probe."  The Exchange Act Defendants refer to that article for its complete and accurate text.

361.    The Exchange Act Defendants admit that on December 12, 2007, Cowan and Company issued an analyst report titled "Quick Take:  ENHANCE Congressional Hearing News Today But Not Likely to Linger."  The Exchange Act Defendants refer to that report for its complete and accurate text.

362.    The Exchange Act Defendants deny the allegations in Paragraph 362, except admit that Fred Hassan made comments during the January 3, 2008 Morgan Stanley Pharmaceutical CEOs Unplugged Conference.  The Exchange Act Defendants refer to the transcript of that conference for its complete and accurate text.

363.    The Exchange Act Defendants deny the allegations in Paragraph 363, and refer to the transcript of the January 3, 2008 conference for its complete and accurate text.

364.    The Exchange Act Defendants deny the allegations in Paragraph 364, except admit that M/SP issued a press release on January 14, 2008.  The Exchange Act Defendants refer to that press release for its complete and accurate text.

365.    The Exchange Act Defendants deny the allegations in Paragraph 365, except admit that *Reuters* published an article on January 14, 2008 regarding the ENHANCE study.  The Exchange Act Defendants refer to that article for its complete and accurate text.

366.    The Exchange Act Defendants deny the allegations in Paragraph 366, except admit that the *Associated Press* published an article on January 15, 2008 regarding the

ENHANCE study.   The Exchange Act Defendants refer to that article for its complete and accurate text.

367.   The Exchange Act Defendants admit that *Reuters* published an article on January 15, 2008 regarding the ENHANCE study.   The Exchange Act Defendants refer to that article for its complete and accurate text.

368.   The Exchange Act Defendants deny the allegations in Paragraph 368, and refer to publicly reported market services for the trading price of Schering-Plough's stock.

369.   The Exchange Act Defendants admit that the *Associated Press* published an article on January 22, 2008 regarding the ENHANCE study.   The Exchange Act Defendants refer to that article for its complete and accurate text.

370.   The Exchange Act Defendants deny the allegations in Paragraph 370, except admit that Lead Plaintiffs purport to quote from an *Associated Press* article published on January 22, 2008.   The Exchange Act Defendants refer to that article for its complete and accurate text.   The Exchange Act Defendants further refer to publicly reported market services for the trading price of Schering-Plough's stock.

371.   The Exchange Act Defendants deny the allegations in Paragraph 371, except admit that the FDA issued a statement on January 25, 2008, and refer to that statement for its complete and accurate text.

372.   The Exchange Act Defendants deny the allegations in Paragraph 372, except admit that a presentation about the ENHANCE results was made at the Chicago ACC Conference on March 30, 2008, and that Dr. Krumholz made certain statements at that conference.   The Exchange Act Defendants refer to the transcript of the ACC conference for its complete and accurate text.

373.    The Exchange Act Defendants deny the allegations in Paragraph 373, except admit that an editorial appeared on the *New England Journal of Medicine* website on March 30, 2008 regarding the ENHANCE study.  The Exchange Act Defendants refer to that editorial for its complete and accurate text.

374.    The Exchange Act Defendants deny the allegations in Paragraph 374, and refer to publicly reported market services for the trading price of Schering-Plough's common and preferred stock.

375.    The Exchange Act Defendants deny the allegations in Paragraph 375.

376.    The Exchange Act Defendants deny the allegations in Paragraph 376, except admit that Representatives Dingell and Stupak sent a letter to Schering-Plough on December 11, 2007.  The Exchange Act Defendants refer to that letter for its complete and accurate text.

377.    The Exchange Act Defendants deny the allegations in Paragraph 377, except admit that *Reuters* published an article on December 12, 2007 titled "Merck, Schering-Plough cholesterol trial faces probe."  The Exchange Act Defendants refer to that article for its complete and accurate text.

378.    The Exchange Act Defendants deny the allegations in Paragraph 378, except admit that M/SP issued a press release on January 14, 2008.  The Exchange Act Defendants refer to that press release for its complete and accurate text.

379.    The Exchange Act Defendants deny the allegations in Paragraph 379, except admit that *Reuters* published an article on January 15, 2008 regarding the ENHANCE study.  The Exchange Act Defendants refer to that article for its complete and accurate text.

380.    The Exchange Act Defendants deny the allegations in Paragraph 380, except admit that the *Associated Press* published articles on January 22, 2008 regarding the ENHANCE study.  The Exchange Act Defendants refer to those articles for their complete and accurate text.

381.    The Exchange Act Defendants deny the allegations in Paragraph 381, except admit that the FDA issued a statement on January 25, 2008, and refer to that statement for its complete and accurate text.

382.    The Exchange Act Defendants deny the allegations in Paragraph 382.

383.    The Exchange Act Defendants deny the allegations in Paragraph 383, except admit that a presentation about the ENHANCE results was made at the ACC Conference on March 30, 2008, and that Dr. Krumholz made comments at that conference.  The Exchange Act Defendants refer to the transcript of the ACC conference for its complete and accurate text.

384.    The Exchange Act Defendants deny the allegations in Paragraph 384.

385.    The Exchange Act Defendants deny the allegations in Paragraph 385.

386.    The Exchange Act Defendants deny the allegations in Paragraph 386.

387.    The allegations in Paragraph 387 state a legal conclusion to which no response is necessary.  To the extent that a response is required, the Exchange Act Defendants deny the allegations in Paragraph 387.

388.    The allegations in Paragraph 388 state a legal conclusion to which no response is necessary.  To the extent that a response is required, the Exchange Act Defendants deny the allegations in Paragraph 388.

389.    The allegations in Paragraph 389 state a legal conclusion to which no response is necessary.  To the extent that a response is required, the Exchange Act Defendants deny the allegations in Paragraph 389.

390.    The allegations in Paragraph 390 state a legal conclusion to which no response is necessary.  To the extent that a response is required, the Exchange Act Defendants deny the allegations in Paragraph 390.

391.    The Exchange Act Defendants deny the allegations in Paragraph 391, except deny knowledge or information sufficient to form a belief as to whether "the market for Schering securities promptly digested current information regarding Schering from all reliable, publicly available sources and reflected such information in the price of Schering's securities." Such market analyses will be the subject of expert testimony in this case.

392.    The Exchange Act Defendants deny the allegations in Paragraph 392.

**COUNT ONE**

**Violation of Section 10(b) of the Exchange Act and Rule
10b-5 Promulgated Thereunder Against Schering,
M/SP, Hassan, Cox, Bertolini and Koehler**

393.    The Exchange Act Defendants repeat each response above as if set forth fully herein.

394.    The Exchange Act Defendants deny the allegations in Paragraph 394.

395.    The Exchange Act Defendants deny the allegations in Paragraph 395.

396.    The Exchange Act Defendants deny the allegations in Paragraph 396.

397.    The Exchange Act Defendants deny the allegations in Paragraph 397.

398.    The Exchange Act Defendants deny the allegations in Paragraph 398.

399.    The Exchange Act Defendants deny the allegations in Paragraph 399.

400.    The Exchange Act Defendants deny the allegations in Paragraph 400.

401.    The Exchange Act Defendants deny the allegations in Paragraph 401.

402.    The Exchange Act Defendants deny the allegations in Paragraph 402.

403.    The Exchange Act Defendants deny the allegations in Paragraph 403.

404.    The Exchange Act Defendants deny the allegations in Paragraph 404.

405.    The Exchange Act Defendants deny the allegations in Paragraph 405.

406.    The Exchange Act Defendants deny the allegations in Paragraph 406.

407.    The Exchange Act Defendants deny the allegations in Paragraph 407.

408.    The Exchange Act Defendants deny the allegations in Paragraph 408.

## COUNT TWO

### Violation of Section 20(a) of the Exchange Act Against Hassan, Cox, Bertolini and Koehler

409.    The Exchange Act Defendants repeat each response above as if set forth fully herein.

410.    The Exchange Act Defendants deny the allegations in Paragraph 410.

411.    The Exchange Act Defendants deny the allegations in Paragraph 411.

412.    The Exchange Act Defendants deny all allegations in Paragraph 412.

## COUNT THREE

### Violation of Section 20A of the Exchange Act Against Defendants Cox and Schering

413.    The Exchange Act Defendants repeat each response above as if set forth fully herein.

414.    The Exchange Act Defendants deny the allegations in Paragraph 414.  To the extent that the allegations in Paragraph 414 merely purport to summarize and characterize the nature of Lead Plaintiffs' claims, no response is required.

415.    The Exchange Act Defendants deny the allegations in Paragraph 415.

416.     The Exchange Act Defendants deny the allegations in Paragraph 416, except deny knowledge or information sufficient to form a belief as to how many shares of Schering-Plough common stock the Arkansas Teachers purchased, or when they supposedly purchased their shares.

417.     The Exchange Act Defendants deny the allegations in Paragraph 417, except deny knowledge or information sufficient to form a belief as to how many shares of Schering-Plough common stock Mississippi PERS purchased, or when they supposedly purchased their shares.

418.     The Exchange Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 418.

419.     The Exchange Act Defendants deny the allegations in Paragraph 419.

420.     The Exchange Act Defendants deny the allegations in Paragraph 420.

421.     The Exchange Act Defendants deny the allegations in Paragraph 421.

422.     The Exchange Act Defendants deny the allegations in Paragraph 422.

## SECURITIES ACT ALLEGATIONS[2]

423.     Paragraph 423 merely purports to summarize and characterize the nature of Lead Plaintiffs' claims, and thus no response is required.  To the extent that a response is required, the Schering Securities Act Defendants deny any violations of the securities laws.

424.     Paragraph 424 merely purports to summarize and characterize the nature of Lead Plaintiffs' claims, and thus no response is required.  To the extent that a response is required, the Schering Securities Act Defendants deny any violations of the securities laws.

425.     The Schering Securities Act Defendants admit that Schering-Plough conducted the offerings in August 2007 (collectively, the "Offerings").  The Schering Securities Act Defendants further admit that on or about August 2, 2007, Schering-Plough filed a prospectus and shelf registration statement (the "Registration Statement") with the SEC.  The Securities Act Defendants refer to those documents for their complete and accurate text.

426.     The Schering Securities Act Defendants deny the allegations in Paragraph 426, except admit that certain Schering-Plough public filings were incorporated by reference, and refer to the Offering Documents for a description of the Offering.

427.     The Schering Securities Act Defendants deny the allegations in Paragraph 427.

428.     The Schering Securities Act Defendants deny the allegations in Paragraph 428, except admit that (i) Schering-Plough and the FDA entered into a consent decree in May 2002 in connection with the company's manufacturing facilities in New Jersey and Puerto Rico, (ii) the consent decree required Schering-Plough to pay the FDA $500 million as a disgorgement,

---

[2]  Because Paragraphs 423 through 588 in the Complaint cover Lead Plaintiffs' claims under the Securities Act of 1933, only the Schering Securities Act Defendants have answered the allegations in those paragraphs.

(iii) Claritin had lost patent protection, and (iv) Schering-Plough has long since resolved the government investigations referenced in Paragraph 428.

429.    The Schering Securities Act Defendants admit that Fred Hassan was elected as a Director and Chairman of the Board in April 2003.  The Schering Securities Act Defendants further admit that Schering-Plough issued a press release on April 20, 2003, and refer to that press release for its complete and accurate text.

430.    Paragraph 430 purports to quote from two different news articles, but the dates of the articles are not identified.  The Schering Securities Act Defendants therefore deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 430.

431.    The Schering Securities Act Defendants deny the allegations in Paragraph 431, except admit that Schering-Plough and Merck had formed a joint venture, M/SP, to develop and market Vytorin, a medicine that combined the Merck cholesterol drug Zocor with Schering-Plough's cholesterol drug Zetia, and that Schering-Plough and Merck hoped Vytorin would be a success.

432.    The Schering Securities Act Defendants admit the allegations in Paragraph 432.

433.    The Schering Securities Act Defendants deny the allegations in Paragraph 433, except admit that the *Wall Street Journal* published an article on August 2, 2006 discussing Schering-Plough.  The Schering Securities Act Defendants refer to that article for its complete and accurate text.

434.    The Schering Securities Act Defendants admit that Zetia and Vytorin accounted for significant profits for Schering-Plough in 2006 and 2007.  The Schering Securities

Act Defendants further admit that Paragraph 434 purports to contain partial quotes from Schering-Plough's 2006 and 2007 annual reports (Forms 10-K) and its April 20, 2006 Form 8-K. The Schering Securities Act Defendants refer to those Forms 10-K and Form 8-K for their complete and accurate text.

435.    The Schering Securities Act Defendants deny the allegations in Paragraph 435, and refer to Schering-Plough's public filings for information regarding the sales of Zetia and Vytorin.

436.    The Schering Securities Act Defendants admit that Lead Plaintiffs purport to quote from Schering-Plough's April 20, 2006 Form 8-K.  The Schering Securities Act Defendants refer to the April 20, 2006 Form 8-K for its complete and accurate text.  The Schering Securities Act Defendants deny knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 436.

437.    The Schering Securities Act Defendants deny the allegations in Paragraph 437, except admit that Lead Plaintiffs purport to quote from a February 2005 article in the *American Heart Journal*.  The Schering Securities Act Defendants refer to that article for its complete and accurate text.

438.    The Exchange Act Defendants admit that the February 2005 article discussing ENHANCE published in *American Heart Journal* cited two articles that discussed statins.   The Exchange Act Defendants admit that Pfizer announced the results of the "REVERSAL" trial in November 2003 and the IDEAL trial in November 2005.  The Exchange Act Defendants also admit that Lead Plaintiffs have referred to a March 14, 2006 *New York Times* article discussing ASTEROID.   The Exchange Act Defendants deny the remaining allegations in Paragraph 438.

439.    The Schering Securities Act Defendants deny the allegations in Paragraph 439 because they mischaracterize the purpose of the ENHANCE study.  The Exchange Act Defendants refer to the "2005 ENHANCE Article" for its complete and accurate text.

440.    Paragraph 440 purports to summarize the contents of a March 30, 2008 *New England Journal of Medicine* article discussing the ENHANCE results.  The Schering Securities Act Defendants refer to that article for the complete and accurate contents thereof.

441.    Paragraph 441 purports to summarize the contents of a March 30, 2008 *New England Journal of Medicine* article discussing the ENHANCE results.  The Schering Securities Act Defendants refer to that article for the complete and accurate contents thereof.

442.    The Exchange Act Defendants admit the allegations in Paragraph 442, except to the extent that the allegations in Paragraph 442 are characterizations of the methodology used in, or the results of, the ENHANCE study.  The ENHANCE results speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith, and refer to the March 30, 2008 article in *New England Journal of Medicine* for its complete and accurate text.

443.    The Exchange Act Defendants admit that the results of the ENHANCE study were released in January 2008 and published online in the *New England Journal of Medicine* on March 30, 2008, and refer to those publications for their complete and accurate text.  The Exchange Act Defendants admit that the results of the ENHANCE study showed no statistically significant difference in the carotid intima-media thickness of participants in the study treated with ezetimibe/simvastatin as compared with those treated with simvastatin alone.  The ENHANCE results speak for themselves, and the Exchange Act Defendants deny any characterizations inconsistent therewith and any remaining allegations in Paragraph 443.

444.     The Schering Securities Act Defendants admit the final patient visit for ENHANCE was completed in April 2006, and deny the remaining allegations in Paragraph 444.

445.     The Schering Securities Act Defendants admit that Dr. Bots issued a report, and that the report was eventually made public.  The Schering Securities Act Defendants refer to Dr. Bots's report for its complete and accurate text.

446.     The Schering Securities Act Defendants deny the allegations in Paragraph 446, and refer to Dr. Bots's report for its complete and accurate text.

447.     The Schering Securities Act Defendants deny the allegations in Paragraph 447, and refer to Dr. Bots's report for its complete and accurate text.

448.     The Schering Securities Act Defendants deny the allegations in Paragraph 448, and refer to Dr. Bots's report for its complete and accurate text.

449.     The Schering Securities Act Defendants deny the allegations in Paragraph 449, and refer to Dr. Bots's report for its complete and accurate text.

450.     The Schering Securities Act Defendants deny the allegations in Paragraph 450, and refer to Dr. Bots's report for its complete and accurate text.

451.     The Schering Securities Act Defendants deny the allegations in Paragraph 451, and refer to Dr. Bots's report for its complete and accurate text.

452.     The Schering Securities Act Defendants deny the allegations in Paragraph 452, and refer to Dr. Bots's report for its complete and accurate text.

453.     The Schering Securities Act Defendants deny the allegations in Paragraph 453, and refer to Dr. Bots's report for its complete and accurate text.

454.     The Schering Securities Act Defendants deny the allegations in Paragraph 454, except admit that Schering-Plough conducted a public stock offering in August 2007.  The

Schering Securities Act Defendants refer to the Offering Documents and Schering-Plough's public filings for the contents thereof.

455.    The Schering Securities Act Defendants deny the allegations in Paragraph 455, except admit that *Forbes* published an article on November 19, 2007 discussing the ENHANCE study.  The Schering Securities Act Defendants refer to that article for its complete and accurate text.

456.    The Schering Securities Act Defendants deny the allegations in Paragraph 456, and refer to the November 19, 2007 *Forbes* article for its complete and accurate text.

457.    The Schering Securities Act Defendants admit that Lead Plaintiffs purport to quote from a November 21, 2007 *New York Times* article, and refer to that article for its complete and accurate text.

458.    The Schering Securities Act Defendants admit that Representatives Dingell and Stupak sent letters to Schering-Plough and Merck on or about December 11, 2007. The Schering Securities Act Defendants refer to those letters for their complete and accurate text.

459.    The Schering Securities Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 459.  To the extent Lead Plaintiffs are relying on an article written by the *New York Times*, the Schering Securities Act Defendants refer to that article for its complete and accurate text.

460.    The Schering Securities Act Defendants deny the allegations in Paragraph 460, except admit that a press release was issued on January 14, 2008.  The Schering Securities Act Defendants refer to that press release for its complete and accurate text.

461.    The Schering Securities Act Defendants deny knowledge or information sufficient to form a belief about what Dr. Steven Nissen thought or said in response to the results

of the ENHANCE study.  To the extent Lead Plaintiffs are relying on comments published by *Dow Jones* or the *Journal of American Medical Association*, the Schering Securities Act Defendants refer to the articles in those publications for their complete and accurate text.

462.    The Schering Securities Act Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 462.  To the extent Lead Plaintiffs are relying on analyst reports issued by Cowen & Company and Merrill Lynch, the Schering Securities Act Defendants refer to those reports for their complete and accurate text.

463.    The Schering Securities Act Defendants deny the allegations in Paragraph 463, and refer to publicly reported market services for the trading price of Schering-Plough's stock.

464.    The Schering Securities Act Defendants deny the allegations in Paragraph 464, except admit that Lead Plaintiffs purport to quote from a January 17, 2008 *Wall Street Journal* article.  The Schering Securities Act Defendants refer to that article for its complete and accurate text.

465.    The Schering Securities Act Defendants deny the allegations in Paragraph 465, except admit that Dr. Kastelein made a presentation about the ENHANCE results at the March 30, 2008 conference held by the American College of Cardiology.

466.    The Schering Securities Act Defendants deny the allegations in Paragraph 466.  The Schering Securities Act Defendants refer to Dr. Kastelein's comments at the ACC conference for their complete and accurate text, and refer to the slide captioned "Quality of cIMT measurement" that was displayed at the ACC conference for its complete and accurate text.

467.    The Schering Securities Act Defendants deny the allegations in Paragraph 467, except admit that Dr. Krumholz made comments at the ACC conference following Dr.

Kastelein's presentation.   The Schering Securities Act Defendants refer to Dr. Krumholz's comments for their complete and accurate text.

468.   The Schering Securities Act Defendants deny the allegations in Paragraph 468, except admit that Lead Plaintiffs purport to quote certain statements from the ACC panel members and a March 31, 2008 *New York Times* article.   The Schering Securities Act Defendants refer to those statements and the *New York Times* article for their complete and accurate text.

469.   The Schering Securities Act Defendants admit that Lead Plaintiffs purport to quote from an article published in the *New England Journal of Medicine*.   The Schering Securities Act Defendants refer to that article for its complete and accurate text.

470.   The Schering Securities Act Defendants admit that Lead Plaintiffs purport to quote from an article published in the *New England Journal of Medicine*.   The Schering Securities Act Defendants refer to that article for its complete and accurate text.

471.   The Schering Securities Act Defendants deny the allegations in Paragraph 471, and refer to the to the March 30, 2008 article in the *New England Journal of Medicine* for its complete and accurate text.   To the extent that the allegations of Paragraph 471 are characterizations of the results of the ENHANCE study, the Schering Securities Act Defendants state that the results of that study speak for themselves, and the Schering Securities Act Defendants deny any characterizations inconsistent therewith.

472.   The Schering Securities Act Defendants deny the allegations in Paragraph 472, and refer to publicly reported market services for the trading price of Schering-Plough's stock.

473.    The Schering Securities Act Defendants deny the allegations in Paragraph 473, except admit that Lead Plaintiffs purport to quote from an *Associated Press* article on March 31, 2008.  The Schering Securities Act Defendants refer to that article for its complete and accurate text.

474.    The Schering Securities Act Defendants admit that Lead Plaintiffs purport to quote from a March 31, 2008 *Wall Street Journal* article.  The Schering Securities Act Defendants refer to that article for its complete and accurate text.

475.    The Schering Securities Act Defendants deny the allegations in Paragraph 475, except admit that Lead Plaintiffs purport to quote from various comments made by securities analysts.  The Schering Securities Act Defendants refer to those analysts' comments and reports for their complete and accurate text.

476.    The Schering Securities Act Defendants deny the allegations in Paragraph 476, except admit that Lead Plaintiffs purport to quote prescription figures referenced in Schering-Plough's July 17, 2008 Form 8-K filing with the SEC.  The Schering Securities Act Defendants refer to that Form 8-K for its complete and accurate text.

477.    The Schering Securities Act Defendants deny the allegations in Paragraph 477, except admit that Schering-Plough announced on or about April 2, 2008 that it had instituted a "Productivity Transformation Program."

478.    The allegations in Paragraph 478 state legal conclusions to which no response is necessary.  To the extent a response is required, the Schering Securities Act Defendants deny the allegations in Paragraph 478.

479.    The Schering Securities Act Defendants deny the allegations in Paragraph 479.

480.    The allegations in Paragraph 480 state legal conclusions to which no response is necessary.   To the extent a response is required, the Schering Securities Act Defendants deny the allegations in Paragraph 480.

481.    The allegations in Paragraph 481 state legal conclusions and are not directed to the Schering Securities Act Defendants and, therefore, the Schering Securities Act Defendants are not required to answer such allegations.

482.    The Schering Securities Act Defendants admit that Plaintiffs purport to quote from Schering-Plough's Common Stock Prospectus and Preferred Stock Prospectus, and to reference Schering-Plough's Form 10-K for the year 2006 and Schering-Plough's April and July 2007 Forms 10-Q.   The Schering Securities Act Defendants refer to those documents for their complete and accurate text.

483.    The Schering Securities Act Defendants deny the allegations in Paragraph 483.

484.    The Schering Securities Act Defendants deny the allegations in Paragraph 484.

485.    The Schering Securities Act Defendants deny the allegations in Paragraph 485.

486.    The Schering Securities Act Defendants admit that Schering-Plough issued a press release on January 29, 2007 regarding its financial results for the fourth quarter of 2006 and year-ended December 31, 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K.   The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

487.     The Schering Securities Act Defendants admit that Schering-Plough issued a press release on January 29, 2007 regarding its financial results for the fourth quarter of 2006 and year-ended December 31, 2006, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

488.     The Schering Securities Act Defendants admit that Fred Hassan was quoted in the January 29, 2007 press release.  The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

489.     The Schering Securities Act Defendants deny the allegations in Paragraph 489.

490.     The Schering Securities Act Defendants deny the allegations in Paragraph 490, except admit that on February 28, 2007, Schering-Plough filed its annual report for the year 2006 (Form 10-K) with the SEC.  The Schering Securities Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

491.     The Schering Securities Act Defendants admit that on February 28, 2007, Schering-Plough filed its annual report for the year 2006 (Form 10-Q) with the SEC.  The Schering Securities Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

492.     The Schering Securities Act Defendants admit that Schering-Plough's Form 10-K contained an Item 7, under the heading "Management's Discussion and Analysis of Financial Condition and Results of Operations."  The Schering Securities Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

493.    The Schering Securities Act Defendants admit that Item 7 in the Form 10-K contained a subheading, "Cholesterol Franchise."   The Schering Securities Act Defendants refer to the February 28, 2007 Form 10-K for its complete and accurate text.

494.    The Schering Securities Act Defendants admit that the Form 10-K contained a sub-heading, "Equity Income from Cholesterol Joint Venture."   The Schering Securities Act Defendants refer to the Form 10-K for its complete and accurate text.

495.    The Schering Securities Act Defendants admit that the Form 10-K contained a heading, "2007 OUTLOOK."   The Schering Securities Act Defendants refer to the Form 10-K for its complete and accurate text.

496.    The Schering Securities Act Defendants deny the allegations in Paragraph 496.

497.    The Schering Securities Act Defendants admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's February 28, 2007 Form 10-K.

498.    The Schering Securities Act Defendants deny the allegations in Paragraph 498.

499.    The Schering Securities Act Defendants admit that Schering-Plough issued a press release on April 19, 2007 regarding its financial results for the first quarter of 2007, and that the press release was filed with the SEC as an exhibit to a Form 8-K.   The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

500.    The Schering Securities Act Defendants admit that Fred Hassan was quoted in Schering-Plough's April 19, 2007 press release.   The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

501.   The Schering Securities Act Defendants deny the allegation in Paragraph 501.

502.   The Schering Securities Act Defendants admit that on April 27, 2007, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Schering Securities Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

503.   The Schering Securities Act Defendants admit that the April 27, 2007 Form 10-Q contained an Item 2, titled "Management's Discussion and Analysis of Financial Condition and Results of Operations."  The Schering Securities Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

504.   The Schering Securities Act Defendants admit that the April 27, 2007 Form 10-Q contained a heading called "Cholesterol Franchise."  The Schering Securities Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

505.   The Schering Securities Act Defendants admit that the April 27, 2007 Form 10-Q contained a heading called "Equity income from cholesterol joint venture."  The Schering Securities Act Defendants refer to the April 27, 2007 Form 10-Q for its complete and accurate text.

506.   The Schering Securities Act Defendants deny the allegations in Paragraph 506.

507.   The Schering Securities Act Defendants deny the allegations in Paragraph 507, except admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's April 27, 2007 Form 10-Q.

508.   The Schering Securities Act Defendants admit that Schering-Plough issued a press release on July 23, 2007 regarding its financial results for the second quarter of

2007, and that the press release was filed with the SEC as an exhibit to a Form 8-K.  The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

509.   The Schering Securities Act Defendants admit that Fred Hassan was quoted in the July 23, 2007 press release.  The Schering Securities Act Defendants refer to the press release for its complete and accurate text.

510.   The Schering Securities Act Defendants deny the allegations in Paragraph 510.

511.   The Schering Securities Act Defendants admit that on July 27, 2007, Schering-Plough filed its quarterly report (Form 10-Q) with the SEC.  The Schering Securities Act Defendants refer to the July 27, 2007 Form 10-Q for its complete and accurate text.

512.   The Schering Securities Act Defendants admit that the July 27, 2007 Form 10-Q contained a heading called "Cholesterol Franchise."   The Schering Securities Act Defendants refer to the July 27, 2007 Form 10-Q for its complete and accurate text.

513.   The Schering Securities Act Defendants admit that the July 27, 2007 Form 10-Q contained a subheading called "Equity Income from Cholesterol Joint Venture."   The Schering Securities Act Defendants refer to the July 27, 2007 Form 10-Q for its complete and accurate text.

514.   The Schering Securities Act Defendants deny the allegations in Paragraph 514.

515.   The Schering Securities Act Defendants deny the allegations in Paragraph 515, except admit that Fred Hassan and Robert Bertolini signed Certifications in connection with Schering-Plough's July 27, 2007 Form 10-Q.

516.     The Schering Securities Act Defendants deny the allegations in Paragraph 516.

## CLAIMS FOR RELIEF UNDER THE SECURITIES ACT

### COUNT FOUR

**For Violations of Section 11 of the Securities Act, on Behalf of Purchasers of Schering's Registered Common Stock, Against Defendants Schering, Hassan, Bertolini, Koehler, Wolf, the Director Defendants and the Common Stock Underwriter Defendants**

517.     The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

518.     The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Section 11 of the Securities Act against the defendants identified in Paragraph 518, but deny the remaining allegations of Paragraph 518.

519.     The Schering Securities Act Defendants admit that Schering-Plough conducted offerings of common and preferred stock in August 2007.  The Schering Securities Act Defendants further admit that on or about August 2, 2007, Schering-Plough filed a prospectus and shelf registration statement with the SEC.  The Securities Act Defendants refer to those documents for a description of the offering.

520.     The allegations in Paragraph 520 state legal conclusions as to which no response is required.   To the extent a response is required, the Schering Securities Act Defendants admit that Defendants Hassan, Bertolini, Koehler and Wolf and the Director Defendants signed the Registration Statement.  The Schering Securities Act Defendants refer to the Registration Statement, which speaks for itself.

521.     The allegations in Paragraph 521 are not directed to the Schering Securities Act Defendants and do not require a response.

522.    The Schering Securities Act Defendants deny the allegations in Paragraph 522, and refer to the Offering Documents, which speak for themselves.

523.    The Schering Securities Act Defendants deny the allegations in Paragraph 523.

524.    The allegations in Paragraph 524 state legal conclusions as to which no response is required.    To the extent a response is required, the Schering Securities Act Defendants deny the allegations in Paragraph 524.

525.    The Schering Securities Act Defendants deny the allegations in Paragraph 525, except deny knowledge or information sufficient to form a belief as to whether Arkansas Teachers and members of the Class purchased Schering-Plough common stock traceable to the Registration Statement.

526.    The Schering Securities Act Defendants deny the allegations in Paragraph 526.

527.    The Schering Securities Act Defendants deny the allegations in Paragraph 527, except admit that Lead Plaintiffs have filed their claim within three years of the issuance of the Offering Documents.

528.    The Schering Securities Act Defendants deny the allegations in Paragraph 528.

## COUNT FIVE

**For Violations of Section 15 of the Securities Act, on Behalf of All Purchasers of Schering's Registered Common Stock, Against Defendants Hassan, Bertolini, Koehler and Wolf for Control Person Liability Based on Section 11 Violations by Schering**

529.    The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

530.    The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Sections 15 and 11 of the Securities Act against the defendants identified in Paragraph 530, but deny that the Schering Securities Act Defendants violated any securities laws or that Lead Plaintiffs are entitled to any relief.

531.    The Schering Securities Act Defendants deny the allegations in Paragraph 531.

532.    The Schering Securities Act Defendants deny the allegations in Paragraph 532.

533.    The Schering Securities Act Defendants deny the allegations in Paragraph 533, except admit that Lead Plaintiffs have filed their claim within three years after Schering-Plough's registered common stock was offered to the public.

534.    The Schering Securities Act Defendants deny the allegations in Paragraph 534.

## COUNT SIX

### For Violations of Section 12(a)(2) of the Securities Act, on Behalf of Purchasers of Schering's Registered Common Stock, Against Defendant Schering and the Common Stock Underwriter Defendants

535.    The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

536.    The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Section 12(a)(2) of the Securities Act against the defendants identified in Paragraph 536, but deny that the Schering Securities Act Defendants violated any securities laws or that Lead Plaintiffs are entitled to any relief.

537.    The Schering Securities Act Defendants deny the allegations in Paragraph 537, except deny knowledge or information sufficient to form a belief as to whether Arkansas

Teachers and members of the Class purchased shares of Schering-Plough's common stock issued pursuant to the Common Stock Prospectus or any other communications used to solicit the Common Stock Offering.

538.    The Schering Securities Act Defendants admit that Schering-Plough's common stock was sold pursuant to the Common Stock Prospectus, and by the use of means or instruments of transport or communication in interstate commerce or of the mails, and refer to the Common Stock Prospectus and the Offering Documents for their complete and accurate text.

539.    The Schering Securities Act Defendants deny the allegations in Paragraph 539.

540.    The Schering Securities Act Defendants deny the allegations in Paragraph 540.

541.    The Schering Securities Act Defendants deny the allegations in Paragraph 541.

542.    The Schering Securities Act Defendants deny the allegations in Paragraph 542.

543.    The Schering Securities Act Defendants deny the allegations in Paragraph 543.

544.    The Schering Securities Act Defendants deny the allegations in Paragraph 544, except admit that this action was commenced within three years of the Offering.

545.    The Schering Securities Act Defendants deny the allegations in Paragraph 545.

## COUNT SEVEN

**For Violations of Section 15 of the Securities Act, on Behalf of Purchasers of Schering's Registered Common Stock, Against Defendants Hassan, Bertolini, Koehler and Wolf for Control Person Liability Based on Section 12(a)(2) Violations by Schering**

546.    The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

547.    The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Sections 15 and 12(a)(2) of the Securities Act against the defendants identified in Paragraph 547, but deny that the Schering Securities Act Defendants violated any securities laws or that Lead Plaintiffs are entitled to any relief.

548.    The Schering Securities Act Defendants deny the allegations in Paragraph 548.

549.    The Schering Securities Act Defendants deny the allegations in Paragraph 549.

550.    The Schering Securities Act Defendants deny the allegations in Paragraph 550.

551.    The Schering Securities Act Defendants deny the allegations in Paragraph 551, except admit that this action was commenced within three years after Schering-Plough's registered common stock was offered to the public.

552.    The Schering Securities Act Defendants deny the allegations in Paragraph 552.

## COUNT EIGHT

**For Violations of Section 11 of the Securities Act, on Behalf of Purchasers of Schering's Registered Preferred Stock, Against Defendants Schering, Hassan, Bertolini, Koehler, Wolf, the Director Defendants and the Preferred Stock Underwriter Defendants**

553.     The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

554.     The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Section 11 of the Securities Act against the defendants identified in Paragraph 554, but deny that the Schering Securities Act Defendants violated any securities laws or that Lead Plaintiffs are entitled to any relief

555.     The allegations contained in Paragraph 555 state legal conclusions to which no response is required.  To the extent a response is required, the Schering Securities Act Defendants admit that Schering-Plough conducted an offering of common and preferred stock in August 2007.  The Schering Securities Act Defendants further admit that on or about August 2, 2007, Schering-Plough filed a prospectus and shelf registration statement with the SEC.  The Securities Act Defendants refer to those documents for a description of the Offering.

556.     The allegations contained in Paragraph 556 state legal conclusions as to which no response is required.  To the extent a response is required, the Schering Securities Act Defendants admit that Defendants Hassan, Bertolini, Koehler, and Wolf and the Director Defendants signed the Offering Documents, and refer to the Offering Documents, which speak for themselves.

557.     The allegations in Paragraph 557 are not directed to the Schering Securities Act Defendants and do not require a response.

558.     The Schering Securities Act Defendants deny the allegations in Paragraph 558, and refer to the Offering Documents, which speak for themselves.

559.     The Schering Securities Act Defendants deny the allegations in Paragraph 559.

560.     The Schering Securities Act Defendants deny the allegation in Paragraph 560.

561.     The Schering Securities Act Defendants deny the allegations in Paragraph 561, except deny knowledge or information sufficient to form a belief as to whether Arkansas Teachers and members of the Class purchased Schering-Plough preferred stock traceable to the Offering Documents.

562.     The Schering Securities Act Defendants deny the allegations in Paragraph 562.

563.     The Schering Securities Act Defendants deny the allegations in Paragraph 563, except admit that Lead Plaintiffs have filed their claim within three years of the issuance of the Offering Documents.

564.     The Schering Securities Act Defendants deny the allegations in Paragraph 564.

## COUNT NINE

**For Violations of Section 15 of the Securities Act, on Behalf of All Purchasers of Schering's Registered Preferred Stock, Against Defendants Hassan, Bertolini, Koehler and Wolf for Control Person Liability Based on Section 11 Violations by Schering**

565.     The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

566.     The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Sections 15 and 11 of the Securities Act against the defendants identified in Paragraph 566, but deny the remaining allegations in Paragraph 566.

567. The Schering Securities Act Defendants deny the allegations in Paragraph 567.

568. The Schering Securities Act Defendants deny the allegations in Paragraph 568.

569. The Schering Securities Act Defendants deny the allegations in Paragraph 569, except admit that Lead Plaintiffs have filed their claim within three years after Schering-Plough's registered preferred stock was offered to the public.

570. The Schering Securities Act Defendants deny the allegations in Paragraph 570.

## COUNT TEN

**For Violations of Section 12(a)(2) of the Securities Act, on Behalf of All Purchasers of Schering's Registered  Preferred Stock, Against Defendants Schering and the Preferred Stock Underwriter Defendants**

571. The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

572. The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Section 12(a)(2) of the Securities Act against the defendants identified in Paragraph 572, but deny that the Schering Securities Act Defendants violated any securities laws or that Lead Plaintiffs are entitled to any relief.

573. The Schering Securities Act Defendants deny the allegations in Paragraph 573, except deny knowledge or information sufficient to form a belief as to whether Arkansas Teachers and members of the Class purchased shares of Schering-Plough's registered preferred stock issued pursuant to the Preferred Stock Prospectus or any other communications used to solicit the Preferred Stock Offering.

574.    The Schering Securities Act Defendants admit that Schering-Plough's registered preferred stock was sold pursuant to the Preferred Stock Prospectus, and by the use of means or instruments of transport or communication in interstate commerce or of the mails, and refer to the Preferred Stock Prospectus and the Offering Documents for their complete and accurate text.

575.    The Schering Securities Act Defendants deny the allegations in Paragraph 575.

576.    The Schering Securities Act Defendants deny the allegations in Paragraph 576.

577.    The Schering Securities Act Defendants deny the allegations in Paragraph 577.

578.    The Schering Securities Act Defendants deny the allegations in Paragraph 578.

579.    The Schering Securities Act Defendants deny the allegations in Paragraph 579.

580.    The Schering Securities Act Defendants deny the allegations in Paragraph 580, except admit that this action was commenced within three years of the Offering.

581.    The Schering Securities Act Defendants deny the allegations in Paragraph 581.

## COUNT ELEVEN

**For Violations of Section 15 of the Securities Act, on Behalf of Purchasers of Schering's Registered Preferred Stock, Against Defendants Hassan, Bertolini, Koehler and Wolf, for Control Person Liability Based on Section 12(a)(2) Violations by Schering**

582.    The Schering Securities Act Defendants repeat each response above as if set forth fully herein.

583.    The Schering Securities Act Defendants admit that Lead Plaintiffs have purported to bring a claim under Sections 15 and 12(a)(2) of the Securities Act against the defendants identified in Paragraph 583, but deny the remaining allegations of Paragraph 583.

584.    The Schering Securities Act Defendants deny the allegations in Paragraph 584.

585.    The Schering Securities Act Defendants deny the allegations in Paragraph 585.

586.    The Schering Securities Act Defendants deny the allegations in Paragraph 586.

587.    The Schering Securities Act Defendants deny the allegations in Paragraph 587, except admit that this action was commenced within three years after Schering-Plough's registered preferred stock was offered to the public.

588.    The Schering Securities Act Defendants deny the allegations in Paragraph 588.

## **AFFIRMATIVE DEFENSES**

The Schering Defendants, while reserving the right to assert other defenses as discovery proceeds, and without assuming the burden of proof when the burden of proof rests on Plaintiffs, assert the following separate and independent affirmative defenses in further opposition to Plaintiffs' Consolidated Class Action Complaint:

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The Complaint fails to plead fraud with particularity as required by *Fed. R. Civ. P.* 9(b), and otherwise fails to comply with the requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4.

3.      The Schering Defendants did not make any statements during the Class Period that were false or misleading.

4.      The Schering Defendants did not make any statements during the Class Period that were rendered misleading as a result of an alleged omission of fact.

5.      The Schering Defendants are not liable to Plaintiffs because any alleged misrepresentations or omissions were not material.

6.      The Complaint fails to state a claim against the Schering Defendants based upon "fraud on the market" principles, because the alleged misrepresentations and omissions would not have induced a reasonable investor to misjudge the value of Schering-Plough stock.

7.      The Schering Defendants are not liable to Plaintiffs because they had no duty to disclose any facts allegedly not disclosed.

8.      The Schering Defendants did not make any misrepresentations and/or omissions of material fact upon which Plaintiffs relied; did not employ any device, scheme, or

artifice to defraud; and did not engage in any act, practice, or course of business that operated or would operate as fraud or deceit on any person.

9.      Plaintiffs' purported claims are barred in whole or in part because the Schering Defendants acted in good faith and exercised due diligence with reasonable care.

10.     Plaintiffs' purported claims are barred in whole or in part because Defendants had no knowledge of or reasonable grounds to believe in the existence of facts by which their liability is alleged to exist.

11.     The Schering Defendants did not know, and in the exercise of reasonable care could not have known, of any untruth or material omission that may be proved by Plaintiffs.

12.     The Schering Defendants are not liable under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the related SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, because they did not act with the requisite mental state or *scienter*.

13.     Some or all of the Plaintiffs or members of the putative Class alleged in the Complaint did not purchase or sell any securities in reliance on any representation, act, or omission by the Schering Defendants.

14.     The Schering Defendants are not liable to Plaintiffs to the extent that the alleged misstatements and omissions were not made in connection with the purchase or sale of any securities by Plaintiffs.

15.     Defendants Hassan, Bertolini, Koehler, Wolf, and Cox, acted in good faith and did not directly or indirectly control or induce any wrongful acts or omissions and did no unlawful act or thing directly or indirectly through or by means of any other person.

16.     The Plaintiffs' purported claims are barred in whole or in part under Section 11(b) of the Securities Act of 1933, 15 U.S.C. § 77k(b).

17.     Some or all of the Plaintiffs or members of the putative Class alleged in the Complaint were not damaged by the Schering Defendants' alleged representations, acts, or omissions.

18.     Plaintiffs' claims are barred, in whole or in part, because of the lack of transaction causation and/or loss causation.

19.     Plaintiffs' claims are barred, in whole or in part, because the Plaintiffs' alleged losses were not directly or proximately caused by any wrongdoing of the Schering Defendants, and the Plaintiffs have not suffered any injury or harm as a result of the actions of the Schering Defendants alleged in the Complaint.

20.     Plaintiffs' claims are barred, in whole or in part, because the depreciation in the market price of Schering-Plough securities resulted from factors other than the misstatements or omissions alleged in the Complaint.

21.     Plaintiffs' claims against the Schering Defendants are barred in whole or in part by their own actions, omissions, and/or negligence.

22.     The claims of some or all of the putative class are barred based on the doctrine of assumption of the risk.

23.     Plaintiffs failed to mitigate their damages, if any.

24.     Plaintiffs' claims are barred in whole or in part because their damages, if any, are speculative, and because of the impossibility of the ascertainment of their alleged damages.

25.     The total mix of information available to Plaintiffs adequately warned them of their risks and rewards associated with their investment in the common stock of Schering-Plough.

26.     All information relevant to Plaintiffs' claims was available to investors in the public domain.

27.     Some or all of the Plaintiffs or members of the putative Class lack standing to sue.

28.     Some or all of the Plaintiffs or members of the putative Class have no recoverable damages because the amount they paid for Schering-Plough stock is not greater than the value thereof at the time suit was brought, the price at which such securities were disposed in the market before suit, or the price at which such securities were disposed of after the suit but before judgment.

29.     Some or all of the misrepresentations alleged in the Complaint are barred by the "Bespeaks Caution Doctrine" and/or the safe-harbor provision for forward-looking statements under the Private Securities Litigation Reform Act.

30.     Plaintiffs and the purported class are barred from seeking recovery, or any recovery should be reduced, to the extent he/she or they have previously recovered any portion of the purported damages sought in the Complaint or any amount otherwise attributable to the matter or events that are the subject matter of the claims asserted in this Complaint.

31.     The Complaint is barred as to Plaintiffs or any purported class members who purchased stock during the Class Period, but did not hold it until the end of the alleged Class Period.

32.     The Complaint fails to state a claim against Defendants based upon "fraud on the market" principles for any class members who did not trade shares between the time the alleged misrepresentations were made and the time the purported "truth" was revealed.

33.     Plaintiffs are not entitled to attorney's fees, or expert fees, as a matter of law.

34.     Plaintiffs' claims are not properly maintained as a class action.

## JURY DEMAND

The Schering Defendants demand a trial by jury for all issues for which jury trial may be had.

## PRAYER FOR RELIEF

The Schering Defendants deny that Lead Plaintiffs are entitled to any relief against the Schering Defendants.  The Schering Defendants therefore respectfully request that this Court grant judgment in their favor on all the claims in the Complaint, dismiss the Complaint with prejudice and award the Schering Defendants such other and further relief as the Court deems just and appropriate.

Dated:  November 18, 2009                    Respectfully submitted,

*Of Counsel:*                                Douglas S. Eakeley

Daniel J. Kramer                             Gavin J. Rooney
Andrew G. Gordon                             Jason Halper
Robyn Tarnofsky                              **LOWENSTEIN SANDLER PC**
**PAUL, WEISS, RIFKIND, WHARTON &**          65 Livingston Avenue
**GARRISON LLP**                             Roseland, New Jersey  07068
1285 Avenue of the Americas                  973.597.2500
New York, New York 10019-6064                973.597.2400 (Fax)
212.373.3000                                 deakeley@lowenstein.com
*Attorneys for Merck & Co., Inc.*            grooney@lowenstein.com
                                             jhalper@lowenstein.com
                                             *Attorneys for the Schering Defendants*
Richard A. Spehr
Richard Ben-Veniste
Reginald R. Goeke
**MAYER BROWN LLP**                          By:  /s  Douglas S. Eakeley
1909 K Street NW
Washington, DC 20006-1101
202.263.3000
*Attorneys for the Schering Defendants*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

The undersigned hereby certifies that the underlying events at issue in this case are also the subject of the following actions that have been filed in the District of New Jersey: (1) *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, Civil Action No. 08-2177 (DMC) (MF), (2) *In re Schering-Plough Corp. ENHANCE ERISA Litigation*, Civil Action No. 08-1432 (DMC) (MF), (3) *In re Merck & Co., Inc. Vytorin ERISA Litigation*, Civil Action No. 08-1974 (DMC) (MF), (4) *Cain v. Hassan, et al.*, Civil Action No. 08-1022 (DMC) (MF), and (5) *Local No. 38 International Brotherhood of Electrical Workers Pension Fund v. Clark, et al.*, Civil Action No. 09-5668 (DMC) (MF).  All of those cases, and this action, relate to either federal securities, ERISA or shareholder derivative claims concerning the ENHANCE clinical study of Vytorin, a medicine that combines the Merck cholesterol drug Zocor with Schering-Plough's cholesterol drug Zetia.  These cases have been assigned to the Honorable Dennis M. Cavanaugh, U.S.D.J. and the Honorable Mark Falk, U.S.M.J.  The defendants will be requesting that these actions be coordinated for purposes of pre-trial discovery.

Respectfully submitted,

Douglas S. Eakeley
Gavin J. Rooney
Jason Halper
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500
973.597.2400 (Fax)
deakeley@lowenstein.com
grooney@lowenstein.com
jhalper@lowenstein.com
*Attorneys for the Schering Defendants*

By: /s  Douglas S. Eakeley

Dated:  November 18, 2009