# TOMPKINS, McGUIRE, WACHENFELD & BARRY, LLP

*Counselors at Law*

FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY 07102
Newark (973) 622-3000
New York (212) 714-1720
Fax (973) 623-7780
www.tompkinsmcguire.com

William B. McGuire
*Partner*

Tel: (973) 623-7750
E-Fax: (973) 623-7744
wmcguire@tompkinsmcguire.com

February 8, 2010

Via ECF

The Honorable Mark Falk, U.S.M.J.
United States District Court
M.L. King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   *In re Schering-Plough Corporation ENHANCE Securities Litigation*
       Civil Action No. 08-CV-397 (DMC) (MF)

       *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*
       Civil Action No. 08-CV-2177 (DMC) (MF)

       *In re Schering-Plough Corporation Enhance ERISA Litigation*
       Civil Action No. 08-1432 (DMC) (MF)

       *In re Merck & Co., Inc. Vytorin ERISA Litigation*
       Civil Action No. 08-1974 (DMC) (MF)

       *Cain* v. *Hassan*
       Civil Action No. 08-1022 (DMC) (MF)

       *Local No. 38 International Brotherhood of Electrical Workers Pension
       Fund* v. *Clark*
       Civil Action No. 09-5668 (DMC) (MF)

Dear Judge Falk:

       Pursuant to the Pretrial Scheduling Order dated December 22, 2009 (the "Order"),
we write on behalf of all parties to the above-referenced cases to apprise the Court of the current
status of these actions in anticipation of the telephonic status conference scheduled for February
9, 2010 at 11:00 am. Each of the six above-referenced cases relates to the alleged delay in the
publication of the results of a clinical trial, ENHANCE, of the FDA-approved cholesterol
management medication, Vytorin, that was jointly developed, marketed, and sold by Merck and

## TOMPKINS, McGUIRE, WACHENFELD & BARRY

Page 2

Schering-Plough. Two of the cases bring claims under the securities laws, two bring claims under ERISA, and two are derivative suits.

As Your Honor knows, Judge Madeline Cox Arleo issued an Order following a status conference held on December 9, 2009 pursuant to Rule 16 of the Federal Rules of Civil Procedure. The transcript of the status conference is attached. The Order contains a pre-trial schedule for all six above-captioned actions as follows:

Pre-Trial Schedule:

February 1, 2010: Parties to exchange their initial disclosures pursuant to Fed. R. Civ. P. 26.

February 1, 2010: Parties may serve up to thirteen single-part interrogatories.

March 1, 2010: Defendants' responses and objections to Requests for Production of documents due.

March 15, 2010: Merck/Schering-Plough Defendants to complete production of the 4.4 million pages of documents previously produced to the Attorney General and government agencies.

October 1, 2010. Parties may serve an additional twelve single-part interrogatories.

November 1, 2010: Deadline for filing any motion to amend the pleadings.

April 30, 2011: Fact Discovery closes.

May 30, 2011: Deadline for filing affirmative expert reports.

July 30, 2011: Deadline for filing responsive expert reports.[1]

Document Production:

Pursuant to the Order, on December 24, 2009, immediately following the Court's entry of a confidentiality order on December 23, 2009, the Merck/Schering-Plough Defendants produced the approximately 1.1 million pages of documents previously produced in the Vytorin-related MDL. The Order also calls for production by the Merck/Schering-Plough Defendants on a rolling basis of 4.4 million pages of documents previously produced in connection with various government investigations. The Merck/Schering-Plough Defendants have commenced production of these documents, and the remainder are being produced on a rolling basis and the Merck/Schering-Plough Defendants anticipate completing that portion of their production as scheduled by March 15, 2010.

---

[1]     Judge Arleo deferred establishing a due date for rebuttal expert reports until after expert discovery has commenced. *See* Transcript at 17:12-17:19.

## TOMPKINS, McGUIRE, WACHENFELD & BARRY

Page 3

The Merck and Schering-Plough securities Plaintiffs have propounded a set of coordinated document requests for their actions. The Merck ERISA Plaintiffs have also propounded separate document requests. Defendants will make their responses and objections to the document requests in the securities actions by March 1, 2010, as required by the Order. Additionally, the Merck ERISA Defendants will make their objections and responses to the Merck ERISA document requests on the same date.

Interrogatories:

The Merck ERISA Plaintiffs propounded four interrogatories on December 15, 2009. The Merck ERISA Defendants will respond and object to those interrogatories on March 1, 2010. The Merck and Schering-Plough securities Plaintiffs jointly propounded thirteen interrogatories directed to the Merck and Schering-Plough Defendants in the securities actions on February 2, 2010. The Merck and Schering-Plough Defendants will respond and object to those interrogatories on March 4, 2010.

Rule 26 Disclosures

Under the Order, all parties were required to make their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure by February 1, 2010. Plaintiffs in the derivative matters and the Schering-Plough ERISA matter did not meet this deadline; Plaintiffs in the derivative matters have agreed to provide initial disclosures by February 12 and Plaintiffs in the Schering-Plough ERISA matter have agreed to provide initial disclosures by February 19. All other parties timely served their disclosures.

\*   \*   \*

We look forward to speaking with Your Honor on February 9th.

Respectfully submitted,

William McGuire
James Cecchi

Enclosure
cc:    All Counsel on ECF Notice List in Civil Actions Nos. 08-397; 08-2177; 08-1432; 08-1974; 08-1022; and 09-5668 (DMC) (MF) with enclosures

```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
 2

 3   MANSON,                           .
                                       .
 4        Plaintiff,                   .
                                       . Case No. 08-cv-00397
 5   vs.                               .
                                       . Newark, New Jersey
 6   SCHERING-PLOUGH CORPORATION,      . December 9, 2009
     et al.,                           .
 7                                     .
          Defendants.                  .
 8

 9
                       TRANSCRIPT OF HEARING
10          BEFORE THE HONORABLE MADELINE ARLEO
                 UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12

13   For the Plaintiffs:    JAMES E. CECCHI, ESQ.
                            Carella Byrne Bain Gilfillan Cecchi
14                          Stewart & Olstein, PC
                            5 Becker Farm Road
15                          Roseland, NJ 07068

16                          GEOFF JARVIS, ESQ.
                            Grant & Eisenhofer
17                          1201 N. Market Street
                            Suite 2100
18                          Wilmington, DE 19801

19                          JONATHAN M. PLASSE, ESQ.
                            Labaton Sucharow LLP
20                          140 Broadway
                            34th Floor
21                          New York, NY 10005

22                          GERALD H. SILK, ESQ.
                            Bernstein Litowitz Berger & Grossmann
23                          LLP
                            1285 Avenue of the Americas
24                          38th Floor
                            New York, NY 10019

25
```

```
 1                            JUDY SCOLNICK, ESQ.
                              Scott + Scott LLP
 2                            29 West 57th Street, 14th Floor
                              New York, NY 10019
 3
     For the Defendants:     WILLIAM B. MCGUIRE, ESQ.
 4                            Tompkins, McGuire, Wachenfeld &
                              Barry, LLP
 5                            Four Gateway Center
                              100 Mulberry Street, Suite 5
 6                            Newark, New Jersey 07102

 7                            DANIEL KRAMER, ESQ.
                              ROBYN TARNOFSKY, ESQ.
 8                            Paul Weiss
                              1285 Avenue of the Americas
 9                            New York, NY 10019-6064

10                            DOUGLAS SCOTT EAKELEY, ESQ.
                              Lowenstein Sandler PC
11                            65 Livingston Avenue
                              Roseland, NJ 07068-1791
12
                              JEFFREY J. GREENBAUM, ESQ.
13                            A. ROSS PEARLSON, ESQ.
                              Sills Cummis & Gross P.C.
14                            The Legal Center
                              One Riverfront Plaza
15                            Newark, NJ 07102-5400

16                            DANIEL H.R. LAGUARDIA, ESQ.
                              ALAN S. GOUDISS, ESQ.
17                            Shearman & Sterling
                              599 Lexington Avenue
18                            New York, New York 10022

19

20   Audio Operator:

21   Transcription Service:      KING TRANSCRIPTION SERVICES
                                 65 Willowbrook Boulevard
22                               Wayne, New Jersey 07470
                                 (973) 237-6080
23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

1 | (Commencement of proceedings)

2

3 | THE COURT:  -- everyone, please have a seat.

4 | Okay.  We're here in a number of consolidated cases

5 | that are before Judge Cavanaugh.  And I would like to begin

6 | by asking -- and I know this is a big room, but I'd like to

7 | begin by having all the attorneys put their appearances on

8 | the record, beginning with the plaintiff.

9 | MR. CECCHI:  Good afternoon, Your Honor, James

10 | Cecchi on behalf of the plaintiffs in the Merck securities

11 | and the Schering securities cases.  With me today is Geoff

12 | Jarvis from Grant & Eisenhofer, John Plasse from Labaton's,

13 | Jerry Silk from Bernstein Litowitz, and --

14 | MS. SCOLNICK:  Judy Scolnick from Scott + Scott.

15 | THE COURT:  Thank you.  Good afternoon.  Okay.

16 | MR. McGUIRE:  On behalf -- excuse me, Your Honor.

17 | On behalf of the defendants, William B. McGuire, Tompkins,

18 | McGuire, Wachenfeld & Barry in Newark.

19 | With me at counsel table, Daniel Kramer and Robyn

20 | Tarnofsky from the Paul Weiss firm in New York.  And Douglas

21 | Eakeley from the Lowenstein Sandler firm.

22 | THE COURT:  Okay.  Good afternoon.

23 | MR. GREENBAUM:  Good afternoon, Your Honor, Jeffrey

24 | J. Greenbaum and Ross Pearlson [phonetic], Sills Cummis &

25 | Gross for the underwriter defendants.  With us as well today

1  from the firm Shearman & Sterling are Alan Goudiss and Daniel

2  Laguardia.

3           THE COURT:  Good afternoon, everyone.

4           Okay.  Let me tell you how we started this morning.

5  Given the -- the length and the depth of the discovery plan,

6  I thought it would make most sense and be most efficient to

7  take the two lead local counsel and see if there's a way we

8  could have an informal meet-and-confer over discovery

9  deadlines, and -- and then give Mr. Cecchi and Mr. McGuire an

10  opportunity to come back and discuss my views and -- my views

11  on timing and some of the discovery issues raised in the

12  plan.  And I think we made a lot of progress.

13           And what I'd like to do now is I have -- I took a

14  lot of notes when we were meeting in chambers.  I know that

15  Mr. Cecchi and Mr. McGuire -- and I should also note that I

16  also met with Mr. Kramer for some part of our afternoon --

17  I'd like for them to report to me and see if we can agree on

18  some of the dates.

19           And I should say on the outset, a couple of

20  observations:  One is that a lot of these dates anticipate

21  events that will happen a year -- in a year and a half from

22  now.  And until the parties see the scope and breadth of

23  discovery requests, until they see what kind of knowledge

24  witnesses have, I'm not sure that anyone in this room can

25  predict with any kind of certainty the real end date of

1   discovery.  And so what we do is we -- we make good-faith

2   estimates, understanding that dates need to be adjusted

3   because discovery is not always neat and tidy, but takes

4   courses sometimes that require adjustments.  And I say that

5   and anyone who practices before me or Judge Falk and in the

6   state of New Jersey -- District of New Jersey, knows that

7   that's our approach to discovery.

8           So I am loathe to put artificial dates into -- in

9   scheduling orders.  So I put in dates that recognize the

10  arguments on both sides, and with the -- with a very

11  practical recognition that dates in six consolidated class

12  actions of this magnitude need to be flexible.  And

13  flexibility is required, and dates will be adjusted based on

14  the circumstances that present as the case moves forward.

15  That's the first thing, and I just want to say that upfront,

16  and a lot of the dates, frankly, were just compromises based

17  on the dates that were presented; particularly, the discovery

18  end date was a compromise between the two proposed dates of

19  the parties.

20          Judge Falk will be managing this case, as far as I

21  know.  He is teamed with Judge Cavanaugh.  And he is

22  recovering from H1N1, as we speak, and he should be back

23  full-time, I hope by -- and we all hope by the beginning of

24  2010.

25          And in light of that, you will be, I assume, before

1   him.  He will -- like me, he will have regular status

2   conferences, mainly be by phone, unless there's major issues,

3   and then he'll have it -- have you all in person.  And Newark

4   is a lovely place to be in the winter, as anyone who has been

5   here in January and February knows.  So that's how -- how it

6   will happen.

7            What I'd like to do -- and I'm going to put it in

8   the first order that we enter -- is that before the next

9   scheduled status conference, which will be sometime in the

10  beginning of February, to prepare a status letter.  It

11  doesn't -- not to exceed five pages, unless you have to.  But

12  just to set forth what's going on.  If you have one position

13  and there's a dispute, just so he sort of -- given the

14  magnitude of the case here, the cases, I think it would be

15  helpful to have that kind of status letter, a brief status

16  letter in advance of the first conference.

17           I would also like to say that I have great respect

18  for all the lawyers here who have come from long -- faraway

19  as New York and Delaware.  But I would also like to emphasize

20  that we have local rules, and I would -- given -- given the

21  amount of discovery issues that may present themselves, I

22  think that it would be in the best interests of all the

23  parties to have local counsel present at all our court

24  conferences and all the depositions.  Too often, local

25  counsel comes to the conferences and they haven't been part

 1 | of the discovery process, and -- and there's a disconnect.
 2 | And there's also, I find, that when local counsel is present,
 3 | there's a real appreciation for our local rules, and the
 4 | local rules, the number one most important local rule is to
 5 | meet-and-confer and try to resolve things before you bring
 6 | them to a magistrate judge.
 7 |         We are -- we are -- we try to be lawyer-friendly
 8 | here.  We take faxes.  We -- we will accommodate lawyers by
 9 | phone.  If someone's in Delaware or New York, can't make it,
10 | phone is not a problem.  End of the day is not a problem.
11 | But on -- the other side may expect -- and I really -- to
12 | doubt it in this case, by the way -- professionalism and an
13 | attempt to work issues that can be worked out without our
14 | intervention.  So I have the highest regard for -- I think I
15 | know all the local counsel in the room by first name, and I
16 | have the greatest regard for them both professionally and
17 | personally, and I know they will ensure that our local rules
18 | and rules of civility and common sense prevail.  So I would
19 | request that they all be involved in the -- in the discovery
20 | moving forward.  Okay?
21 |         So with that, I could -- one other issue -- two
22 | other issues, I just want to state on the record just so you
23 | know how it operates.  If you have discovery disputes, Judge
24 | Cavanaugh does not want formal motions, but he wants
25 | comprehensive letters that lay out the problem.  And those of

1  you have practiced before us know what that means.

2          And always efile everything.  Efile everything

3  because everyone -- there's a lot of lawyers in the case; if

4  someone doesn't get a letter or a fax or an email, it's on

5  the system.  If -- there will be an order entered, and then

6  you have a mechanism for an appeal.  So always efile

7  everything.  Discovery disputes, if you can't work something

8  out, send -- send the letter, and the magistrate judge will

9  attempt to address that at the next scheduled conference.

10  It's never a good idea to send that letter 10 minutes before

11  the conference because the other side goes crazy.  So if

12  there's issues that you want to raise, try to do it a little

13  bit in advance -- a reasonable time in advance of the

14  conference.

15          Dispositive motions, I'm not going to give you a

16  date for dispositive motions.  I will wait -- Judge Falk will

17  wait to hear what the defense counsels say at the end of

18  discovery, whether it's at the end of fact discovery or

19  expert discovery.  But until you get closer to that deadline,

20  we can talk about -- or Judge Falk can talk with you about

21  the appropriate time to file dispositive motions.  But no

22  dispositive motions are to be filed until such time, and that

23  will be determined at the appropriate time.

24          So those are the -- those are the basic rules.  You

25  are all highly regarded professionals.  I don't have to go

1 | over the basics with you, I know, but I'd like to talk about
2 | some of the real important deadlines that we've -- I
3 | discussed in chambers and see if we can come to some
4 | resolution today in those deadlines.

5 |      Would you like to -- why don't I just raise some of
6 | the issues.  I'm going to draft an order in this case because
7 | I think it's important to have an order drafted by me rather
8 | than having you folks spend the next two days fighting over
9 | the form of the first order.  So I will draft it myself.
10 | Okay.

11 |      Let's talk about -- I'm going to say -- I'm going
12 | to state on the record what I -- what my understanding is as
13 | appropriate compromise between the parties.  If anyone wants
14 | to add anything, I'll let them speak.

15 |      We talked first about Rule 26 disclosures, and I
16 | want to talk about some of the early dates upfront, and then
17 | I'll let Mr. Cecchi and Mr. McGuire and anyone else add what
18 | they need to add.  That we will have Rule -- in light of the
19 | holidays and in light of January coming up before us, there's
20 | issues with documents.  And there's three categories of
21 | documents.  The first is documents that the first -- we call
22 | the 1.1 million documents that were -- have already been
23 | turned over to some of the plaintiffs' counsel.  As soon as
24 | the protective order is in place, those documents can be
25 | shared with -- with counsel.  And I would expect that that

1   confidentiality protective order can be sent to me ASAP.   If

2   you can get it to me Friday, Monday, I'm happy -- as soon as

3   I get it, if it's sent to me by fax or by email, I'll review

4   it and sign it that day, and you can turn over the first

5   category of documents immediately.

6           What's -- what's a way to describe that first

7   category for the discovery order?

8           MR. CECCHI:   I would describe it as the documents

9   previously produced in the MDL.

10          THE COURT:   Okay.

11          MR. CECCHI:   *In re* Vytorin Marketing.

12          THE COURT:   Okay.   Perfect.

13          UNIDENTIFIED SPEAKERS:   That's fine, Judge.

14          THE COURT:   Okay.   Second category of the documents

15  that were produced in the AG intergovernment agencies roughly

16  4.4 million dollars -- 4.4 million documents.   Some of those

17  have to be redacted and pulled from the production as

18  involving other products and -- that aren't at issue here and

19  also involving some identifying information for patients.   I

20  allowed defendants -- I asked defendants to start producing

21  them on a rolling basis and to have those documents produced

22  by March 15th of 2010.

23          The third category of documents are the remaining

24  documents that defendants -- plaintiffs may request separate

25  and apart from the ones we just discussed.   I'd ask that the

1   initial document requests on those be -- be served as soon as

2   possible.  A rebut- -- Mr. Cecchi, would next week be too

3   soon?

4           MR. CECCHI:  No, Your Honor.

5           THE COURT:  So I'll put by December 15th, at the

6   latest.  And I'm also going to give -- I thought given the

7   amount of documents that we're talking about -- to give

8   defendants until February 1 to -- and the holidays, to give

9   defendants February 1 to respond to that -- that -- that

10  formal document request.  And to also by February 1 to have

11  Rule 26 disclosures and interrogatories answered.  I'll

12  talk -- I'm going to jump into interrogatories in a second.

13  But February 1's going to be the date for response to the --

14  the document requests, the interrogatories, and Rule 26.

15          I'm going to tell you what I think about

16  interrogatories.  Interrogatories here, there's a lot of

17  parties and a lot of claims, and a lot of the claims and

18  parties overlap.  And I think both sides agree that every

19  party in every case serving 25 interrogatories would not be

20  productive.  So based on the arguments of counsel in chambers

21  and based on my understanding of the cases, the investor

22  cases, the securities cases, the derivative cases, the

23  overlap, the individual defendants, and my own view that

24  sometimes in cases this complicated, it's not until you get

25  into discovery that you may realize that you need to send

1   some additional pointed interrogatories, that sending out

2   that first batch right off the bat before you get a sense of

3   what the documents are, what the claims are, what the

4   defenses are, what the issues are, can be not the most

5   productive way to take discovery.

6              So in light of that, what I thought would be the

7   most expeditious way to proceed would be to allow 20 -- for

8   each of the six cases, 25 per side, and that 13 of them to be

9   answered by February 1st, we'll get them out, if they're --

10  if they're served by December 15th.  And the remaining 12 per

11  side will be served anytime after the second half of

12  discovery, which in this case would be I think about

13  November 1.  So we'll get the initial set out.  You'll get

14  them answered.  And then as discovery progresses, you could

15  serve more discovery, say -- I'll even say by October 1,

16  okay, you can start serving -- second -- or you can serve

17  them in increments if you want to.

18             But this way, there's a more realistic plan for

19  having both sides answer discovery, particularly the

20  defendants, knowing that they don't have to answer 150

21  interrogatories right off the bat.  They'll be answering 75

22  interrogatories off the bat.  It will give enough -- it will

23  give enough room for plaintiffs to start their depositions,

24  and it will also give the plaintiffs the opportunity to

25  ask -- not to have to come back and ask for more

1  interrogatories as the case progresses, but to use those

2  interrogatories later on.  If you want -- if you want that

3  date to be moved up a little bit sooner, August, September,

4  I'm happy to do that.

5           Mr. Cecchi, when would you like the second set to

6  be served?

7           MR. CECCHI:  Judge, I thought that your deadline of

8  October 1 was --

9           THE COURT:  Okay.

10          MR. CECCHI:  -- was acceptable.

11          THE COURT:  That's fine.

12          MR. CECCHI:  And I think within --

13          THE COURT:  If you need to serve them earlier,

14  just -- send it to Judge Falk.  You tell him, look, we would

15  like to serve another 10 now, because something happened in

16  the case, I'm sure that can be worked out.

17          MR. CECCHI:  And I think it would consistent with

18  Your Honor's sense, if we wanted to reserve some, if we

19  wanted two serve now and more later.

20          THE COURT:  Of course.

21          MR. CECCHI:  Okay.  Thank you.

22          THE COURT:  Of course.  That's always better.  And

23  I think that that's a -- I think there will be no problem

24  with that.  It's the max that you can serve now.

25          MR. CECCHI:  Thank you.

1              THE COURT:  Okay.  If you want to serve less, it's

2  not a problem.  Okay.

3              Does that -- anyone have any comment on that one?

4              MR. McGUIRE:  Judge, I have a couple of comments --

5              THE COURT:  Sure.

6              MR. McGUIRE:  -- do you want me to --

7              THE COURT:  Sure, why don't we take a break now and

8  you can tell me what the comments are.

9              MR. McGUIRE:  Judge, according to my notes, the

10  additional document requests that plaintiffs are likely to

11  serve us, I think you said we were to answer by December 15.

12  I think the date --

13              THE COURT:  Served.  Served.

14              MR. McGUIRE:  -- was March --

15              THE COURT:  Isn't it -- isn't it -- I'm sorry

16  Mr. -- is it -- I had answered by February 1 or --

17              MALE SPEAKER:  Produced by --

18              THE COURT:  Produced by -- you're right.  I stand

19  corrected.  The other documents are to be -- are to be

20  answered by March 15th.

21              MR. McGUIRE:  That's correct.

22              THE COURT:  And served by when?

23              MR. McGUIRE:  I think the service date was correct.

24              THE COURT:  December 15th.

25              MR. CECCHI:  Yeah.  I think the service is fine.

1  My notes, I think, are consistent with Mr. McGuire's --

2          THE COURT:  You're right.  Thank you.

3          MR. CECCHI:  -- that --

4          THE COURT:  Thank you.  I stand corrected.  Thank

5  you.

6          MR. CECCHI:  That they be produced on that same

7  March date.

8          THE COURT:  That's right.  The same as the other

9  4.4 million.

10          MR. CECCHI:  Correct.

11          THE COURT:  Okay.  What's next?

12          MR. McGUIRE:  There was one other date, Judge, the

13  interrogatories.  We had March 15 on that as well, according

14  to my notes.

15          THE COURT:  Okay.

16          MR. CECCHI:  For which one?

17          MR. McGUIRE:  For the --

18          MR. CECCHI:  Let me check.  Yes.

19          I have one other issue, Your Honor, if I may --

20          THE COURT:  I'm sorry.  So is that -- I have -- I

21  don't -- I'm not sure what the -- I know -- I see my notes

22  and I have March 15th to respond to document requests.

23          MR. McGUIRE:  Correct.

24          THE COURT:  Interrogatories --

25          MR. McGUIRE:  Yes.

1          THE COURT:  -- are going to be served by

2   December 15th -- by December 15th; correct?  As many as you

3   need.

4          MR. CECCHI:  I have answers to the first set by

5   February 1.

6          MR. McGUIRE:  We have March 15, Your Honor.

7          THE COURT:  Wednesday, March 1?

8          MR. CECCHI:  March 1 is fine.

9          THE COURT:  Okay.  Because -- now, especially

10  since, again, I'm looking at plaintiffs' counsel, I'm getting

11  a sense that they might not even serve the whole 12.

12          MALE SPEAKER:  Right, which is --

13          THE COURT:  Okay.

14          MALE SPEAKER:  Your Honor, one other point, if I

15  may, there is one case that is newly filed, the Merck

16  derivative case.  We have a stipulation in that case that

17  allows Merck to file a motion to dismiss.  So when Your Honor

18  says no dispositive motions --

19          THE COURT:  That's fine --

20          MALE SPEAKER:  -- that relates to summary

21  judgment --

22          THE COURT:  Yes.

23          MALE SPEAKER:  -- not to the motion --

24          THE COURT:  Yes.

25          MALE SPEAKER:  -- okay.  Thank you, Your Honor.

1              THE COURT:  So noted.  Thank you.

2         Okay.  I proposed, over objections from both sides,

3   an April 30th, 2011, discovery end date.

4              We discussed a May 30th date for affirmative expert

5   reports, and July 30 for responsive expert reports.  Defer

6   expert depositions until a later date to be set by the Court.

7              No depositions to be begin until February 1.  And

8   I'd be surprised if they start on February 1.

9              MR. CECCHI:  Judge, it's not critical at this

10  point, but I think we also discussed an August 15th for the

11  rebuttal reports, responsive, then rebuttal, but, again --

12             THE COURT:  No, what -- I don't think we -- what

13  I'd like to do now is defer on that for -- until we get later

14  into expert discovery.

15             MR. CECCHI:  Fine.

16             THE COURT:  I think having affirmative responses

17  was good, and then when we get closer to those dates and you

18  have a sense of what the experts are, we can talk about

19  rebuttal reports, so you can raise it with Judge Falk.

20             Yes.

21             MALE SPEAKER:  Your Honor, if I may, we discussed a

22  limit on the number of interrogatories that may be served on

23  individuals, being limited to --

24             THE COURT:  Well, I think we -- I revisited that

25  and said just 25 per side.

1               MALE SPEAKER:  Period.

2               THE COURT:  Period.  Let me see, there's 12 and

3     then 13.

4               MALE SPEAKER:  Okay, Your Honor.

5               THE COURT:  Okay?  Unless you all love

6     interrogatories so -- who likes interrogatories?  Could we

7     have a hand showing?

8               MALE SPEAKER:  We hate them, Your Honor.

9               THE COURT:  Does anyone like them?

10              MR. CECCHI:  -- working on those personally.

11              THE COURT:  Excellent.

12              Okay.  Are there any other issues that I've missed?

13              UNIDENTIFIED SPEAKERS:  I don't think so.

14              THE COURT:  I'm going to give you a date for -- I'm

15    going to check with Judge Falk.  I'll put a date for a phone

16    conference in February.

17              I am going to draft this myself tomorrow, but

18    before I sign it, I'm going to send drafts of it to

19    Mr. Cecchi and Mr. McGuire, and they can share it and let me

20    know what -- what additional mistakes I've made and I'll fix

21    them.  And then we'll have a final order in place --

22    hopefully by Friday, and we'll have a protective order maybe

23    by Friday, if we're lucky.

24              MR. CECCHI:  Judge --

25              THE COURT:  Anything else?

1          MR. CECCHI:  -- I wanted to say for all of the

2    plaintiffs, and I -- I know I'm -- I think the defense feel

3    the same way, I want to thank the Court for taking the time.

4    It's not what each side wished for, but we think it's a -- a

5    schedule that's achievable and efficient and will get this

6    case moving in the right direction.

7          THE COURT:  Excellent.  Well, I thank you.  And I

8    want -- I want to say, I know it might be unconventional to

9    take just a handful of lawyers in the -- in the back room, so

10   to speak, but it was very productive, and I get the sense

11   that you are all going to work together professionally and to

12   get the case ready and to move it forward, and I -- I

13   appreciate your input and your willingness to compromise.

14         MR. CECCHI:  Thank you.

15         THE COURT:  Especially Mr. McGuire and Mr. Cecchi.

16   Thank you very much.

17         Yeah.  Sure.

18         FEMALE SPEAKER:  I have one housekeeping --

19         THE COURT:  Sure.

20         FEMALE SPEAKER:  -- measure that probably is

21   applicable to the rest of the case.

22         THE COURT:  Okay.

23         FEMALE SPEAKER:  Ms. Rodriguez for the --

24         THE COURT:  All right.

25         FEMALE SPEAKER:  -- I wasn't here when Mr. Abrick

1  [phonetic] --

2          THE COURT:  We left you out.  You were in the jury

3  box and you were ignored.  I'm sorry.

4          FEMALE SPEAKER:  That's fine -- capable -- we were

5  incapable of --

6          Early on when the ERISA case was consolidated,

7  Judge Cavanaugh signed a consolidation order.  For some

8  reason Cobb [phonetic] -- although it's on the consolidation

9  order, the clerk's office doesn't believe that

10  it's consolidated, and so we can't get -- the Cobb plaintiffs

11  can't get email notifications.

12          THE COURT:  It's terrible.  We'll have to fix that.

13          FEMALE SPEAKER:  So --

14          THE COURT:  I have a new deputy clerk, Kim, and she

15  will fix it.

16          FEMALE SPEAKER:  Thank you.

17          THE COURT:  Okay?

18          FEMALE SPEAKER:  That's great.

19          THE COURT:  Thank you.

20          Anything else?

21          Thank you guys.  Good luck, and see Judge Falk in

22  February.

23          UNIDENTIFIED SPEAKERS:  Thank, Your Honor.

24                  (Conclusion of proceedings)

25

Certification

1

2

3     I, Sara L. Kern, Court-approved transcriber, certify

4  that the foregoing is a correct transcript from the official

5  electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8

9

10

11  s/ *Sara L. Kern*                    January 14, 2010

12  _____          _____
    Signature of Approved Transcriber            Date

13

14
    Sara L. Kern, CET**D-338
15  King Transcription Services
    65 Willowbrook Boulevard
16  Wayne, NJ 07470
    (973) 237-6080
17

18

19

20

21

22

23

24

25