# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE SCHERING-PLOUGH CORPORATION/ENHANCE SECURITIES LITIGATION | : : : : : : : : : | Civil Action No. 08-CV-397 (DMC)(JAD)<br><br>Honorable Dennis M. Cavanaugh<br><br>Motion Return Date:<br><br>February 21, 2012<br><br><br>(Oral Argument Requested)<br><br>*Document Electronically Filed* |

---

## UNDERWRITER DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

---

Alan S. Goudiss
Daniel H.R. Laguardia
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY  10022
212-848-4000
agoudiss@shearman.com
daniel.laguardia@shearman.com

*Attorneys for the Underwriter Defendants*

Jeffrey J. Greenbaum
Stuart M. Feinblatt
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ  07102
973-643-7000
jgreenbaum@sillscummis.com
sfeinblatt@sillscummis.com

*Attorneys for the Underwriter Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................... 3

      A.     Statement Of Facts ......................................................................... 3

      B.     Procedural History ......................................................................... 5

ARGUMENT ........................................................................................................... 6

I.     NO CLASS CAN BE CERTIFIED UNDER SECTIONS 11 AND 12 OF THE
      SECURITIES ACT BECAUSE THE PLAINTIFFS HAVE NOT MET THEIR
      BURDEN OF ESTABLISHING STANDING ................................................. 6

      A.     ATRS Does Not Have Standing To Assert Claims Under Section 11 ................. 6

             1.     ATRS Has Not Provided Any Evidence That It Incurred A Loss On
                  The Common Stock It Purchased In The 2007 Offering ........................... 8

             2.     The Record Establishes That ATRS Did Not Suffer A Cognizable
                  Loss On The Schering-Plough 2007 Preferred Securities ....................... 13

      B.     ATRS Does Not Have Standing To Assert Claims Under Section 12(a)(2) ........ 16

      C.     The Plaintiffs' Class Definition Is Overbroad ..................................... 17

CONCLUSION ........................................................................................................ 19

## TABLE OF AUTHORITIES

### CASES

*In re AIG, Inc. Sec. Litig.*, 265 F.R.D. 157 (S.D.N.Y. 2010) ............................................6

*Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682 (3d Cir. 1991) .....................................16

*In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169 (W.D.N.Y. 2007) ....................................15

*Colonial Realty Corp. v. Brunswick Corp.*, 257 F. Supp. 875 (S.D.N.Y. 1966) ...........................7

*In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2010) ......................................................18

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) .................................................................16

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) .....................................6

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) .............................7

*In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65 (S.D.N.Y. 2004),
    *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006) ........................................8, 17, 18

*Klein v. Computer Devices, Inc.*, 591 F. Supp. 270 (S.D.N.Y. 1984) ...................................8, 17

*Klein v. General Nutrition Companies, Inc.*, 186 F.3d 338 (3d Cir. 1999) .................................6

*Krim v. pcOrder.com*, 402 F.3d 489 (5th Cir. 2005) .....................................................8, 17

*Lee v. Ernst & Young, LLP*, 294 F.3d 969 (8th Cir. 2002) ...................................................7

*Lewis v. Casey*, 518 U.S. 343 (1996) ......................................................................6, 15

*McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007) ............................................13

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .....................................................................6

*Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655 (N.D. Ga. 2001) .............................10

*Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prod. N.V.*, 2007 WL 2814653
    (D.N.J. Sept. 24, 2007) .................................................................................15

*Schlesinger v. Reservists Committee*, 418 U.S. 208 (1974) ................................................15

*Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3d Cir. 1992) .............................................17

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ..............................6

*In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216 (E.D.N.Y. 2002)....................17

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ...............................16, 17

*Tsirekidze v. Syntax Brillan Corp.*, 2009 WL 2151838 (D. Ariz. July 17, 2009).........................18

*Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006).......................................18

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................................6

*Welch v. Eli Lilly & Co.*, 2009 WL 700199 (S.D. Ind. Mar. 16, 2009) .........................................10

*In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375314 (S.D.N.Y. Feb. 17, 2005) ...........................14

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)..................11

## STATUTES & RULES

15 U.S.C. § 77k...............................................................................................................7, 11

15 U.S.C. § 77k(e) ..........................................................................................................7, 14

15 U.S.C. § 77l................................................................................................................16

Fed. R. Civ. P. 23(b)(3)....................................................................................................18

Fed. R. Civ. P. 26(e) ........................................................................................................10

The Underwriter Defendants[1] respectfully submit this memorandum of law in opposition to the Plaintiffs'[2] amended motion for class certification, dated September 22, 2011. The Underwriter Defendants join Defendant Schering-Plough Corporation's ("Schering-Plough") memorandum of law in opposition to class certification (the "Schering-Plough Memorandum" or "S-P Mem.") and submit this memorandum of law for the sole purpose of addressing the standing of the Plaintiffs to bring claims pursuant to Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act").

## PRELIMINARY STATEMENT

The Plaintiffs do not carry their burden of establishing standing to assert claims under the Securities Act because, after amending or purporting to amend their motion for class certification twice, they have not shown by a preponderance of the evidence that the only proposed class representative asserting such claims (*i.e.,* the Arkansas Teacher Retirement System ("ATRS")) suffered any cognizable harm in connection with either the common stock or preferred securities it allegedly purchased in the Schering-Plough offerings.  Indeed, with respect to the common stock, the Plaintiffs' expert, Chad Coffman, has admitted that he was unable to determine or provide a valid basis for a loss when he was first deposed in connection with his

---

[1]     The Underwriter Defendants include ABN AMRO Rothschild LLC; Banc of America Securities LLC; Banca IMI SpA; BBVA Securities Inc.; Bear, Stearns & Co. Inc. (now J.P. Morgan Securities LLC); BNP Paribas Securities Corp.; BNY Capital Markets, Inc.; Citigroup Global Markets, Inc.; Credit Suisse Securities (USA) LLC; Daiwa Securities America Inc. (now Daiwa Capital Markets America Inc.); Goldman, Sachs & Co. (incorrectly identified as Goldman, Sachs & Co., Inc.); ING Financial Markets LLC; J.P. Morgan Securities Inc. (now J.P. Morgan Securities LLC); Mizuho Securities USA Inc.; Morgan Stanley & Co. Incorporated (now Morgan Stanley & Co. LLC); Santander Investment Securities Inc.; and The Williams Capital Group, L.P.

[2]     The Lead Plaintiffs and proposed class representatives are the Arkansas Teacher Retirement System, Massachusetts Pension Reserves Investment Management Board, Mississippi Public Employees' Retirement System, and Louisiana Municipal Police Retirement System (collectively, the "Plaintiffs").

damages and standing opinions.  Following that deposition, and only four days before the defendants' oppositions to class certification were due, Mr. Coffman served an amended report that (a) provided a new purported basis for finding a loss that contradicted his testimony at his earlier deposition and (b) relied on documents that had never been provided to the defendants before and/or which were concededly first obtained by Mr. Coffman himself after his deposition. Then, after the close of business on the eve of his second deposition, Mr. Coffman provided still more new analysis.  All of these new materials and opinions are untimely and improperly attempt to expand the Court-ordered discovery schedule (the defendants have separately reserved their rights to dispute their admissibility).  More directly, even if they are considered on class certification, they are unavailing.

This is because Mr. Coffman admitted during his second deposition that he cannot opine that ATRS suffered a loss on the same shares it purportedly purchased in the Schering-Plough offering.  At most, Mr. Coffman's amended report and testimony raise the *possibility* that ATRS may have incurred a loss *if* Mr. Coffman applies inventory assumptions known as last-in-first-out ("LIFO") or first-in-first-out ("FIFO").  But Mr. Coffman admitted that he has no basis to believe that ATRS's shares were actually sold or accounted for pursuant to those rules (or any others).  His assumptions are by definition insufficient to establish by a preponderance of the evidence that ATRS suffered a loss on the shares purportedly purchased in the offering.

The Plaintiffs have also failed to establish that they incurred any loss with respect to the preferred securities because the record establishes that ATRS effectively purchased the preferred securities at prices that are not alleged to have been inflated.  As Mr. Coffman has also conceded, there can be no damage in connection with such securities.  Because the Plaintiffs

have not met their burden of proof with respect to loss and standing, the Court should deny the

Plaintiffs' motion to certify a class of investors asserting claims under the Securities Act.

<u>**STATEMENT OF FACTS AND PROCEDURAL HISTORY**</u>

The underlying facts and procedural history in this action are provided in the

Schering-Plough Memorandum.  Only the facts and procedural history relevant to the standing

arguments under the Securities Act are set forth herein.

**A.      Statement Of Facts**

On August 9, 2007, Schering-Plough conducted a secondary offering of

57.5 million shares of common stock at $27.50 per share and an offering of 10 million shares of

6.00% mandatory convertible preferred stock (CUSIP # 806605705) (the "2007 Preferred

Securities") at $250 per share (collectively, the "2007 Offering").  (Cmplt. ¶¶ 44, 68, 425.)[3]  The

Plaintiffs assert Securities Act claims against Schering-Plough, certain officers and directors of

Schering-Plough, and the Underwriter Defendants based on alleged material misstatements and

omissions in the 2007 Offering documents.  (Cmplt. ¶¶ 423, 426-27, 518, 536, 554, 572.)  The

Plaintiffs do not allege that the Underwriter Defendants were aware of the alleged

misrepresentations or omissions.  To the contrary, the Plaintiffs have expressly disclaimed any

allegation of fraud or recklessness on the part of the Underwriter Defendants.  (Cmplt. ¶¶ 424,

517, 535, 553, 571.)

The only putative class representative for the Securities Act claims is Lead

Plaintiff ATRS.  (Cmplt. ¶¶ 423-24, Ex. A; Declaration of Jeffrey J. Greenbaum, dated

---

[3]      Citations to "Cmplt. ¶ __" refer to paragraphs in the Consolidated Class Action
Complaint for Violations of the Federal Securities Laws, dated September 15, 2008.  (Dkt. 52.)

December 6, 2011 ("Greenbaum Decl."), Ex. A.)  During the purported Class Period,[4] ATRS

purchased and sold hundreds of thousands of shares of Schering-Plough common stock.

(Greenbaum Decl. Ex. A; Ex. B; Declaration of Denise Neumann Martin, dated December 6,

2011 ("Martin Decl.") at 36-37.)  In addition, ATRS purportedly purchased 9,500 shares of

Schering-Plough common stock in the 2007 Offering at $27.50 per share.  (Initial Expert Report

of Chad Coffman, CFA, dated September 15, 2011 ("Initial Coffman Rpt.") ¶ 232) (Dkt. 243.)

Following this purchase, ATRS sold 188,116 shares of Schering-Plough common stock above

the 2007 Offering price.  (Greenbaum Decl. Ex. A; Ex. B; Martin Decl. at 36.)

          ATRS also purchased Schering-Plough mandatory convertible preferred securities

issued in 2004 (CUSIP # 806605606) (the "2004 Preferred Securities").  (Greenbaum Decl. Ex.

A; Ex. B at AT0000020.)  The Plaintiffs make no allegations or claims on the basis of those

purchases, and Mr. Coffman offers no opinion in connection with those securities.  (Greenbaum

Decl. Ex. C at 257:4-9.)  In fact, the record establishes that ATRS profited from the purchases

and sales of the 2004 Preferred Securities – first by selling some of the preferred securities in

April 2007 and later by selling the common stock into which the rest of the 2004 Preferred

Securities converted in September 2007.  (Greenbaum Decl. Ex. D at 107:20-108:15; 124:17-

125:9; Ex. A; Ex. B at AT0000020, 22-23.)  ATRS then used the profits to purchase the 2007

Preferred Securities at issue in this matter (Greenbaum Decl. Ex. D at 124:17-125:9; Martin

Decl. at 38-40), and, therefore, could not have suffered a cognizable loss when the 2007

Preferred Securities later declined in value.

---

[4]      The Plaintiffs "seek to certify a class of all persons and entities that purchased or
acquired Schering common stock, preferred stock, or call options, or sold Schering put options,
during the period between January 3, 2007 and March 28, 2008, inclusive (the 'Class Period')."
(Amended Memorandum of Law in Support of Lead Plaintiffs' Motion for Class Certification
("Pl. Mem.") at 1) (Dkt. 242.)

B.      Procedural History

On February 7, 2011, the Plaintiffs filed their original motion for class certification (Dkt. 191), and on September 22, 2011, the Plaintiffs filed an amended motion for class certification. (Dkt. 241.)  On November 15, 2011, the defendants deposed the Plaintiffs' class certification expert, Chad Coffman.  At his deposition, Mr. Coffman could not provide a rational basis for his conclusion that ATRS held the common shares it purportedly purchased in the 2007 Offering at the end of the purported Class Period.  On November 18, 2011, one business day before the defendants' opposition to class certification was due, the Plaintiffs served an amendment to Mr. Coffman's expert report, which cited to new documents and contained new opinions.  The Plaintiffs did not seek leave of the Court to file the amended expert report, and they did not amend their motion for class certification.  Pursuant to a stipulated amended scheduling order, dated November 22, 2011, the deadline for the defendants' opposition to class certification was extended to December 6, 2011, and the defendants deposed Mr. Coffman a second time on November 29, 2011.  (Dkt. 250.)[5]  At his second deposition, Mr. Coffman explained that, based on LIFO and FIFO inventory assumptions, it was possible that ATRS suffered a loss on the shares it purchased in the 2007 Offering, but he conceded that he could not state with any certainty that ATRS lost money on the same shares purchased in the offering.  (Greenbaum Decl. Ex. E at 89:15-90:14.)

---

[5]      In the amended scheduling order, the defendants reserved all rights to challenge the "appropriateness, validity, and admissibility" of Mr. Coffman's amended report and opinions. (Dkt. 250.)

## ARGUMENT

I. **NO CLASS CAN BE CERTIFIED UNDER SECTIONS 11 AND 12 OF THE SECURITIES ACT BECAUSE THE PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING STANDING**

As noted in the Schering-Plough Memorandum, a plaintiff purporting to bring a class action under Rule 23 must first establish that it has standing to bring the action in its individual capacity.  *See* S-P Mem. at 26; *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996); *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974); *Klein v. General Nutrition Companies, Inc.*, 186 F.3d 338, 345 (3d Cir. 1999).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth*, 422 U.S. at 502).  Accordingly, the Court cannot certify a class of plaintiffs asserting claims under the Securities Act unless the Plaintiffs establish that a class representative (ATRS) has standing by a preponderance of the evidence.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307, 320 (3d Cir. 2008); *see also In re AIG, Inc. Sec. Litig.*, 265 F.R.D. 157, 164-65 (S.D.N.Y. 2010) (applying the preponderance of the evidence standard and denying certification of a Section 11 class based on the lack of standing of the purposed class representative).

### A.    ATRS Does Not Have Standing To Assert Claims Under Section 11

Section 11 of the Securities Act provides a remedy for investors who purchase a security pursuant to a registration statement only if (i) there is a material misrepresentation or omission in the registration statement, and (ii) the security purchased is sold for a loss or is worth

less than the purchase price at the time of suit.  *See* 15 U.S.C. § 77k.[6]  A plaintiff cannot

establish a cognizable loss if it sold its shares for more than the offering price.  *See In re Initial*

*Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 351 (S.D.N.Y. 2003) ("[B]ased on the plain

language of Section 11 and its legislative history, a plaintiff who sells a security above its

offering price has no cognizable damages under Section 11 of the Securities Act,

notwithstanding the fact that such plaintiff may have actually suffered a loss").  In addition, the

relevant security for purposes of Section 11 is the security that was purchased in the offering and

not other securities issued in other offerings and coincidentally held by the plaintiff.  *See Lee v.*

*Ernst & Young, LLP*, 294 F.3d 969, 976 (8th Cir. 2002) (stating that "such security" in Section

11(a) refers to "a security registered under the registration statement alleged to be defective");

*Colonial Realty Corp. v. Brunswick Corp.*, 257 F. Supp. 875, 878 (S.D.N.Y. 1966) (stating that

"such security" in Section 11(e) refers to the security that was "offered to the public under the

registration statement").

---

[6]     Section 11 provides that a plaintiff is only entitled to damages in connection with a
security purchased pursuant to a registration statement and only to the extent of:

> the difference between the amount paid for *the security* (not exceeding the
> price at which *the security* was offered to the public) and (1) *the value*
> *thereof* as of the time such suit was brought, or (2) the price at which *such*
> *security* shall have been disposed of in the market before suit, or (3) the
> price at which *such security* shall have been disposed of after suit but
> before judgment if such damages shall be less than the damages
> representing the difference between *the amount paid for the security* (not
> exceeding the price at which the security was offered to the public) and
> *the value thereof* as of the time such suit was brought.

15 U.S.C. § 77k(e) (emphasis added).

     1.     <u>ATRS Has Not Provided Any Evidence That It Incurred A Loss On The Common Stock It Purchased In The 2007 Offering</u>

As Plaintiffs' expert admits, it is exceedingly difficult to trace common stock purchases to secondary offerings because of the number of shares already circulating in the market at the time of the offering.  (Initial Coffman Rpt. ¶ 214; Greenbaum Decl. Ex. C at 255:23-256:8; Ex. E at 44:8-24; Martin Decl. at 33-36.)[7]  Similarly, because individual shares do not have unique identifiers and are generally held in "street name," it is generally impossible to determine which stocks from a pool of holdings are sold in any particular stock sale. (Greenbaum Decl. Ex. C at 255:15-256:8; Ex. E at 44:8-24; Martin Decl. at 34-36.)

At the time that ATRS allegedly purchased Schering-Plough common stock in the 2007 Offering, there were already over 1.6 billion Schering-Plough common shares outstanding. (Cmplt. ¶ 68.)  ATRS purchased and sold Schering-Plough common stock before and during the purported Class Period, and those holdings were commingled with stock purportedly purchased in the 2007 Offering.  (Greenbaum Decl. Ex. B; Martin Decl. at 36-37.)  Thus, to establish standing under Section 11, the Plaintiffs must distinguish the common stock that ATRS purchased in the 2007 Offering from the rest of ATRS's holdings and show that the securities purchased in the 2007 Offering were later sold at a loss or were still held by ATRS at the time it brought suit.  The Plaintiffs have not met this burden.

---

[7]     *See also In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004) (noting that, given "the modern practice of electronic delivery and clearing of securities trades . . . it [is] virtually impossible to trace shares to a registration statement once additional unregistered shares have entered the market"), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006); *Klein v. Computer Devices, Inc.*, 591 F. Supp. 270, 273 n.7 (S.D.N.Y. 1984) (stating that "[i]f the purchaser bought identical securities already being traded on the open market, he must look elsewhere for relief"); *see also Krim v. pcOrder.com*, 402 F.3d 489, 498 (5th Cir. 2005) (noting that, because of the fungible nature of securities held in street name, it is not possible to trace shares when the company has had more than one offering).

The Plaintiffs first attempted to establish standing through Mr. Coffman's opinion in his initial report that ATRS purchased 9,500 shares of common stock in the 2007 Offering and "continued to hold *these Common Stock shares* through the end of the Class Period." (Initial Coffman Rpt. ¶ 232) (emphasis added).) At his first deposition, however, Mr. Coffman was entirely at a loss to explain the basis for that opinion. (Greenbaum Decl. Ex. C at 251:22-252:21; 261:3-18; 267:19-269:14; 272:12-273:1.) Moreover, he admitted that the documents identified in his initial report did not provide a sufficient basis for his opinion. (Greenbaum Decl. Ex. C at 270:8-13.)

After taking a break to consider the record and consult with counsel for the Plaintiffs, Mr. Coffman opined that, although he could not be 100 percent certain, he believed that the basis for his conclusion that ATRS had not sold the common stock it purchased in the 2007 Offering before the end of the purported Class Period was as follows: ATRS's trading records showed that ATRS had purchased the common stock issued in the 2007 Offering either from or through Goldman, Sachs & Co., and, even though ATRS sold shares through a number of different brokers, he thought it was reasonable to assume that, unless ATRS's trading records showed that ATRS had sold stock through or to Goldman Sachs, ATRS must have continued to hold those same securities through the end of the purported Class Period. (Greenbaum Decl. Ex. C at 262:14-263:7; 267:1-18; 272:3-11.) This potential explanation was absurd and, in his second deposition, Mr. Coffman admitted it made no sense. (Greenbaum Decl. Ex. E at 136:3-8.)

The Plaintiffs must have realized the absurdity of Mr. Coffman's original testimony shortly after it was completed because, three days after his initial deposition, they submitted an amendment to Mr. Coffman's initial report. (Amendment to the Expert Report of

Chad Coffman, dated November 18, 2011 ("Coffman Amendment").)[8]  In that amendment,

Mr. Coffman said nothing about his assumption that shares purchased from Goldman Sachs

would likely be sold to Goldman Sachs.  Instead, he purported to lay out three alternative

potential bases for concluding that ATRS may have continued to hold Schering-Plough common

stock purchased in the 2007 Offering at the end of the purported Class Period (or, in his amended

report, close to the end of the purported Class Period).

More specifically, Mr. Coffman opined in his amended report that his original

opinion had been that *if* one applied a LIFO inventory assumption to ATRS's Class-Period

transactions, *that assumption* would support the conclusion that ATRS continued to hold the

Schering-Plough common stock purchased in the 2007 Offering at the end of the purported Class

Period.  (Greenbaum Decl. Ex. E at 11:22-13:9.)  He also opined, based on additional

information he obtained from ATRS after his initial deposition, that *if* one applied a FIFO

inventory assumption to ATRS's transactions from before and throughout the purported Class

Period, *that assumption* would support the conclusion that ATRS continued to hold Schering-

Plough common stock it purchased in the 2007 Offering until March 12, 2008 – but not until the

---

[8]     The submission of this amendment following crippling testimony at deposition is wholly
inappropriate.  Mr. Coffman and the Plaintiffs should be limited to the opinions and bases (or
lack of the same) set out in his initial report.  *See Reid v. Lockheed Martin Aeronautics Co.*, 205
F.R.D. 655, 661-62 (N.D. Ga. 2001) (refusing to review additional expert opinions to determine
whether to certify a class because the amendments contained new opinions, based on new data
and analyses, and because one amendment was submitted only a week before defendants were to
respond to plaintiffs' class certification motion and another was submitted after defendants had
responded).  Moreover, while supplements to expert reports are permitted to correct inadvertent
errors or omissions, Fed. R. Civ. P. 26(e), amending a report to provide new and improved
opinions is impermissible gamesmanship.  *See Welch v. Eli Lilly & Co.*, 2009 WL 700199, at *4-
6 (S.D. Ind. Mar. 16, 2009) (striking plaintiffs' amended expert report because it was untimely,
an attempt to respond to defendant's critiques raised in the expert's deposition, and an "attempt
to bolster [the original report] with new analyses not previously performed on the exact same
data").

end of the purported Class Period as he had originally opined.  (Greenbaum Decl. Ex. E at 91:4-12.)

Mr. Coffman also provided the additional new opinion that both the LIFO and FIFO inventory assumptions would suggest that the Schering-Plough common stock purchased in the 2007 Offering was held until the end of the purported Class Period *if those assumptions were only applied to one of ATRS's six investment accounts* (rather than to ATRS's holdings in their entirety).[9]

Mr. Coffman's amended opinions are as deficient as his original one. Mr. Coffman admitted that he is not aware of any evidence that ATRS, State Street (the custodian holding ATRS's securities), or any of ATRS's investment managers actually purchased and sold shares on a LIFO or FIFO inventory basis, rather than randomly or under some other regime.  (Greenbaum Decl. Ex. E at 38:11-24; 98:24-99:4.)  Indeed, he admitted that he had no basis to say whether any of those entities used LIFO or FIFO for accounting purposes at all.  (Greenbaum Decl. Ex. E at 38:11-24; 98:24-99:17.)  Thus, Mr. Coffman's use of inventory assumptions is nothing more than a series of arbitrary and self-serving calculations that do not – and cannot – establish by a preponderance of the evidence that ATRS actually held or sold the common stock it purchased in the 2007 Offering for a loss.

---

[9]    Mr. Coffman testified that he has no opinion as to whether any of these potential methodologies are more appropriate than any others.  (Greenbaum Decl. Ex. E at 53:16-55:1.)  In fact, there is no evidence that LIFO or FIFO analyses are applicable here at all.  (*See infra.*)  But there is certainly no basis on which to limit such calculations to a specific investment account. The Securities Act provides remedies to plaintiffs, not investment managers.  *See* 15 U.S.C. § 77k; *see also W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (holding that an investment manager does not have standing to sue based on the investment decisions it made on behalf of its client).  Even Mr. Coffman admitted that, as an economic matter, ATRS's loss would be the net losses suffered when the profits and losses in each account were combined.  (Greenbaum Decl. Ex. E at 112:14-23; 114:5-21.)

Indeed, there is ample evidence to find that ATRS may well have recognized a gain by selling the 9,500 common stock shares it allegedly purchased in the 2007 Offering for more than the price it paid.  ATRS had six investment managers that purchased hundreds of thousands of shares of Schering-Plough common stock before and after the 2007 Offering. (Greenbaum Decl. Ex. B; Martin Decl. at 36-37.)  Mr. Coffman conceded that all of these securities were held as a "fungible mass" at State Street.  (Greenbaum Decl. Ex. C at 255:2-256:8.)  Moreover, it is undisputed that between August 9, 2007 (the date of the 2007 Offering) and March 28, 2008 (the end of the purported Class Period), ATRS sold 188,116 shares of Schering-Plough common stock for more than the 2007 Offering price of $27.50 per share. (Greenbaum Decl. Ex. A; Ex. B at AT0000010-11, 17-18, 22-23, 27-28; Martin Decl. at 36.) Thus, not only is there no basis to find that ATRS incurred a loss in connection with common shares purchased in the 2007 Offering, it may have recognized a gain on those shares if it included them in its subsequent stock sales executed in excess of $27.50 a share.

Mr. Coffman conceded that this was a possibility.  (Greenbaum Decl. Ex. E at 89:15-90:14.)  He also conceded that even entities that do apply LIFO or FIFO inventory assumptions may apply them for periods different than that used by Mr. Coffman, for example on a month-by-month, quarter-by-quarter, or year-by-year basis.  (Greenbaum Decl. Ex. E at 58:2-15.)  In the case at hand, it is worth noting that if Mr. Coffman had considered only the Schering-Plough common stock purchased during the purported Class Period – *i.e.*, the stock that was affected by the alleged fraud – then, under a FIFO analysis, ATRS would have no loss because the common stock that ATRS purchased in the 2007 Offering would have been sold on September 24, 2007 – at a profit.  (Greenbaum Decl. Ex. E at 50:12-20.)

In the end, Mr. Coffman admitted that he was aware of no method through which to determine when ATRS actually sold the Schering-Plough stock it purchased in the 2007 Offering because there is no unique identifier or "serial number" associated with each stock. (Greenbaum Decl. Ex. E at 88:24-90:22). Indeed, Mr. Coffman admitted that he did not know whether it was likely or unlikely that the actual shares purchased in the 2007 Offering had been sold for a loss or a gain; he only knew how certain inventory assumptions might be applied. (Greenbaum Decl. Ex. E at 89:15-90:14.)

At most, Mr. Coffman's opinion raises the *possibility* that ATRS still held shares purchased in the 2007 Offering at the end of the purported Class Period. But possibility is not enough. The Plaintiffs must prove by a preponderance of the evidence that ATRS did, in fact, hold the shares and suffer a loss. Because Section 11 provides a remedy for losses incurred on shares actually – not constructively – purchased in 2007 Offerings, the Plaintiffs' self-serving LIFO and FIFO analyses cannot by themselves provide sufficient evidence to support class certification for the Securities Act claims relating to the Schering-Plough common stock, and no such class should be certified.

2.       The Record Establishes That ATRS Did Not Suffer A
         Cognizable Loss On The Schering-Plough 2007 Preferred Securities

The Plaintiffs have also failed to establish they have standing to assert Securities Act claims based on ATRS's purchase of 2007 Preferred Securities because the record is clear that ATRS suffered no fraud-related losses in connection with those securities. Fraud-related losses are those incurred by investors who purchase securities at fraudulently inflated prices and then suffer losses when the securities become "uninflated" through the disclosure of the alleged fraud. *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir. 2007); *see also* Initial

13

Coffman Rpt. ¶ 190.  ATRS suffered no such losses with regard to the 2007 Preferred Securities because it effectively paid uninflated prices for them.[10]

As noted, there is no evidence at all that the 2004 Preferred Securities were affected by fraud, or that their prices were inflated by fraud, at the time ATRS purchased them in January 2007, and the Plaintiffs' expert has expressed no such opinion.  (Greenbaum Decl. Ex. C at 257:4-9.)  Moreover, the record shows that ATRS sold those 2004 Preferred Securities at a profit – first by selling some of them in April 2007 and, later, by selling common stock after the 2004 Preferred Securities automatically converted into common stock in September 2007. (Greenbaum Decl. Ex. A; Ex. B at AT0000020, 22-23; Ex. D at 107:18-108:15; 124:17-125:9; Martin Decl. at 38-40.)

The Plaintiffs then used those Class-Period profits gained from the 2004 Preferred securities (necessarily including, according to the Plaintiffs, profits gained from the fraudulent inflation of the prices of the securities sold) to buy the 2007 Preferred Securities (Greenbaum Decl. Ex. D at 124:17-125:9)[11] at prices that the Plaintiffs also allege were inflated.  (Initial Coffman Rpt. ¶ 196).  In other words, ATRS effectively invested in securities that were not

---

[10]     Pursuant to the negative causation defense, a plaintiff cannot recover any losses under Sections 11 or 12 of the Securities Act that were not caused by the share price decline following the disclosure of the alleged misstatement or omission.  15 U.S.C. § 77k(e); *see also In re WorldCom, Inc. Sec. Litig.*, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005) (stating that negative causation under Section 11 is the mirror image of loss causation under Section 10(b)). It is undisputed that drops in the price of Schering-Plough securities unrelated to the Plaintiffs' alleged corrective disclosures were not caused by the fraud.  (Initial Coffman Rpt. ¶ 20; Martin Decl. at 2, 9.)

[11]     ATRS's investment manager expressly linked its September 24, 2007 sale of Schering-Plough common stock to the stock it obtained ten days earlier, on September 14, 2007, when the 2004 Preferred Securities that ATRS had purchased in January 2007 automatically converted from preferred securities into common stock on September 14, 2007.  (Greenbaum Decl. Ex. D at 124:17-125:9 (testifying that the common stock was sold and the proceeds invested in the 2007 Preferred Securities because the investment manager was not supposed to hold common stock).)

alleged to be inflated (the 2004 Preferred Securities), sold them at inflated prices (after they converted to common shares), profited from the alleged fraud, and then reinvested those profits in the 2007 Preferred Securities.  (Martin Decl. at 38-40; Greenbaum Decl. Ex. E at 111:2-112:13 (admitting that one of many ways ATRS could profit from the alleged fraud was by "purchasing securities that were not alleged to be inflated and then selling them at allegedly inflated prices").)  Because the price of the 2004 Preferred Securities that ATRS purchased in January 2007 is not alleged to have been inflated by any fraud, ATRS's investment in the 2007 Preferred Securities was effectively made at uninflated prices, and *ATRS did not purchase any inflated preferred securities except with profits obtained by selling Schering-Plough securities at a price that was also allegedly inflated by the fraud.*[12]  ATRS therefore suffered no recoverable losses when the alleged fraud was disclosed and the 2007 Preferred Securities dropped in price to eliminate the alleged improper inflation.  Under these circumstances, ATRS's actual loss is zero. ATRS does not have standing without loss,[13] and the Court should not certify a class of investors

---

[12]     The Plaintiffs state in their memorandum of law in support for their motion for class certification that the Plaintiffs' claims and injuries are "typical of those of absent Class members because . . . both Plaintiffs and absent Class members purchased Schering securities at artificially inflated prices due to Defendants' materially false and misleading statements . . . ."  (Pl. Mem. at 16.)  But ATRS's claims and injuries are not "typical" because, unlike absent purported Class members, it effectively purchased the 2007 Preferred Securities at uninflated prices.  ATRS is therefore subject to unique defenses and cannot satisfy the typicality requirement of Rule 23(a)(3).  *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) (rejecting the application of a proposed lead plaintiff because it likely profited from the alleged fraud and therefore "subject [it] to unique defenses that render [it] incapable of adequately representing the class") (alteration in the original).

[13]     *See* S-P Mem. at 25-6 (citing *Lewis*, 518 U.S. at 357; *Schlesinger v. Reservists Committee*, 418 U.S. 208, 216 (1974)).

who purchased preferred shares in the 2007 Offering and seek to assert claims under the Securities Act.[14]

**B.      ATRS Does Not Have Standing To Assert Claims Under Section 12(a)(2)**

The arguments discussed above apply with equal force to ATRS's Section 12(a)(2) claims, which also require that a plaintiff establish that the losses suffered were in connection with the securities purchased from a defendant in an offering.[15]  The Court should, therefore, also decline to certify a class of purchasers of Schering-Plough common or preferred securities asserting claims under Section 12 because the Plaintiffs have not established that ATRS suffered any cognizable damages.  ATRS also lacks standing to assert a Section 12(a)(2) claim based on its purchase of Schering-Plough 2007 Preferred Securities for the independent reason that Section 12(a)(2) does not afford a remedy to an investor who purchased shares in the secondary market.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 571, 578, 582-83 (1995); *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 692 (3d Cir. 1991).

Here, ATRS did not purchase its preferred shares directly in the 2007 Offering but, instead, purchased the shares in the secondary market over a month after the 2007 Offering, at a different price than the 2007 Offering price, and from an entity (Deutsche Bank) that is not a defendant in this case.  (Greenbaum Decl. Ex. A; Ex. B at AT0000020; Ex. D at 123:15-124:11.)

---

[14]      Likewise, courts typically "net" the plaintiff's losses against its profits attributable to the same alleged fraud.  *See Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prod. N.V.*, 2007 WL 2814653, at *14 (D.N.J. Sept. 24, 2007) (stating that, while the Third Circuit has not confronted the issue, the Second, Fifth, Ninth, and Tenth Circuits have adopted the "netting" approach to determining a plaintiff's actual loss).  Indeed, Mr. Coffman provided support for netting when he testified that a plaintiff's losses should be reduced by any profits from an alleged fraud. (Greenbaum Decl. Ex. E at 112:14-23.)  Consistent with the netting approach and Mr. Coffman's testimony, ATRS did not suffer an economic loss on the 2007 Preferred Securities.

[15]      *See* 15 U.S.C. § 77l; *see also* Greenbaum Decl. Ex. C at 257:10-20 (Mr. Coffman testified that he was not offering an opinion regarding Section 12 damages).

Because ATRS did not purchase the 2007 Preferred Securities directly from a defendant in the 2007 Offering, it does not have standing to assert a Section 12(a)(2) claim.  Accordingly, the Court should not certify a Section 12(a)(2) class on behalf of purchasers of Schering-Plough's 2007 Preferred Securities.  *See In re Suprema Specialties*, *Inc. Sec. Litig.*, 438 F.3d 256, 274 (3d Cir. 2006) ("If defendants were eventually to prove that the shares came from the secondary market, § 12[(a)](2) would not apply, and judgment would be entered for them.") (citing *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 287 n.16 (3d Cir. 1992) (alteration in original); *see also In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216, 244-45 (E.D.N.Y. 2002) (surveying the case law in the Second Circuit and adopting the widely held view that a plaintiff does not have standing under Section 12(a)(2) if it purchased its securities in the secondary market).

### C.     The Plaintiffs' Class Definition Is Overbroad

If the Court determines that ATRS has standing (which it should not), the Court should still narrow the Plaintiffs' proposed class definition because it improperly includes proposed class members who cannot possibly trace their purchases to the 2007 Offering.  It is well established that, in order to recover on a Section 11 claim, a plaintiff must prove that it either purchased its shares directly in the offering or can "trace" its shares to a materially untrue registration statement issued in connection with the offering.  *See In re Suprema Specialties*, 438 F.3d at 269.  It is equally well established that "tracing" is virtually impossible once shares issued in an offering are mixed in the market with shares that pre-dated the offering.  (Initial Coffman Rpt. ¶ 214); *see also In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004) (noting that, given "[t]he modern practice of electronic delivery and clearing of securities trades . . . , it [is] virtually impossible to trace shares to a registration statement once additional unregistered shares have entered the market"), *vacated on other*

17

*grounds*, 471 F.3d 24 (2d Cir. 2006); *Klein v. Computer Devices, Inc.*, 591 F. Supp. 270, 273 n.7

(S.D.N.Y. 1984) (stating that "[i]f the purchaser bought identical securities already being traded

on the open market, he must look elsewhere for relief"); *Krim v. pcOrder.com*, 402 F.3d 489,

498 (5th Cir. 2005) (noting that, because of the fungible nature of securities held in street name,

it is not possible to trace shares when the company has had more than one offering).

As noted, Schering-Plough had more than 1.6 billion common shares trading on

the New York Stock Exchange prior to the 2007 Offering.  Schering-Plough issued another 57.5

million common shares in the 2007 Offering.  Under these circumstances, it would be impossible

for any investor who purchased shares of Schering-Plough's common stock after the 2007

Offering to trace those shares directly to the 2007 Offering.  Indeed, the mere attempt to satisfy

the tracing requirement would impermissibly fragment the class action into myriad mini-trials on

this subject, creating individualized issues of proof that would predominate over common

questions of law or fact.  *See* Fed. R. Civ. P. 23(b)(3); *Tsirekidze v. Syntax Brillan Corp.*, 2009

WL 2151838, at *7 (D. Ariz. July 17, 2009) (limiting proposed class asserting 1933 Act claims

to purchasers who bought their stock directly in the secondary offering because the factual

showing that aftermarket purchasers would need to make in order to trace their shares to the

secondary offering would "overwhelm the questions common to the class"); *In re Initial Public

Offering Sec. Litig.*, 227 F.R.D. at 118-19 & nn.396 & 402 (excluding aftermarket purchasers

from Securities Act class because of the "impossibility of tracing shares once they have mingled"

with preexisting shares).  As a result, the Court should define the class to exclude all purported

class members who did not purchase common shares directly in the 2007 Offering.  *See In re

DVI, Inc. Sec. Litig.*, 639 F.3d 623, 639 n.22 (3d Cir. 2010) (stating that under Rule 23(c)(1)(B),

the district court has an affirmative duty to define the class and class claims, issues, and

defenses); *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187-88 (3d Cir. 2006) (same).

## CONCLUSION

For the foregoing reasons and those set forth in the Schering-Plough Memorandum, the Underwriter Defendants respectfully request that the Court deny the Plaintiff's motion for class certification.

Respectfully submitted,

**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ  07102
973-643-7000

By:  /s/ Jeffrey J. Greenbaum
Jeffrey J. Greenbaum
Stuart M. Feinblatt

Alan S. Goudiss
Daniel H.R. Laguardia
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY  10022
212-848-4000

*Attorneys for the Underwriter Defendants*

Dated:  December 6, 2011