UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SCHERING-PLOUGH CORPORATION / ENHANCE SECURITIES LITIGATION | Civil Action No. 08-397 (ES) (JAD)<br><br>**ORDER APPROVING<br>DISTRIBUTION PLAN** |

Lead Plaintiffs, on notice to Defendants' Counsel, moved this Court for an order approving a distribution plan for the Net Settlement Fund in the above-captioned class action (the "Action"), and the Court having considered all the materials and arguments submitted in support of the motion, including the Declaration of Stephanie A. Thurin in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Thurin Declaration") and Lead Plaintiffs' Brief in Support of Motion for Approval of Distribution Plan, submitted therewith;

NOW, THEREFORE, IT IS THIS _17th_ day of ~~October~~ December, 2014, ORDERED as follows:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated June 3, 2013 (the "Stipulation") and the Thurin Declaration and all terms used herein shall have the same meanings as set forth in the Stipulation or in the Thurin Declaration.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3. Lead Plaintiffs' plan for distribution of the Net Settlement Fund to Authorized Claimants is APPROVED. Accordingly,

(a) The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action & Claim Solutions, Inc. ("Epiq"), to accept the Timely Eligible

Claims set forth in Exhibit C-1 to the Thurin Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit C-2 to the Thurin Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations to reject wholly ineligible Claims, as set forth in Exhibit C-3 to the Thurin Declaration, including the Disputed Claims discussed in paragraph 27 of the Thurin Declaration, are adopted;

(c) Epiq is directed to conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting the payments previously allowed and authorized herein, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, as set forth in paragraph 40(a) of the Thurin Declaration. Specifically, as set forth in paragraph 40(a) of the Thurin Declaration, (1) Epiq shall calculate award amounts to all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now by calculating their *pro rata* share of the fund in accordance with the Plan of Allocation; (2) any Authorized Claimant whose award amount calculates to less than $10.00 shall not receive any payment from the Net Settlement Fund; (3) Authorized Claimants whose Distribution Amount (after removing from the calculation all Claims that fall under the $10.00 minimum payment threshold) is less than $100 shall be paid their full Distribution Amount ("Claims Paid in Full") and shall not be eligible for payment in subsequent distributions of the Net Settlement Fund; and (4) after deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund shall be distributed on a *pro rata* basis to Authorized Claimants whose Distribution Amount (after removing from the calculation all Claims that fall under the $10.00 minimum payment threshold) is $100 or more, with the remaining 5% held in reserve (the "Reserve") to address any contingencies that may arise. To

the extent the Reserve is not depleted, the remainder shall be distributed in the "Second Distribution" described in subparagraph (f) below;

(d) In order to encourage Authorized Claimants to promptly deposit their payments, all Initial Distribution checks shall bear the following notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." Co-Lead Counsel and Epiq are authorized to take appropriate action to locate and/or contact any Authorized Claimant who has not cashed his, her, or its check within said time as detailed in footnote 5 of the Thurin Declaration;

(e) Authorized Claimants who do not negotiate their Initial Distribution checks within the time allotted or on the conditions set forth in footnote 5 of the Thurin Declaration shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available to be re-distributed to other Authorized Claimants in the Second Distribution described below. Similarly, Authorized Claimants who do not negotiate subsequent distributions within the time allotted or on the conditions set forth in footnote 5 of the Thurin Declaration shall irrevocably forfeit any further recovery from the Net Settlement Fund;

(f) After Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks (as set forth in footnote 5 of the Thurin Declaration), but no earlier than six months after the Initial Distribution, Epiq shall conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), pursuant to which any amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow

fees, shall be distributed to all Authorized Claimants in the Initial Distribution who (1) were not Claims Paid in Full, (2) cashed their distribution payment, and (3) are entitled to at least $10.00 from the re-distribution based on their *pro rata* share of the remaining funds;

(g) In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

(1) If cost effective, not less than six (6) months after the Second Distribution is conducted, Epiq shall conduct a further distribution of the Net Settlement Fund, pursuant to which the funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated costs of such distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be distributed to Authorized Claimants who cashed their Second Distribution checks and who would receive at least $10.00 in such further re-distribution. Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in six-month intervals until Co-Lead Counsel and Lead Plaintiffs, in consultation with Epiq, determine that further re-distribution is not cost effective; and

(2) At such time as Co-Lead Counsel and Lead Plaintiffs, in consultation with Epiq, determine that further re-distribution of the funds remaining in the Net Settlement Fund is not cost effective, any otherwise valid Proofs of Claim received after May 30, 2014 or any otherwise valid Proofs of Claim adjusted after June 30, 2014 shall be paid in accordance with subparagraph (h) below. If any funds shall remain in the Net Settlement

Fund after payment of such late or late adjusted Proofs of Claim, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Co-Lead Counsel and Lead Plaintiffs and approved by the Court;

(h)   No new Proofs of Claim may be accepted after May 30, 2014, and no further adjustments to Proofs of Claim received on or before May 30, 2014 that would result in an increased Recognized Claim amount may be made for any reason after June 30, 2014, subject to the following exception. If Proofs of Claim are received after May 30, 2014 or modified after June 30, 2014 that would have been eligible for payment or additional payment under the Plan of Allocation if timely received then, at the time that Co-Lead Counsel and Lead Plaintiffs, in consultation with Epiq, determine that a re-distribution is not cost effective as provided in subparagraph (g)(2) above, such Claimants, at the discretion of Co-Lead Counsel, may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(i)   All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Plaintiffs'

Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Co-Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to Authorized Claimants;

(j) All of Epiq's fees and expenses incurred in connection with the administration of the Settlement from October 1, 2013 through May 31, 2014, and estimated to be incurred in connection with the Initial Distribution of the Net Settlement Fund, as set forth in the invoices and estimate attached as Exhibit D to the Thurin Declaration, are approved, and Co-Lead Counsel are directed to pay $796,343.51 out of the Settlement Fund to Epiq in payment of such fees and expenses; and

(k) Unless otherwise ordered by the Court, one year after the Second Distribution, Epiq shall destroy the paper copies of the Proofs of Claim and all supporting documentation, and one year after all funds have been distributed, Epiq shall destroy electronic copies of the same.

4. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

_____
Esther Salas, U.S.D.J.